UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER TURREY, individually, and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERVENT, INC. fka FIRST ASSOCIATES LOAN SERVICING, LLC; ACTIVATE FINANCIAL, LLC; DAVID JOHNSON; CHRISTOPHER SHULER; LAWRENCE CHIAVARO; DEUTSCHE BANK TRUST COMPANY AMERICAS,<br><br>Defendants. | Case No.:  20-CV-0697 DMS (AHG)<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE A FIRST AMENDED CLASS ACTION COMPLAINT** |

   This case comes before the Court on Plaintiff's motion for leave to amend the class complaint.  The matter is fully briefed and submitted.  For the following reasons, the Court grants leave to amend.

/ / /

/ / /

/ / /

1

# I.
# BACKGROUND

The factual background in this case is set forth in the Court's September 24, 2020 order. (ECF No. 43.) In that order, the Court denied the Vervent Defendants' motion to compel arbitration and granted the motion to compel arbitration filed by Defendant Deutsche Bank Trust Company Americas ("DBTCA"). Thereafter, DBTCA was dismissed as a defendant by Plaintiff. (ECF. No. 51.) The Vervent Defendants appealed to the Ninth Circuit the denial of their motion to compel arbitration, and moved to stay proceedings pending that appeal, which the Court denied. (ECF Nos. 45, 68, 79.) During this time the parties also had two Early Neutral Evaluation Conferences before Judge Goddard and began discovery. (*See* ECF Nos. 61, 65.) During discovery Defendants settled with named plaintiffs Jody Aliff and Marie Smith, who were then dismissed by a joint stipulation of the parties. (ECF Nos. 89, 90.)

On July 28, 2021, Plaintiff filed the instant motion for leave to amend the class complaint, including the proposed first amended complaint ("FAC") per local rules. (ECF Nos. 84-1, 84-3.) Defendants filed a motion for summary judgment later that same day, and Plaintiff filed a motion for class certification on July 30, 2021. (ECF Nos. 85, 87.) Both the latter motions were stayed pending the Court's ruling on the instant motion. (ECF. No. 93.)

Defendants filed a motion in opposition to Plaintiff's motion for leave to amend and Plaintiff filed a reply. (ECF Nos. 94, 95.)

# II.
# LEGAL STANDARD

If a scheduling order's deadline for amendments has passed, a party seeking leave to amend must first satisfy the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4), which states that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause" is a non-rigorous standard that has been construed broadly. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th

Cir. 2010). Rule 16(b) "primarily considers the diligence of the party seeking the amendment." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) (internal quotation marks and citation omitted). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Hinojos v. Kohl's Corp.*, No. 10-CV-07590-ODW, 2013 WL 5835780, at *1 (C.D. Cal. Oct. 29, 2013) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992)).

A party must next meet the standard for leave to amend. Once a responsive pleading is served, a party may amend "only by leave of the court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Leave to amend under Rule 15(a) "shall be freely given when justice so requires." *Id.* The decision to grant leave to amend is thus "within the discretion of the trial court." *International Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985). This discretion is guided by the strong federal policy of favoring disposition of cases on the merits and permitting amendments with extreme liberality. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

Still, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). When determining whether to grant leave to amend, courts generally consider five factors, known as the *Foman* factors: "undue delay, bad faith or dilatory motive on the part of the movant," undue prejudice to the non-moving party, "futility of amendment," and "repeated failure to cure deficiencies by amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Western States*, 715 F.3d at 738 (applying the *Foman* factors).

Of these factors, the Ninth Circuit has affirmed that "prejudice to the opposing party [] carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971) (holding trial court required to consider prejudice to non-moving party

when deciding whether to permit amendment). It is the party opposing amendment that bears the burden of showing prejudice. *DCD Programs*, 833 F.2d at 186–87. Absent prejudice or a strong showing of the other *Foman* factors, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052.

## III.
## DISCUSSION

Both Plaintiff and Defendants have presented their arguments on the validity of granting leave to amend. Good cause for modifying the scheduling order is addressed first, then each of the *Foman* factors is addressed in turn.

