1   BLOOD HURST & O'REARDON, LLP
    TIMOTHY G. BLOOD (149343)
2   LESLIE E. HURST (178432)
    501 West Broadway, Suite 1490
3   San Diego, CA 92101
    Tel: 619/338-1100
4   619/338-1101 (fax)
    tblood@bholaw.com
5   lhurst@bholaw.com

6   LANGER GROGAN & DIVER, PC
    IRV ACKELSBERG (*pro hac vice*)
7   JOHN J. GROGAN (*pro hac vice*)
    1717 Arch Street, Suite 4020
8   Philadelphia, PA 19103
    Tel: 215/320-5660
9   215/320-5703 (fax)
    iackelsberg@langergrogan.com
10  jgrogan@langergrogan.com

11  Attorneys for Plaintiffs

12  [Additional counsel appear on signature page]

13         **UNITED STATES DISTRICT COURT**

14        **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15  JODY ALIFF, et al., | Case No. 3:20-cv-00697-DMS-AHG |
| 16                 Plaintiffs, | **CLASS ACTION** |
| 17            v. | **PLAINTIFF'S RESPONSES TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS AND ADDITIONAL UNDISPUTED FACTS** |
| 18  VERVENT, INC. fka FIRST ASSOCIATES LOAN SERVICING, LLC; ACTIVATE FINANCIAL, LLC; DAVID JOHNSON; CHRISTOPHER SHULER; LAWRENCE CHIAVARO; DEUTSCHE BANK TRUST COMPANY AMERICAS, | |
| 19 | |
| 20 | |
| 21 | |
| 22                 Defendants. | Date:        February 25, 2022 <br> Time:        1:30 p.m. |
| 23 | District Judge Dana M. Sabraw <br> Courtroom 13A, 13th Floor (Carter-Keep) <br> Magistrate Judge Allison H. Goddard <br> Chambers Room 3B, (Schwartz) |
| 24 | |
| 25 | Complaint Filed:  April 10, 2020 <br> Trial Date:        June 5, 2023 |
| 26 | |
| 27 | **JURY TRIAL DEMANDED** |
| 28 | |

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O' REARDON, LLP

## I. PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFF'S FIRST CAUSE OF ACTION FOR RICO VIOLATIONS

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 1.    This case arises from the PEAKS loan program created in 2009 by ITT Education Services, Inc. and Deutsche Bank.<br><br>First Amended Complaint ("FAC") ¶¶ 1-2, 38-39. | Admitted. |
| 2.    Prior to 2011, First Associates/Vervent had no connection to the PEAKS loan program.<br><br>Declaration of David Johnson ("Johnson Dec.")[1] ¶¶ 3-5, 13-15; Declaration of Laurence Chiavaro ("Chiavaro Dec.") ¶¶ 4-6; FAC ¶¶ 38-39, 43. | Admitted. |
| 3.    In 2011, First Associates/ Vervent began servicing the PEAKS loan portfolio pursuant to the December 10, 2011 Servicing Agreement among ITT, Deutsche Bank and First Associates/Vervent.<br><br>Johnson Dec. ¶¶ 3-5, Ex. A; Chiavaro Dec. ¶¶ 4-6; FAC ¶¶ 43-44. | Admitted. |

---

[1]    All references herein to Declarations are references to the Declarations filed in Support of the Vervent Defendants' Motion for Summary Judgment filed July 28, 2021 at Dkt. No. 85.

00187439

BLOOD HURST & O' REARDON, LLP

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 4.      None of the Vervent Defendants were involved in the origination of the PEAKS loans.<br><br>Johnson Dec. ¶¶ 3-6, 13-15; Chiavaro Dec. ¶¶ 4-6; FAC ¶¶ 38-39, 43; Declaration of John S. Purcell in Support of Motion for Summary Judgment ("Purcell Dec.") Ex. B, Pl.'s Am. Resps. to Interrogs. Nos. 1-4. | Admitted. |
| 5.      None of the Vervent Defendants were involved in marketing the PEAKS loans.<br><br>Johnson Dec. ¶¶ 3-6, 13-15; Chiavaro Dec. ¶¶ 4-6; FAC ¶¶ 38-38, 43; Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. Nos. 1-4. | Admitted. |
| 6.      None of the Vervent Defendants had any involvement in the actual education programs at ITT.<br><br>Johnson Dec. ¶ 6; Jimenez Dec. ¶¶ 3, 14; Chiavaro Dec. ¶¶ 4-5; Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. Nos. 1-4. | Admitted. |
| 7.      Borrowers sent their PEAKS loan payments to First Associates/Vervent for the benefit of the lender (Deutsche Bank) and transmitted them to a lock box where they were then received by Deutsche Bank.<br><br>Jimenez Dec. ¶ 4. | Admitted, although First Associates did not generally identify itself to borrowers, instead using the name "PEAKS Loans" with an address at a post office box in San Diego. *See* Declaration of Heather Turrey, ¶ 6. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

00187439

BLOOD HURST & O' REARDON, LLP

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 8.    First Associates/Vervent did not ever take title to the PEAKS loans or any PEAKS loans payments.

Jimenez Dec. ¶ 4. | Admitted that Defendant did not own the loans, but irrelevant. Plaintiff also does not understand what it means to "take title" to loan payments. |
| 9.    First Associates/Vervent was paid for its servicing work on a monthly basis by Deutsche Bank based on a small percentage of the total loan balance in the PEAKS portfolio.

Jimenez Dec. ¶ 4, Ex. A; FAC ¶¶ 43, 50. | Admitted that Defendants were paid a percentage of the total loan balance. The characterization of that percentage as "small" is denied, given that a 1.05% fee may sound small but when multiplied against a loan portfolio that was, initially, more than $300 million, the result is far from insignificant. *See* Plaintiff's Counterstatement, ¶¶ 32, 54, and the documents referenced therein. |
| 10.    Activate Financial was an in house collection agency created by First Associates/Vervent in or around 2011.

Johnson Dec. ¶¶ 8-10; Chiavaro Dec. ¶ 8; Jimenez Dec. ¶¶ 10-13; FAC ¶¶ 21, 95. | Admitted. |
| 11.    Activate began collecting on the PEAKS portfolio in late 2018.