**A. Good Cause to Amend Scheduling Order**

As Plaintiff here seeks leave to amend after the March 11, 2021 deadline for amendments has passed (ECF No. 65), Plaintiff must first meet the good cause standard of Rule 16(b) to modify the scheduling order. *See In re Western States*, 715 F. 3d at 737. The standard focuses on the diligence of the party seeking to modify the scheduling order. *Id.*

Here, Plaintiff does not seek leave to amend because of a failure to diligently include appropriate claims or parties from the start. Rather, Plaintiff seeks to amend in order "to substitute in new Plaintiffs for those who have settled with Defendants, remove an individual defendant, simplify and clarify Plaintiff's theory of liability, and conform the facts with what has been learned through discovery." (ECF. No. 84-1 at 9.) These reasons for amendment are newly occurring. They also represent good cause. First, the substitution of named plaintiffs in class action cases is ordinary. "Substitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptionable ('routine') feature of class action litigation [] in the federal courts." *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006). Where plaintiffs and their counsel move diligently to find replacements, district courts often permit them to do so. *See Aguilar v. Boulder Brands, Inc.*, No. 12-CV-01862-BTM, 2014 WL 4352169, at *10 (S.D. Cal. Sept. 2, 2014) (allowing substitution of class representative with health issues where plaintiff's counsel "were diligent in responding to

an event outside their control"); *see also Hinojos v. Kohl's Corp.*, 2013 WL 5835780, at *2 (C.D. Cal. Oct. 29, 2013) (allowing amendment to replace ill class representative despite late motion because plaintiff's "counsel was sufficiently diligent in securing replacement class representatives and seeking leave to amend the complaint"). Though settlement with named plaintiffs is perhaps more foreseeable than emergent health issues, that Mr. Aliff and Ms. Smith decided to settle was outside of plaintiff's counsel's control, while being instantly known to defense counsel. Though plaintiff's counsel did not notify the Court of these settlements until after filing the instant motion (ECF Nos. 89, 90), counsel did work quickly to locate new representatives and amend the complaint. Courts have especially allowed such amendments where, as here, no new claims are added and "Plaintiffs simply substitute new class representatives to pursue the putative [] class action." *Archuleta v. City of Santa Fe*, No. 13-CV-363-JAP/SCY, 2014 WL 12782788, at *5 (D.N.M. Dec. 22, 2014). While Defendants argue that this case differs from others as Heather Turrey remains as a viable class representative, the Court finds there is good reason to have additional representatives given the size of the class and subclasses, and that some claims may be time-barred as to Ms. Turrey, as Defendants themselves have argued. (ECF No. 85-1 at 12, 20) (arguing Plaintiff Turrey's claims under the Fair Debt Collections Practices Act and California's Rosenthal Fair Debt Collections Practices Act fall outside the applicable statutes of limitations).

Second, new facts obtained through discovery can create good cause to modify scheduling orders to permit belated pleading amendments. *See Circus Circus LV, LP v. AIG Specialty Ins. Co.*, 525 F. Supp. 3d 1269, 1279 (D. Nev. 2021) (finding good cause for party's belated amendment request and citing to similar district court holdings). Here, Plaintiff's complaint contains more specific and accurate information than would have been possible to ascertain before discovery. *See id.* (noting "many critical facts were not available until [plaintiff] received [defendant's] discovery responses"). Plaintiff's stated reasons for amending the scheduling order thus demonstrate good cause.

However, Defendants argue that Plaintiff's counsel has not been diligent. Defendants relay information from settlement negotiations which they allege demonstrate dilatory actions by Plaintiff's counsel, thus pushing settlement and the need for amendment farther out. While conduct or statements during settlement negotiations are not admissible as evidence of a claim's validity or to impeach by contradiction, other uses—such as to "negat[e] a contention of undue delay"—are allowable. Fed. R. Evid. 408. *See also Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) (noting there is not an "absolute privilege" but rather "statements made in settlement negotiations are only excludable under the circumstances protected by the Rule."). Here, there appears to have been miscommunication between counsel which resulted in settlement offers that Defendants extended in February 2021 not being taken as such until repeated in June 2021. (ECF No. 94-1 at 2–3). On the information before the Court, this appears rooted in a misunderstanding rather than an intentional attempt to push off settlement.[1] Thus, the potential delay involving the settlement negotiations does not undercut Plaintiff's showing, otherwise, of expediency. The Court thus finds Plaintiff has been diligent and meets the good cause standard of Rule 16(b) to modify the scheduling order.

**B. *Foman* Factors Determining Leave to Amend**

The Court next considers the *Foman* factors to determine whether to grant leave to amend.