Johnson Dec. ¶¶ 8-10; Chiavaro Dec. ¶ 8; Jimenez Dec. ¶¶ 10-13; FAC ¶¶ 95-97. | Admitted. |
| 12.    First Associates/Vervent did not attempt to deceive borrowers about the fact that it owned Activate. This information was public and available on both the Activate and First Associates/Vervent websites. | Admitted that this information was publicly available to the extent someone wanted to conduct internet research. But denied to the extent this is meant to imply that First Associates/Vervent—whose identity was itself not generally disclosed, *see* Response to ¶ 7, *supra*— |

00187439

BLOOD HURST & O' REARDON, LLP

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| Johnson Dec. ¶10; Jimenez Dec. ¶¶ 12-13. | made any effort to disclose the fact that the debt collector demanding payments for the first time from PEAKS borrower in default was ever identified to borrowers as merely a subsidiary of the entity calling itself "PEAKS Loans" that had been collecting loan payments for the previous seven years. Denied regarding the characterization of Defendants state of mind for which no proof is offered. |
| 13.    Plaintiff Heather Turrey attended an ITT school in Sylmar, California from 2008 to 2011.<br><br>Purcell Dec. ¶ 2, Ex. A, Excerpts from the Certified Transcript of the Deposition of Heather Turrey ("Turrey Tr.") at 34:7-35:21; FAC ¶¶ 101-103. | Admitted. |
| 14.    A PEAKS loan was taken out in Ms. Turrey's name in or around 2010.<br><br>Jimenez Dec. ¶ 20, Ex. F; FAC ¶¶ 103-104; Dkt. No. 43 (Sept. 24, 2020 Order on Mot. to Compel Arbitration). | Admitted that the loan was "taken out" in the sense that a loan was processed. Denied that Ms. Turrey was a knowing participant in that process, as she states in her Declaration, ¶ 5. |
| 15.    First Associates /Vervent was the servicer on her loan starting in 2011.<br><br>Jimenez Dec. ¶ 20; Johnson Dec. ¶¶ 3-5; FAC ¶¶ 43-44. | Admitted in part. While Defendants became the loan servicer as of December 10, 2011, that probably means that the payments due in January 2012 were the first ones billed and collected by Defendants. |
| 16.    Ms. Turrey made payments on the PEAKS loan from 2012 to April 25, 2017. | Admitted. |

00187439

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| Turrey Tr. at 120:2-25, 121:6-11, 124:3-125:8; Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. No. 7; Jimenez Dec. ¶ 20, Ex. E; FAC ¶¶ 104-105. | |
| 17.    Activate started collection activity on Ms. Turrey's account in January 2019.

FAC 108-109. | Admitted. |
| 18.    The only damages Plaintiff identified in discovery are the payments totaling $427 she made on her PEAKS loan, the last of which occurred in April 2017.

Purcell Dec. Ex. A, Turrey Tr. at 120:2-25, 121:6-11, 124:3-125:8; Purcell Decl. Ex. B Pl.'s Am. Resps. to Interrogs. Resp. No. 6; FAC ¶ 105. | Admitted that this is the amount of payments Ms. Turrey made during the four years preceding the commencement of this action. |
| 19.    Prior to filing her complaint in this case, Ms. Turrey made no complaints to any of the Vervent Defendants or to the authorities about any fraud relating to her PEAKS loan application.

Purcell Dec. Ex. A, Turrey Tr. at 91:16-92:21, 129:2-20; Jimenez Dec. ¶¶ 19-21, Ex. D (Communication History), Ex. G (Complaint Log). | Admitted. |
| 20.    Ms. Turrey did not consult any of the Vervent Defendants before deciding to enroll at ITT or about financial aid at ITT. | Admitted. |

BLOOD HURST & O' REARDON, LLP

00187439

BLOOD HURST & O' REARDON, LLP

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| Purcell Dec. Ex. A, Turrey Tr. at. 67:15-69:9, 117:5-118:12, 128:10-20; Johnson Dec. ¶¶ 15-16; Shuler Dec. ¶ 10. | |
| 21.    Ms. Turrey does not allege her PEAKS loan was usurious.<br><br>FAC ¶¶ 101-112, 140-158; Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. No. 1. | Admitted. |
| 22.    In 2016, ITT filed a Chapter 7 bankruptcy and was liquidated.<br><br>Jimenez Dec. ¶¶ 7-9; FAC ¶¶ 87-89. | Admitted. |
| 23.    As the result of a class action settlement in 2019 in the bankruptcy court for the Southern District of Indiana, ITT students no longer owed any tuition debt to ITT.<br><br>FAC ¶¶ 90-92. | Admitted. |
| 24.    Even after the ITT settlement, First Associates/Vervent was still required to service the PEAKS loans under the Servicing Agreement.<br><br>Jimenez Dec. ¶¶ 7-9, Ex. A. | Denied. This is a legal conclusion not a statement of fact. |
| 25.    First Associates/Vervent cooperated in several investigations and lawsuits relating to ITT.<br><br>Johnson Dec. ¶¶ 10-12; Jimenez Dec. ¶¶ 8-9. | Admitted that Defendant provided documents in response to the government subpoenas and that Defendant Johnson was interviewed. However, Plaintiff cannot assess the scope of Defendant's "cooperation" until after the deposition of Mr. |

BLOOD HURST & O' REARDON, LLP

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
| --- | --- |
| | Johnson. |
| 26.    At no time prior to the filing of the Complaint, did any governmental body and/or court of law involved in these investigations direct First Associates/Vervent and Activate that they should stop collecting on the PEAKS loans.<br><br>Johnson Dec. ¶¶ 10-12; Jimenez Dec. ¶¶ 8-9. | Neither Admitted nor Denied. The record citations speak for themselves. Declarant Johnson has not been deposed and the verity of his averments have not been tested. |
| 27.    None of the Vervent Defendants were named in or found culpable in any of the investigations into the ITT PEAKS loans.<br><br>Johnson Dec. ¶¶ 11-12. | Admitted that the Vervent Defendants were not named in the investigation into ITT and PEAKS loans. The averment that they were not found culpable is denied as a legal conclusion. |
| 28.    As the result of a Consumer Financial Protection Bureau settlement in 2020, ITT students no longer owed any money on their PEAKS loans.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 66: 15-17; Jimenez Dec. ¶¶ 8-9. | Denied. Students were relieved of their loan obligations, but the settlement involved multiple outstanding suits and investigations, including the CFPB action. Turrey Decl., Ex. 1. |
| 29.    Heather Turrey worked at minimum wage jobs prior to attending ITT and never made more than $12 an hour.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 16:12-22:13. | Admitted but irrelevant. |
| 30.    After getting a degree at ITT, she obtained a job where she makes over $23 an hour. | Admitted but irrelevant. |

00187439

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| Purcell Dec. Ex. A, Turrey Tr. at 57:1-22. | |
| 31. This job required a bachelor's degree.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 58:16-60:2, 78:13-18. | Admitted but irrelevant. |
| 32. Ms. Turrey's only bachelor's degree is from ITT.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 78:13-18. | Admitted but irrelevant. |
| 33. She included her ITT degrees on her resume she submitted for this job.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 26:2-27:2, 58:16-60:2. | Admitted but irrelevant. |
| 34. Ms. Turrey admits that the ITT bankruptcy did not invalidate her ITT degrees.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 76:14-23. | Admitted but irrelevant. |
| 35. Ms. Turrey made no payments on her loan after her loan was assigned to Activate Financial for collection.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 123:7-125:8, Ex. B, Pl.'s Am. Resps. to Interrogs. Nos. 6-7; Jimenez Dec. ¶ 18, Ex. E (Account History); FAC ¶¶ 104-105. | Admitted. |