1. Undue Delay

"Undue delay is delay that prejudices the nonmoving party or imposes unwarranted burdens on the court." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1212 (S.D. Cal. 2012) (internal quotation marks and citations omitted). Here, Plaintiff seeks leave to amend the complaint after the March 11, 2021 deadline set by the Court for amendments

---

[1] However, Plaintiff's counsel is reminded of the prudence of seeking clarification on offers and the requirement to communicate significant settlement offers to civil clients per California Rule of Professional Responsibility 1.4.1.

has passed. (ECF No. 65). However, Plaintiff contends that "A short extension of the discovery deadline to allow Defendants to take discovery from the new plaintiffs can be done without affecting the other deadlines set by the Court." (ECF No. 84-1 at 5.) Defendants note that the depositions and written discovery relating to the two new named plaintiffs in the FAC will necessarily delay the case and thus push out not only the fact discovery cutoff, but potentially the trial date. (ECF. No. 94 at 22.)

The Court agrees that there will be a delay which will require several changes to the scheduling order. However, the Court finds the delay-related prejudice[2] to Defendants is minimal, as most dates can be moved only slightly, and the 2022 trial date should remain unaffected. As the Court will still need to resolve the same future motions, namely for summary judgment and class certification, granting leave to amend would not "impose unwarranted burdens on the [C]ourt." *See Davis*, 901 F. Supp. 2d at 1212. This factor thus favors granting leave to amend.

2. <u>Bad Faith or Dilatory Motive</u>

A party's dilatory tactics or bad faith weigh against granting leave to amend. *See Foman*, 371 U.S. at 182. Here, Plaintiff's counsel states they seek to amend because (1) Defendants recently settled with two named plaintiffs, whom must now be substituted for new plaintiffs, and (2) Plaintiff learned new information in discovery that led counsel to simplify the causes of action and remove one defendant. As discussed *supra*, Plaintiff's motion for leave to amend, while late, arose out of these newly occurring conditions rather than an attempt to delay proceedings. That Plaintiff filed the amended complaint within approximately 6 weeks of the two named plaintiffs settling demonstrates an attempt to move expediently. (ECF No. 95 at 8).

However, Defendants argue that Plaintiff's proposed amendment is made in bad faith as it draws more heavily on the PEAKS form loan agreement than the initial

---

[2] General prejudice to defendants is a separate *Foman* factor and is addressed *infra* in Section III.B.3.

complaint. The Court previously found the agreement was not sufficiently intertwined with Plaintiffs' claims to warrant applying its arbitration provision to the Vervent Defendants based on equitable estoppel. (ECF No. 43 at 17–21.) Defendants argue claims in the FAC more intensely reliant on the loan agreement should be estopped, or Defendants will again be able to seek arbitration of this dispute. (ECF No. 94 at 18–21.) As in the initial complaint, Plaintiff in the FAC asserts federal statutory claims under RICO and FDCPA; state statutory claims under the California UCL and Rosenthal Act; and a state tort claim against the Vervent Defendants. (ECF No. 84-3.) Plaintiff Heather Turrey's loan agreement is attached as Exhibit 1, and the general loan form agreement is referenced. *Id.*

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks and citation omitted). Here, Plaintiff chiefly references the deficiencies of the loan agreement, not its benefits. Plaintiff notes that the agreement had the required "Holder Rule" provision, mandated by 16 C.F.R. § 433.2, but also language that attempted to negate this protection. (ECF No. 84-3 at 17.) To the extent Plaintiff relies on the protections of the Holder Rule as the theory of liability, this protection is more so afforded by the Federal Trade Commission's mandate in 16 C.F.R. § 433 than the specifics of the PEAKS loan agreements. Plaintiff's other references to the loan agreement note additional missing disclosures and key details such as interest rates, which deficiencies Plaintiff argues should have alerted Defendants to the problems with the PEAKS program generally. *Id.* at 16–17. Thus, as Plaintiff does not newly rely on protections based in the loan agreement, the FAC does not appear to be a bad faith attempt to recast Plaintiff's arguments while avoiding arbitration.

In sum, the Court finds there is no bad faith or dilatory motive by Plaintiff here. This factor thus favors granting leave to amend.