BLOOD HURST & O' REARDON, LLP

00187439

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 36.     Activate was never abusive when it called Ms. Turrey, and they never called late at night or tried to bother her at work.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 125:20-129:22; Jimenez Dec. ¶¶ 19-20, Ex. D (Communications Log). | Admitted. |
| 37.     Ms. Turrey had no complaints with the actual servicing of her loan as she is not aware of defendants crediting the wrong account, getting any addresses wrong, etc.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 129:22-132:13, 131:12-132:13, Ex. B Am. Resps. to Interrogs. Nos.1-2; FAC ¶¶ 101-112. | Admitted as to the exemplars stated but denied with regard to the suggestion that the substance of Ms. Turrey's claim under Count One is that the RICO violation alleged had to do with the specifics of Defendants' servicing activities like those mentioned.  *See* FAC *passim* and Counterstatement *passim*. |
| 38.     Laurence Chiavaro was not actively involved in the PEAKS program after 2015.<br><br>Chiavaro Dec. ¶ 7. | Neither Admitted nor Denied. The record citations speak for themselves. Declarant Chiavaro has not been deposed and the verity of his averments have not been tested. |
| 39.     Mr. Chiavaro's work on the PEAKS program involved only the normal work involved in servicing loans and did not include engaging in a criminal enterprise.<br><br>Chiavaro Dec. ¶¶ 2-10; Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. No. 1; FAC ¶¶ 101-112,140-158. | Denied that Defendant Chiavaro was himself involved in servicing the loans in that, instead, he was the one largely responsible for creating and maintaining the business relationship with ITT. As to whether that relationship, as opposed to the specific details of the servicing activity, was "normal" and noncriminal, that is a conclusion, not a fact. *See* Counterstatement, *passim,* but especially ¶¶ 12-13.  Further, Declarant Chiavaro has not been deposed and the verity of his averments have not been |

BLOOD HURST & O' REARDON, LLP

00187439

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| | tested. |
| 40.    David Johnson was not involved in the day to day servicing aspects of the PEAKS program.<br><br>Johnson Dec. Dec. ¶¶ 14-17. | Denied. *See* Counterstatement *passim* but especially ¶¶ 12, 32, 44, 46 and Ackelsberg Dec. ¶ 7. |
| 41.    Mr. Johnson' work on the PEAKS program involved only the normal work involved in servicing loans and did not include engaging in a criminal enterprise.<br><br>Johnson Dec. ¶¶ 2-17; Purcell Dec. Ex. B; Pl.'s Am. Resps. to Interrogs. No. 1; FAC ¶¶ 101-112, 140-158. | Denied. *See* Counterstatement *passim*. |
| 42.    The person with the day to day responsibility for overseeing the servicing of the PEAKS loans after 2015 was Stephanie Jimenez, who also did not engage in a criminal enterprise.<br><br>Chiavaro Dec. ¶ 7; Jimenez Dec. ¶¶ 2-3, 22; Shuler Dec. ¶¶ 2-3; FAC ¶¶ 101-112, 140-158. | Admitted as to Ms. Jimenez's work, denied with respect to her participation in a criminal enterprise. *See* Counterstatement *passim*. |
| 43.    Plaintiff Turrey had no interaction or communication directly with Mr. Johnson, Mr. Chiavaro or Mr. Shuler.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 68:14-69:9; Johnson Dec. ¶¶ 15-16; Shuler Dec. ¶ 10; FAC ¶¶ 101-112. | Admitted. |
| 44.    Plaintiff provided no specific instances of wrongful conduct on the | Denied. *See* Counterstatement, *passim*. |

BLOOD HURST & O' REARDON, LLP

00187439

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| part of any of the individual defendants in this action.<br><br>Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. No. 1; FAC ¶¶ 101-112,140-158. | |
| 45.    Plaintiff does not allege that the Vervent Defendants made any affirmative misrepresentations to Plaintiff relating to the PEAKS program. Instead, Plaintiff claims they should be liable for failing to make disclosures that the debt was not legitimate and that there were defenses to payment obligations because of the conduct of ITT.<br><br>Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. Nos 1, 13; FAC ¶¶ 101-112, 140-158, 187-191. | Denied. *See* Counterstatement, *passim.* |
| 46.    The Vervent Defendants were not parties to Ms. Turrey's Loan Agreement and did not have authority to tell her or other borrowers not to pay their PEAKS loans.<br><br>Jimenez. Dec. ¶¶ 8, 14. | Admitted that Vervent Defendants were not parties to Ms. Turrey's Loan Agreement. Denied that the Defendants had no authority to stop demanding payment from Ms. Turrey and other PEAKS borrowers. They had an obligation not to violate the law. *See* Counterstatement, *passim.* |
| 47.    Deutsche Bank was First Associates/Vervent's client and paid its servicing fee, not any of the borrowers, including Plaintiff.<br><br>Johnson Dec. ¶¶ 3-5, Ex. A; Jimenez. Dec. ¶¶ 3-4, 7-8, 14-17; FAC ¶ ¶ 43, 50. | Admitted the borrowers including the Plaintiff did not pay Vervent's servicing fee and that Vervent had a contractual relationship with Deutsche Bank. |

BLOOD HURST & O'REARDON, LLP

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 48.    None of the Vervent Defendants were part of any criminal enterprise relating to the PEAKS loans.<br><br>Johnson Dec. ¶¶ 2-17; Shuler Dec. ¶¶ 2-5; Chiavaro Dec. ¶¶ 2-10; Jimenez Dec. ¶¶ 2-3, 22. | Denied. *See* Counterstatement, *passim.* |
| 49.    The Vervent Defendants were not aware of fraud occurring with respect to the PEAKS loans at the time they were servicing them and did not aid and/or abet any such fraud.<br><br>Johnson Dec. ¶¶ 2-17; Shuler Dec. ¶¶ 2-5; Chiavaro Dec. ¶¶ 2-10; Jimenez Dec. ¶¶ 2-3, 22. | Denied. *See* Counterstatement, *passim.* |

## II.    PLAINTIFF'S RESPONSE TO VERVENT DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFF'S SECOND CAUSE OF ACTION FOR VIOLATION OF THE FDCPA

Plaintiff incorporates by reference her Responses to Nos. 1-49 *supra*. Further, since she is not pursuing a claim for herself under Count Two, she defers to those class members who, should the Court allow them to be substituted as named class representatives in place of those picked off by Defendants, would be more appropriate parties to respond to these assertions.