/ / /

/ / /

3. <u>Prejudice</u>

Prejudice to the opposing party is the most important of the *Foman* factors. *Eminence Capital*, 316 F.3d at 1052. "The party opposing the amendment bears the burden of showing prejudice." *DCD Programs*, 833 F. 2d at 186–87.

Defendants submit allowing the amendment will prejudice them by imposing additional costs, delay, and continued impact on their business reputation.[3] (ECF No. 94 at 16–18.) Conducting discovery as to the two newly named plaintiffs will indeed involve more time and expense for Defendants. However, this is because Defendants chose to settle with the prior named Plaintiffs. Plaintiffs argue any prejudice to Defendants on this score is of their own making. (ECF No. 95 at 6.) The Court agrees. Defendants will not be heard to complain of the outcome of settlement offers that they themselves extended. Further, allowing the substitution of new named plaintiffs to represent the interests of the putative class that might otherwise become unavailable following Defendants' settlement with Mr. Aliff and Ms. Smith upholds "the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Programs*, 833 F.2d at 186 (citing *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).

Additional delay and costs not caused by the substitution of plaintiffs should be minimal. Except for adding the two new named plaintiffs, the FAC streamlines, rather than expands, the claims and parties. It removes dismissed defendant DBTCA and individual defendant Christopher Shuler. (ECF No. 84-3). It narrows the RICO claim and adds no new claims. *Id.* As the FAC claims are largely the same as in the initial complaint, the deficiencies that Defendants allege are inherent to some of Plaintiff's claims will remain

---

[3] Defendants also claim prejudice due to the increased references to the loan agreement in Plaintiff's FAC. This argument is addressed, *supra*, under the Court's analysis of bad faith, as Defendants also raised this issue under that factor.

unchanged. Thus, the same arguments against Plaintiff's causes of action will be available to Defendants, who need not prepare all future motions from scratch.

Allowing Plaintiff to amend the complaint will not increase reputational harm to Defendants. As discussed *supra*, the trial date in this case should remain intact and thus the life of this litigation, and its shadow over Defendants' business, will not be extended by adopting the FAC as the operative complaint.

In sum, while there is some prejudice to Defendants in the form of additional costs and delay, the most substantial source of this prejudice is the substitution of new named plaintiffs due to Defendants' own actions in settling with Mr. Aliff and Ms. Smith. As such, Defendants have not shown a level of prejudice that prevents granting leave to amend.

### 4. Futility

A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *implied overruling on other grounds rec'd by Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (holding proposed amended complaint futile if it would be immediately subject to dismissal).

Defendants argue that the FAC remains fatally flawed and thus allowing amendment is futile. (ECF No. 94 at 23–25.) Specifically, Defendants argue that Plaintiff's Holder Rule theory is unavailing, as loan servicers do not have affirmative obligations to inform borrowers of how to avoid their loan obligations. *Id.* However, even if the Holder Rule arguments will not prevail, Plaintiff asserts other claims independent from this theory, such as portions of the California state statutory claims. The complaint thus does not seem likely to be subject to immediate dismissal. *See id.* Although Defendants present some reasoned arguments about Plaintiff's claims, futility is a high bar. The analysis of whether all of Plaintiff's causes of action are fully viable is better suited for disposition on a future motion to dismiss or refiled motion for summary judgment. *See Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999) (noting amendment should be permitted "unless it will

not save the complaint or the plaintiff is merely seeking to prolong the litigation by adding new but baseless legal theories"). As such, this factor favors granting leave to amend.

### 5. Previous Amendments

The last *Foman* factor considers "whether plaintiff has previously amended his complaint." *See In re Western States*, 715 F. 3d at 738–39. Here, Plaintiff has not previously amended the complaint. Thus, this factor favors granting leave to amend.

## IV.
## CONCLUSION AND ORDER

For the reasons set out above, Plaintiff's motion for leave to file a first amended class action complaint is GRANTED. The submitted FAC (ECF No. 84-3) is accepted as the operative complaint. Defendants' stayed motion for summary judgment (ECF No. 85) is vacated as moot. Defendants may file a new motion for summary judgment, motion to dismiss, or other appropriate response to the FAC, which is now the operative complaint. The Court will consider any such motion before ruling on Plaintiff's currently stayed motion for class certification. (ECF No. 87.)

The Court shall separately issue a new scheduling order regulating discovery and other pre-trial proceedings, and further briefing.

**IT IS SO ORDERED.**

Dated: October 28, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court