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 50.    Ms. Turrey's PEAKS loan was not in default when First Associates/Vervent started servicing it in 2011. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |

BLOOD HURST & O' REARDON, LLP

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

00187439

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| Jimenez Dec. ¶ 20, Ex E. | |
| 51.     The only communications Ms. Turrey identified that occurred within the one year limitations period were a few letters from Activate, none of which compelled her to make any payments or do anything else.<br><br>Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. Resp. Nos. 10, 13; FAC ¶¶ 101-112. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |
| 52.     Ms. Turrey identified no damages that occurred within one year of the filing of her complaint in this action.<br><br>Turrey Tr. at 120:2-25, 121:6-11, 124:3-125:8; Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. No. 6-7; FAC ¶¶ 101-112. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |
| 53.     None of the Vervent Defendants' collection activity with respect to Ms. Turrey took place more than four year after her last payment in 2017.<br><br>Turrey Tr. at 120:2-25, 121:6-11, 124:3-125:8; Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. No. 6-7; FAC ¶¶ 101-112. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |
| 54.     Prior to filing her complaint, Plaintiff Turrey never complained to the Vervent Defendants that her loan was allegedly fraudulent. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |

BLOOD HURST & O' REARDON, LLP

Case No. 3:20-cv-00697-DMS-AHG

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

00187439

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| Turrey Tr. at 120:2-25, 121:6-11, 124:3-125:8; Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. No. 6-7; FAC ¶¶ 101-112. | |

## III.   PLAINTIFF'S RESPONSE TO VERVENT DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFF'S THIRD CAUSE OF ACTION FOR VIOLATION OF THE ROSENTHAL DCPA

Plaintiff incorporates by reference her Responses to Nos. 1-49 *supra*. Further, since she is not pursuing a claim for herself under Count Three, she defers to those class members who, should the Court allow them to be substituted as named class representatives in place of those picked off by Defendants, would be more appropriate parties to respond to these assertions.

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 55.   Plaintiff Turrey received her initial communication from Activate Financial in January 2019.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 129:3-20, Jimenez Dec. ¶ 18, Exs. B, D; FAC ¶¶ 108-109. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |
| 56.   Plaintiff Turrey did not detrimentally rely on any communications from the Vervent Defendants within one year of filing her initial complaint in this action.<br><br>FAC ¶¶ 101-112; Purcell Dec. Ex. A, Turrey Tr. at 120:2-25, 121:6-11, 124:3-125:8, Ex. B Pl.'s Am. Resps. to Interrogs. Nos. 3, 10,13. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |

14

Case No. 3:20-cv-00697-DMS-AHG

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

**IV.   PLAINTIFF'S RESPONSE TO VERVENT DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFF'S FOURTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200**

Plaintiff incorporates by reference her Responses to Nos. 1-49 *supra*. Further, Turrey is not pursuing a claim for herself under Count Four as against Activate Financial as she did not make payments after receiving payment demands from Activate Financial. Therefore, as the UCL claim against Activate Financial she defers to those class members who, should the Court allow them to be substituted as named class representatives in place of those picked off by Defendants, would be more appropriate parties to respond to these assertions.

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
| --- | --- |
| 57.   Plaintiff seeks restitution on her 17200 claim in the form of money "wrongly collected" from Plaintiff by any acts that violate the UCL.<br><br>Purcell Dec. ¶ 4, Ex. C, Pl.'s Am. Resps. to Interrogs. No. 20; FAC Prayer for Relief, ¶ E. | Admitted. |
| 58.   Because of the ITT and Deutsche Bank settlements, Plaintiff no longer seeks injunctive relief in this action.<br><br>Purcell Dec. ¶ 4, Ex. C, Pl.'s Am. Resps. to Interrogs. No. 19; FAC Prayer for Relief. | Admitted that the settlements have halted further collections on PEAKS loans. Denied that the settlements only involve ITT and Deutsche Bank. Turrey Decl., Ex. 1. |
| 59.   The Vervent Defendants do not possess any money or property belonging to Plaintiff Heather Turrey—all her loan payments were transmitted to Deutsche Bank, as required by the Servicing Agreement. | Disputed. Vervent admits it was paid for servicing the PEAKS loans based on the total amount of loans in the PEAKS portfolio. Jimenez Decl., ¶ 4; FAC ¶ 6. And irrelevant. Vervent is liable for the full amount wrongfully collected as a co-conspirator and aider and abettor. *Daniels v. Select Portfolio Services, Inc.,* |

BLOOD HURST & O' REARDON, LLP

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| Jimenez Dec. ¶¶ 4-5, Ex. A. | 246 Cal. App. 4th 1187, 1188 (2016); *People v. Bestline Products, Inc.*, 61 Cal. App. 3d 879, 918-19 (1976); *American Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 696-97 (1935); *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984). |
| 60.     Ms. Turrey obtained two degrees from ITT and ITT's eventual bankruptcy did not invalidate these degrees.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 75:15-78:23; FAC ¶¶ 101-102. | Disputed to the extent Defendants are contending Turrey's degrees have value such that she is not entitled to full restitution, as Defs. argued in the Mem. at 22. *See* Turrey Decl., ¶¶ 2, 5 (inappropriate accreditation of ITT degrees of no value). |
| 61.     Ms. Turrey did not pay the Vervent Defendants for their loan servicing—they were paid for this work by Deutsche Bank. Jimenez Dec.¶ 4, Ex. A; FAC ¶¶ 43, 50. | Disputed. Vervent admits it was paid for servicing the PEAKS loans based on the total amount of loans in the PEAKS portfolio. Jimenez Decl., ¶ 4; FAC ¶ 6. And irrelevant. Vervent is liable for the full amount wrongfully collected as a co-conspirator and aider and abettor. *Daniels v. Select Portfolio Services, Inc*, 246 Cal. App. 4th 1187, 1188 (2016); *People v. Bestline Products, Inc.*, 61 Cal. App. 3d 879, 918-19 (1976); *American Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 696-97 (1935); *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984). |

## V.   PLAINTIFF'S RESPONSE TO VERVENT DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFF'S FIFTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

Plaintiff incorporates by reference her Responses to Nos. 1-49 *supra*. Further, since she is not pursuing a claim for herself under Count Five, she defers to those class members who, should the Court allow them to be substituted as named class representatives in place of those picked off by Defendants, would be more appropriate parties to respond to these assertions.

00187439

BLOOD HURST & O' REARDON, LLP

| Vervent Defendants' Undisputed Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| 62.    Plaintiff Turrey claims no damages within two years of the filing date of her complaint.<br><br>Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. Nos. 6-7; FAC ¶¶ 101-112. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |
| 63.    Plaintiff Turrey's Negligent Misrepresentation Claim is based on alleged failures of First Associates/Vervent and Activate Financial to make certain disclosures.<br><br>Purcell Dec. Ex. B, Pl.'s Am. Resps. to Interrogs. Resp. No. 5; FAC ¶¶ 187-191. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |
| 64.    Plaintiff's purported damages for this claim are payments she made in 2017 and before based on Defendants alleged failure to make the disclosures referenced above.<br><br>Purcell Dec. Ex. A, Turrey Tr. at 120:2-25, 121:6-11, 124:3-125:8, Ex. B, Pl.'s Am. Resps. to Interrogs. Nos. 5-7, 12; FAC ¶ 190. | Plaintiff requests the Court defer consideration of this claim pursuant to FRCP 56(d). *See also* Ackelsberg Decl., ¶ 8 and Ex. 18. |

## PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS AND EVIDENCE

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| 1.    The now-defunct ITT Educational Service, Inc. ("ITT") was a publicly traded corporation that, | |

17

Case No. 3:20-cv-00697-DMS-AHG

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

BLOOD HURST & O'REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| before it went bankrupt, owned one of the nation's largest for-profit school chains, offering 2-year and 4-year degree programs at 145 campuses in 35 states.<br><br>*See* Exhibit 1 (excerpts from Staff of S. Comm. on Health, Educ., Labor and Pensions, No. 112-37: For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success (Comm. Print July 30, 2012) ("Senate Report")) at 558.[2] | |
| 2.    As of late 2010, ITT had 88,000 students enrolled in its schools and was earning $1.6 billion in annual revenue, derived almost entirely from tuition, the majority coming from federal financial aid programs. *Id.*, 559-60. According to the Senate Report, ITT was "offer[ing] some of the most expensive programs of any for-profit college, forcing many students to borrow the maximum available Federal aid and to take on additional private debt." *Id.* at 558. As an example, the Report noted that an Associates Degree in Business Administration at one ITT school was more than four times the cost of the comparable program at the local community college and the Bachelor's Degree was two times the cost of that program at the state university. *Id.* at 566. | |

---

[2]    All referenced Exhibits are attached to the Declaration of Irv Ackelsberg.

00187439

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| 3.       Analyzing ITT financial data for 2009, the Senate Report determined that less than half of the revenue ITT obtained from the various financial aid sources was used to provide instructional services to its students, with 37.1 percent of the company's revenue being allocated to profit, and 19.1 percent for recruiting and marketing. *Id*. at 564. | |
| 4.       Referring to the PEAKS private student loan program that is the subject of this action, the Senate Report noted that ITT had recently "partnered with a Wall Street investment bank to devise a lending program that, through an impressively complex series of financial transactions, may meet the definition of a 'private' loan that ITT may count towards the 10 side of the 90/10 calculation." *Id*. at 570-72. | |
| 5.       The "90/10" rule referenced in the Report is one of the eligibility rules under Title IV of the Higher Education Act that applies to for-profit educational institutions participating in Title IV grant and loan programs. Exhibit 2 (Declaration of Sandy Baum, Ph.D.), ¶¶ 19-27. Under this rule, at least 10 percent of the institution's tuition and fee revenues must come from sources other than Title IV funds. *Id*., ¶ 19. | |
| 6.       During the period 2008-2012, in recognition of the 2008 collapse of the private student loan market, the Department of Education relaxed the | |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

00187439

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
| --- | --- |
| rule, allowing institutions to self-fund the 10% nonfederal share of tuition payments, but only permitting the present value of such institutional loans to be counted, meaning that they would have to discount loan disbursements when received if anticipated default levels were high, and any overestimation of present value could result in future adjustments that might jeopardize their 90/10 status. *Id.*, ¶ 24. In contrast, receipts from genuinely independent, unaffiliated private loan lenders could be counted in full. *Id.*, ¶ 25. | |
| 7.      The details concerning the "complex" loan program referenced in the Senate Report are summarized in a Private Placement Memorandum ("PPM"), dated January 19, 2010, issued by Deutsche Bank Securities, Inc. to potential investors. Exhibit 3 (ALIFF-DBTCA0000128). | |
| 8.      According to the PPM, *id.*<br>    a.      A trust entity named the PEAKS Trust 2009-1 ("the Trust") was offering investments in a pool of private student loans made to students attending schools owned by ITT. PPM at 2.<br>    b.      The Trust was set up to purchase $300 million in private student loan obligations from an originating bank, funding those purchases with the proceeds of (i) a $225 million sale of asset-backed "Senior Notes," and (ii) a $75 loan | |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

00187439

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| from a commercial bank. PPM, cover page, 1, 4.  c. Under the program, ITT was also the "Guarantor," whereby it provided an unconditional guarantee for all program fees and interest, as well as a return of all principal, payable to the holders of Senior Notes. PPM at 3. This guarantee obligation was a rolling one, requiring ITT to make payments to the Trust whenever a monthly measured "Asset/Liability" ratio dipped below 105% (referring to the ratio of the balance of loans in the portfolio to the balance of what was owed the Senior Note holders). PPM at 2-3. ITT was also required to use 28% of the PEAKS loan disbursements to invest in the Trust, as a Subordinated Creditor, which "investment" would only be repaid once all the Senior Note obligations were paid in full. PPM at 1, 4.  d. The PEAKS loans would be issued to existing ITT students, in accordance with specified "Program Guidelines," *see* PPM at 8-10, to provide "financing for amounts that remain due and owing to [ITT] for such student's or graduate's prior academic periods," or to fund "and (2) a portion of the tuition and related costs for such student's current or subsequent academic periods not otherwise funded through [federal financial aid]." PPM at 7.  e. The loans would be "originated" by an Ohio-based bank, Liberty Bank, N.A., but a different | |

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| entity named Access Group, the loan servicer for the loan program, would serve as "Origination Agent" for the bank. PPM at 5. | |
| 9.       In its Form 10-K Annual Report for the year ending December 30, 2010, ITT described the PEAKS Loan program as an "off-balance sheet arrangement" with "unrelated parties" that were issuing these private student loans to ITT students. Form 10-K, Part II, Item 7 (Off-Balance Sheet Arrangements") at 45-46. Excerpt attached as Exhibit 4. | |
| 10.      On December 10, 2011, Defendant Vervent, Inc. (then known as First Associates Loan Servicing, LLC), entered into an agreement with the Trust and Deutsche Bank Trust Company Americas to replace Access Group as the loan servicer for the PEAKS program. Exhibit 5 (VERVENT000356) (hereafter "the Servicing Agreement"). | |
| 11.      At the time it agreed to begin servicing the PEAKS loan portfolio, Defendant already had a working familiarity with ITT's business, because it was servicing an earlier-created ITT private student loan portfolio known as "CUSO." Exhibit 6 (Vervent Defendants' Responses to Plaintiffs' First Set of Interrogatories, Interrogatory No. 1). | |

BLOOD HURST & O'REARDON, LLP

00187439

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| 12.    In deciding to service the PEAKS portfolio, the individuals from Defendant Vervent who had the most knowledge about ITT were Defendants David Johnson and Laurence Chiavaro. *Id.* | |
| 13.    The individual who signed the Servicing Agreement on behalf of Defendant Vervent was Defendant Laurence Chiavaro. Servicing Agreement (Ex. 5) at VERVENT000381. | |
| 14.    The Program Guidelines for the PEAKS loan program are attached as Schedule E to the Servicing Agreement. Ex. 5 (beginning at VERVENT000390). | |
| 15.    Before agreeing to become the borrower-facing entity that billed PEAKS accounts, collected payments, and communicated with borrowers, Defendant Vervent reviewed and studied those Program Guidelines. Exhibit 7 (excerpts from 6/24/2022 30(b)(6) deposition testimony of Stephanie Rodriguez, hereafter "Rodriguez Dep.") at 62:22-63:10). | |
| 16.    The PEAKS program utilized a form Application and Loan Agreement for each PEAKS loan (referenced in the Program Guidelines, ¶ 1(c)), which was also attached as an exhibit to the Private Education Loan Origination and Sale Agreement. A copy of Plaintiff Turrey's Application and | |

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| Loan Agreement (VERVENT000508) is attached hereto as Exhibit 8. | |
| 17.     The Program Guidelines specify that PEAKS loans were processed electronically on the website of Access Group, in its designated capacity as Origination Agent. Ex. 5, Program Guidelines, ¶¶ 1, 5. | |
| 18.     As part of the PEAKS loan records Access Group provided to Defendants during the servicing transfer were time stamp records for each loan, indicating the date and time that the borrower "opened" a loan application on the Access group website and consented to proceed electronically and the time that the borrower supposedly completed the application process by "e-signing" the application. This data for Plaintiff Turrey indicates that the application process took approximately five minutes. Rodriguez Dep. (Ex. 7) at 90:24-92:20. | |
| 19.     Under the underwriting rules ("Credit Criteria") used by Access Group to approve PEAKS loans, there were no income requirements, no consideration of the amount of any already existing federal loan burden or any other consideration of a borrower's ability to repay the loan. On the contrary, merely owing a "Temporary Credit" tuition debt to ITT made a borrower qualified to obtain a loan. Ex. 5, Program | |

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| Guidelines, ¶ 6(a).[3] If the borrower did not have a Temporary Credit debt, the loan was approved as long as the borrower had no bankruptcy or foreclosure or non-medical charge-off within the last 24 months, and was not already in default on a student loan. *Id.* | |
| 20.    Among the loan terms included in every PEAKS loan was an origination fee (*i.e.*, a loan fee added to the amount that was to be disbursed to ITT) and a variable rate interest rate, with interest accruing on a daily basis, both terms of which were set in the future—not at the time of the loan application— based on the borrower's credit score (FICO), meaning the lower the credit score, the higher the origination fee and the interest rate. *Id.*, ¶¶ 8, 13. | |
| 21.    The form Application and Loan Agreement, Ex. 8, stated only an amount of loan "requested," and provided that the actual amount of the origination fee and the starting interest rate (the latter which "would never exceed 25 % per annum") would be disclosed at a later time, as part of a | |

[3]    Although the Program Guidelines provide no further information about this so-called "Temporary Credit" debt, the SEC, in its 2014 civil action against ITT, *SEC v. ITT*, No. 15-cv-00758 (S.D. Ind.), referenced *infra*, ¶ 41, explains at Paragraph 25 of its Complaint that Temporary Credit was a short-term loan payable in a single payment at the end of the academic year for which it was offered, and that ITT was trying to convert that receivable into cash through the disbursements it would receive from the PEAKS program.

BLOOD HURST & O' REARDON, LLP

00187439

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| "Disclosure Statement" that the borrower would be given. *See* ¶¶ B(3), D, F. | |
| 22.    The Disclosure Statement referred to in the Application and Loan Agreement was supposed to be "the closed-end consumer credit disclosure as required by the federal Truth in Lending Act sent to me when you make the first disbursement of my Loan." *Id.* at C(4). | |
| 23.    The Truth in Lending Act ("TILA") requirements mentioned in the form PEAKS Application and Loan Agreement refer to the special rules applicable to private student loans that Congress added in August 2008, as part of the Higher Education Act amendments. *See* 15 U.S.C. § 1638(e). Under this provision, private student loans cannot be "consummated" until borrowers are furnished disclosures that, among other things, gives them a 3-day right to cancel after they receive all required disclosures, including disclosure of all fees and the annual percentage rate. | |
| 24.    Defendant Vervent knew that it should have, as part of every file for each PEAKS borrower, not only the signed Application and Loan Agreement, but also the TILA Disclosure Statement, and proof that the Disclosure Statement was furnished to borrowers in accordance | |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

BLOOD HURST & O' REARDON, LLP

00187439

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| with 15 U.S.C. § 1638(e). *See* Ex. 5, Program Guidelines, ¶ 14. | |
| 25.     In the process of assuming the role of loan servicer, Access Group provided Defendant with a copy of an Application and Loan Agreement for every PEAKS borrower, but Vervent was not provided with Disclosure Statements for PEAKS borrowers. Rodriguez Dep. (Ex. 7) at 94:13-99:17. | |
| 26.     The records in Vervent's possession for Plaintiff Heather Turrey are consistent with the above statement. Although Defendant has produced a copy of Ms. Turrey's Application and Loan Agreement (Exhibit 8), it has confirmed that it has no Disclosure Statement for her. Exhibit 9 (email from Douglas Hewlett, 2/3/2022). | |
| 27.     In other words, Defendants knew that the loan files they were given at the outset of their servicing responsibility over the PEAKS program were incomplete and that they had no evidence that borrowers were ever informed of the origination fees and interest rates they had supposedly agreed to, or indeed, that the loans were ever consummated in accordance with the requirements of federal law. | |
| 28.     In addition to their knowledge concerning the missing Disclosure | |

BLOOD HURST & O' REARDON, LLP

00187439

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| Statements for PEAKS borrowers, Defendants were aware that the form Application and Loan Agreement provided false and misleading information to borrowers concerning their right under the FTC Holder Rule, 16 C.F.R. pt. 433, to withhold payments on their PEAKS obligations to the extent of any claims and defenses they had against ITT regarding the educational services provided to them. While the form Agreements did contain a Notice about this right, *see* Ex. 8, Application and Loan Agreement, at 5, there is earlier language, in bold, that directly contradicts that right, stating, "if I am dissatisfied with the education program paid for with my loan, I am not relieved of any obligation on my Loan." *Id.* at 3. | |
| 29.    Plaintiff Turrey does not recall the supposed origination of her PEAKS loan obligation. Declaration of Heather Turrey, ¶¶ 6, 8. While she recalls signing for many federal grants and loans in the ITT financial aid office, as far as she recalls, she never knowingly agreed to a PEAKS loan, does not recall anyone at ITT discussing that loan with her, and was not provided copies of any loan documents from this supposed origination process. *Id.* The first time she learned about PEAKS was when, after graduating, she began receiving mailed loan statements from a company identifying itself as "PEAKS | |

00187439

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| Private Student Loans," with an address at a San Diego post office box. *Id.* at 7. | |
| 30.   In contrast to the lack of disclosure to borrowers, the Senior Creditors holding PEAKS Notes were warned about the following risk factors:  a.   "[T]he Student Loan promissory notes issued under the Program will include the FTC Holder Rule language, [under which] the Trust is subject to all claims and defenses that the borrowers on the Student Loans could assert against [ITT] for the educational services purchased with the proceeds of the Student Loans, up to the amounts paid by such borrowers to [ITT] for such educational services." Ex. 3, PPM at 27.  b.   In addition, investors were alerted that new special protections for private student loan borrowers under the Truth in Lending Act granted borrowers "a 30 day period in which to accept the loan and a three Business Day cancellation period after the lender provides the borrower with the final TILA disclosure," and that a violation of these protections could result in "civil claims under TILA including class actions." *Id.* | |
| 31.   According to the End of Month ("EOM") loan data produced in discovery, Plaintiff Turrey received a PEAKS loan of $2,963.40, that was | |

00187439

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| disbursed June 19, 2010, and she had a FICO score of 514. Ackelsberg Declaration, ¶ 6. Under the Program Guidelines and the Application and Loan Agreement, this means that her loan principal had a 10% origination fee built into it and that she was charged the maximum interest rate of 11.5% over Prime. *See* table in Ex. 5, Program Guidelines, ¶ 8. According to loan statements recently produced by Defendants, Ms. Turrey's account was assigned an interest rate of 14.75%. Turrey Declaration, ¶ 11. | |
| 32.     Six months before Defendants began servicing the PEAKS portfolio, First Associates Loan Servicing was not meeting payroll and required an additional capital contribution from Defendant Johnson in order to minimize layoffs. *See* email from Defendant Johnson to Scott Scharman, 5/11/2011 (VERVENT00875) (attached as Exhibit 10) (but noting "We're still with our toes on the goal line with ITT"). By the end of 2012, the first year Defendant was servicing the PEAKS portfolio, PEAKS was accounting for more than 50% of the company's revenues, not counting the other ITT portfolio of loans (CUSO). Exhibit 11 (excerpts from 6/25/2021 30(b)(6) deposition of Stephanie Jimenez), 87:20-89:12, 118:25-119:11. | |
| 33.     As mentioned above, *supra* at ¶ 8(c), ITT's guarantee obligation to the | |

30
Case No. 3:20-cv-00697-DMS-AHG

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| PEAKS Trust would be triggered once defaults caused the "Asset/Liability" ratio to dip below 105%. Starting in October 2012 and continuing until January 2014, Defendants assisted ITT in concealing the rising level of defaults in the PEAKS portfolio through a program euphemistically referred to as "Payments On Behalf of Borrowers" or "ITT Recovery Payments." Each month, ITT and Defendants would identify those accounts nearing 180-days delinquent status—the point at which loans defaulted and were removed from the portfolio—and ITT would send funds to Defendants sufficient funds to bring those accounts current. Ex. 7, Rodriguez Dep., starting at 151:2. The first of these payments, in October 2012, was $941 million, which was applied to 1,579 accounts. *Id.* at 153:7-154:3. | |
| 34.   This was a "first of its kind event" for First Associates, being directed to apply nearly a million dollars from a client to particular, delinquent accounts. Defendant CEO David Johnson personally participated in receiving those instructions from ITT and doing as ITT was directing. *Id.*,   153:7-157:7,   160:16-22.   This monthly interaction with ITT, and Defendant Johnson's participation in this   interaction,   became   part   of Defendants'   routine   practice.   *Id.*, 172:12-18. | |

31

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| 35. On the Monthly Servicing Reports to the PEAKS investors, these payments would be reported as if the borrowers themselves had made them. *Id.*, 158:8-21. | |
| 36. As part of the booking of these ITT payments for borrowers, again at the direction of ITT, Defendants (including Defendant Johnson) approved the waiver of late fees, *id.*, 176:11-178:1, 180:10-181:17, even though late fees were an asset of the Trust. Ex. 11, Jimenez Dep. at 33:21-34:7. | |
| 37. As of November 2013, 42% of all PEAKS loans in repayment status had received ITT payments and 72% of loans more than 30-days delinquent had already received an ITT payment. Ex. 7, Rodriguez Dep. at 190:15-192:17. But borrowers receiving the benefit of these payments were not notified. *Id.* | |
| 38. During the period October 2012-January 2014, Defendants reported $41.8 million in borrower payments, of which $16.1 million had actually been paid by ITT, not the borrowers. *Id.* at 196:11-197:25. | |
| 39. In February 2014, after the "ITT Recovery Payments" came to light, there was a settlement agreement between ITT and the PEAKS Senior Creditors, whereby ITT agreed to pay, in addition to the $16.1 million | |

00187439

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| already paid, an additional guarantee payment of $40 million to the Trust. *Id.* at 198:21-200:14. | |
| 40.    In June 2013, while the "ITT Recovery Payments" were still going on, Defendants were served with a subpoena from the Securities and Exchange Commission, demanding specified documents, including, in item 10, "All documents and communications concerning or related to payments from ITT that First Associates applied to student loan balances associated with the PEAKS Program." Exhibit 12 (starting at VERVENT00596). | |
| 41.    On May 12, 2015, the SEC initiated a civil action against ITT, Case No. 15-cv-00758 (S.D. Ind.), alleging that the company and its executives "engaged in a fraudulent scheme and course of business and made various false and misleading statements and omissions to defraud ITT's investors by concealing the extraordinary failure of two off-balance sheet student loan programs, and the looming effect of that failure on ITT's financial condition." Complaint, ¶ 1. The Complaint specifically pointed to the ITT payments for PEAKS borrowers as having "had the effect of delaying tens of millions of dollars of looming PEAKS guarantee payments ITT would otherwise have had to make," and deceptively "leading investors to | |

BLOOD HURST & O' REARDON, LLP

00187439

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| believe the PEAKS program and its composite student loans were performing relatively well." *Id.*, ¶ 4. | |
| 42.    In ITT's 10-K Annual Report for 2014, the company made the following disclosure in the introductory "Overview" section: "In June 2014, we determined that, beginning on February 28, 2013, we should have consolidated the PEAKS Trust in our consolidated financial statements." (the "PEAKS Consolidation")." Among the items listed in the Risk Factors section, Item 1A, were "[m]atters relating to or arising from our review of accounting matters related to the PEAKS Program;" "[t]he New York Stock Exchange could commence procedures to delist our common stock;" and "[t]he PEAKS Consolidation also negatively impacted our compliance with the ED's financial responsibility measurements." Excerpts attached as Exhibit 13. | |
| 43.    In September 2013, Defendants were served with a Civil Investigative Demand by the Consumer Financial Protection Bureau (CFPB), demanding specified documents about the PEAKS program, including loan-level data for all PEAKS loans, loan default data and "all documents related to payments made by ITT on students' individual account balances." Exhibit 14 (starting at VERVENT00614). | |

Case No. 3:20-cv-00697-DMS-AHG
PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| 44.    On February 26, 2014, the CFPB initiated a civil action against ITT, seeking damages and equitable relief on behalf of PEAKS borrowers. Case No. 1:14:cv-00292 (S.D. Ind.). The Complaint describes in detail the findings of the agency's investigation, which included analysis of ITT's financial filings and investor call, its website and advertising, the employment outcomes of graduates, and an extensive "mystery shopping program" that reported on recruiting misrepresentations and financial aid tactics, and alleges that the PEAKS program was "unfair" and "abusive" as defined by the Consumer Financial Protection Act, 12 U.S.C. § 5531, in that: (a) "ITT unfairly subjected students to undue influence or coerced them" into PEAKS obligations (Count One); "took unreasonable advantage of the inability of ITT students to protect their interests (Count Two); and "took unreasonable advantage of ITT students' reasonable reliance on ITT to act in their interests" (Count Three). | |
| 45.    In November 2015, Defendants were served with an Administrative Subpoena by the Maryland Attorney General, on behalf of 19 states and the District of Columbia, seeking documents concerning the PEAKS program. Exhibit 15 (VERVENT000668). | |

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| 46.     Testifying on behalf of Defendant Vervent, Vervent President Stephanie Jimenez acknowledged receipt of the various governmental subpoenas and revealed that Defendant Johnson was interviewed by the CFPB, but the company did not follow the ensuing governmental actions challenging the PEAKS program, and conducted no meetings to discuss the allegations asserted by those agencies. Ex. 11, Jimenez Dep. at 90:7-100:24. It was—and continues to be—Defendants' position that any underlying fraud or illegality on ITTs part or in the origination of the loans was irrelevant to their right to collect the loan payments, so they considered the shocking revelations about ITT's conduct to be irrelevant to them since the agency allegations were not specifically directed to "the servicing of the loans." *Id.* at 95:20-96:3. | |
| 47.     On September 16, 2016, ITT filed for Chapter 7 bankruptcy, *see* Case No. 16-07207 (Bankr. S.D. Ind.), which was followed by extensive media coverage about ITT. *See, e.g.*, Gretchen Morgenson, "A whistle was blown on ITT; 17 years later it collapsed," NY Times, October 23, 2016; Patricia Cohen, "The downfall of ITT Technical Institute was a long time in the making," NY Times, Sept. 8, 2016; Rowan Moore-Gerety, "What former employees say ITT Tech did to scam its students," National Public Radio, Dec. 7, 2016. | |

00187439

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| 48.     However, as with the governmental actions, neither the bankruptcy, nor the media disclosures, had any impact on Defendants' continuing efforts to collect from PEAKS borrowers. Following the bankruptcy, the corporate position was that it was "business as usual." Ex. 7, Rodriguez Dep. at 209:24-211:19. | |
| 49.     Indeed, in the years following the ITT bankruptcy, after the bankruptcy trustee had already filed her own action challenging the bona fides of the PEAKS program, Ex. 11, Jimenez Dep. at 114:4-115:6, Defendants intensified their collection efforts against PEAKS borrowers by activating an in-house collection company that already existed but was not being used. This company, Defendant Activate Financial LLC, used the portfolio of defaulted PEAKS borrowers to launch a new debt collection business around December 2018. *Id.* at 58:13-87:9. | |
| 50.     Exhibit 16 (VERVENT000255640) is an example of the debt collection form letters that Defendant Activate Financial mailed to PEAKS borrowers, this being a copy of the letter that Defendants mailed to Plaintiff Turrey in March 2019. | |
| 51.     Testifying as the corporate designee for both Defendants Vervent and Activate Financial, Vervent | |

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| President Jimenez acknowledged an awareness of the purpose of the FTC Holder Rule and acknowledged that the Rule was incorporated into all PEAKS loan agreements. However, Defendants conducted no training about the Rule for any of their customer service representatives that were communicating with PEAKS borrowers. Instead, if borrowers raised any complaints about the nature of the education they received from ITT, employees were instructed to tell borrowers to direct their complaints to ITT or Deutsche Bank. Ex. 11, Jimenez Dep. at 119:17-128:5. | |
| 52.    As described in the form letter Defendants mailed to Plaintiff Turrey on October 5, 2020, all outstanding balances on PEAKS loans were canceled, effective October 1, 2020, "[p]ursuant to a settlement with the Bureau of Consumer Financial Protection and certain state Attorney's General." *See* letter attached to Turrey Declaration. | |
| 53.    Over the course of the approximately nine years that Defendants were collecting payments from PEAKS borrowers (from January 2012 through September 2020), they collected $93.3 million on behalf of the PEAKS Trust. Exhibit 17 (table extracted from VERVENT000471). During the same period, according to the ITT bankruptcy trustee, ITT ended up paying the Trust $214 million | |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

00187439

BLOOD HURST & O' REARDON, LLP

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| pursuant to its guarantee obligation. *Caruso v. PEAKS Trust-2009-1 et al.*, Adv. No. 18-50272, Bankr. Case No. 16-07207 (Bankr. S.D. Ind.), Complaint, ¶ 184. | |
| 54.     The fees Defendant Vervent earned from its work on behalf of the PEAKS Trust were defined in the 2011 Servicing Agreement. In addition to various miscellaneous fees, the Servicing Agreement provided that Defendant would be paid a servicing fee of 1.025% per annum, based on the aggregate principal balance of the portfolio, not counting any defaulted loans (those being more than 180 days delinquent), and, as to loans in default (referred to internally as the separate "PEAKS Collection" portfolio), Defendant retained 26.5% of any recoveries. Ex. 5, Servicing Agreement, Schedule A and Sec. 5.03(a); Ex. 7, Rodriguez Dep. at 76:12-78:15, 87:21-90:20. | |
| 55.     A bona fide private student loan program has the following characteristics:     a.     An overriding purpose to facilitate an investment in meaningful learning likely to lead to a labor market outcome sufficient to service the debt;     b.     Loans that are structured so as to meet all legal requirements, both in letter and spirit and that are underwritten with genuine credit criteria so as to determine repayment | |

00187439

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Vervent Defendants' Response and Supporting Evidence |
|---|---|
| ability; and<br><br>    c.     Mechanisms to ensure that the borrowers are fully informed about the terms of the loans, such as the interest rate, other charges, penalties and repayments options, with counseling to help evaluate the prospects for repaying the loan, while also managing any existing federal loan obligations. *See* Ex. 2, Baum Declaration, ¶¶ 28-39. | |

Respectfully submitted,

Dated: February 11, 2022

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)

By:    *s/ Timothy G. Blood*
        TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com

LANGER GROGAN & DIVER, PC
IRV ACKELSBERG (*pro hac vice*)
JOHN J. GROGAN (*pro hac vice*)
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: 215/320-5660
215/320-5703 (fax)
iackelsberg@langergrogan.com
jgrogan@langergrogan.com

LAW OFFICE OF PAUL ARONS
PAUL ARONS (CA #84970)
685 Spring Street, Suite 104
Friday Harbor, WA 98250
Tel: 360/378-6496
360/378-6498 (fax)
lopa@rockisland.com

*Attorneys for Plaintiffs*

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

BLOOD HURST & O'REARDON, LLP

00187439

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 11, 2022.

*s/  Timothy G. Blood*

TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS

BLOOD HURST & O' REARDON, LLP

00187439