UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aliff et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Vervent Inc. et al.,<br><br>　　　　　　　　　　Defendants. | Case No.:  20-cv-697-DMS-AHG<br><br>**ORDER DENYING IN PART AND DEFERRING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendants' motion for summary judgment. The matter is fully briefed and submitted. For the following reasons, the Court denies in part and defers in part Defendants' motion for summary judgment.

Defendants' motion seeks summary judgment as to all of Plaintiff's claims, under (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) the Fair Debt Collection Practices Act ("FDCPA"); (3) California's Rosenthal Fair Debt Collection Practice Act (the "Rosenthal Act"); (4) California's Unfair Competition Law ("UCL"); and (5) negligent misrepresentation. The Court denies the motion for summary judgment as to Plaintiff's RICO and California UCL claims. Not only is the motion for summary judgment premature, but even were it not premature, Plaintiff has presented sufficient evidence to raise genuine issues of material fact as to these claims.

The Court defers on the motion for summary judgment as to the claims under the FDCPA, Rosenthal Act, and negligent misrepresentation, as there are currently no

1

appropriate class representatives for these claims. Plaintiff shall seek leave to file a second amended complaint to add additional named plaintiffs to represent the putative class on these claims by **September 6, 2022**, following which the Court can consider any renewed motion for summary judgment or other appropriate motion as to these three causes of action.

## I.
## BACKGROUND

The putative class of Plaintiffs in this case are former students who attended for-profit schools run by ITT Education Services, Inc. ("ITT"). (ECF No. 1, Compl ¶ 1.) Plaintiffs' disputes arise out of the "PEAKS" student loan program, which they allege was designed by Deutsche Bank Trust Company Americas ("DBTCA") for ITT. (*Id.* ¶ 42.) Liberty Bank, N.A., issued PEAKS loans to ITT students and subsequently sold the loans to a trust ("the PEAKS Trust") established by DBTCA. (*Id.* ¶¶ 2, 3, 26.) Vervent, Inc., formerly known as First Associates, Inc., was the loan servicer for the PEAKS loan program. (*Id.* ¶¶ 5, 16.) Activate Financial, LLC is an "in-house" collection agency owned and controlled by Vervent and the same individuals who are or were executives of Vervent: David Johnson, Christopher Shuler, and Lawrence Chiavaro. (*Id.* ¶¶ 9, 18–20; ECF No. 32-1, Vervent Defs.' Mot. to Dismiss at 12.)

On April 10, 2020, three named Plaintiffs filed this putative class action against Defendants DBTCA, Vervent, Inc., Activate Financial, LLC, David Johnson, Christopher Shuler, and Lawrence Chiavaro. (*See* ECF No. 1, Compl.) Plaintiffs allege five claims: (1) violation of RICO, (2) violation of the FDCPA, (3) violation of California's Rosenthal Act, (4) violation of California's UCL, and (5) negligent misrepresentation. (*Id.*)

The Vervent Defendants and DBTCA each filed motions seeking to compel arbitration based on arbitration agreements contained in Plaintiffs' PEAKS loan agreements. (ECF Nos. 31, 32.) The Court denied the Vervent Defendants' motion to compel arbitration but granted DBTCA's motion. (ECF No. 43.) Thereafter, defendant DBTCA was dismissed by Plaintiff. (ECF. No. 51.) Thus, only the Vervent Defendants

now remain in this litigation.  The Vervent Defendants appealed to the Ninth Circuit the denial of their motion to compel arbitration, and moved to stay proceedings pending that appeal, which the Court denied.  (ECF Nos. 45, 68, 79.)  The Ninth Circuit ultimately affirmed this Court's denial of the Vervent Defendants' motion to compel arbitration. (ECF Nos. 107, 109.)  During this time the parties also had two Early Neutral Evaluation Conferences before Judge Goddard and began discovery.  (*See* ECF Nos. 61, 65.)  During discovery Defendants settled with named plaintiffs Jody Aliff and Marie Smith, who were then dismissed by a joint stipulation of the parties. (ECF Nos. 89, 90.)

On July 28, 2021, the only remaining named Plaintiff, Heather Turrey, filed a motion for leave to amend the class complaint to substitute in new named plaintiffs—Tara Chambers and Phillip Fernandez—to replace Aliff and Smith.  (ECF Nos. 84-1, 84-3.) Defendants filed a motion for summary judgment later that same day, and Plaintiff filed a motion for class certification on July 30, 2021. (ECF Nos. 85, 87.)  Both the latter motions were stayed pending the Court's ruling on the motion for leave to amend (ECF. No. 93), which the Court ultimately granted on October 28, 2021.   (ECF No. 97.)  That order vacated the summary judgment motion as moot and made the first amended complaint ("FAC") the operative complaint.  (*Id.*)  The Court issued a First Amended Scheduling Order, setting the fact discovery deadline for July 25, 2022.  (ECF No. 98.)

Defendants filed a motion to dismiss the FAC on December 3, 2021 (ECF No. 100), but then withdrew the motion on January 7, 2022 (ECF No. 104), instead filing the instant summary judgment motion, their second in this litigation.  (ECF No. 105.)  In December 2021 Defendants had reached settlements with both Tara Chambers and Phillip Fernandez (ECF No. 103 at 2), who were later voluntarily dismissed from the litigation.  (ECF Nos. 113, 114.)  This left Heather Turrey as the sole plaintiff, against whom Defendants now seek summary judgment.  Plaintiff Turrey has represented in filings and at oral argument that she will seek leave to file a second amended complaint to have additional PEAKS borrowers, who have already been identified, take the place of plaintiffs Chambers and Fernandez. (*See, e.g.*, ECF No. 115 at 29.)

3

Plaintiff filed an opposition to summary judgment (ECF No. 115) and Defendants filed a reply. (ECF No. 116.) Both parties submitted various supplemental filings (ECF Nos. 117–119, 123, 124), and the Court heard oral argument. (ECF No. 122.) The matter is fully briefed and submitted.

## II.
## FACTS

Given the voluminous facts in this case, the Court summarizes those most applicable to the instant motion, with further material facts discussed below. Plaintiff's FAC alleges that Defendant Vervent collected approximately $80 million in PEAKS loan payments from borrowers from January 2012, when it took over from loan originator Access Group, until all PEAKS loan balances were cancelled in 2020. (ECF No. 84-3, FAC at 5.) Vervent earned approximately $14 million in servicing and collection fees from the PEAKS portfolio during this time. (*Id.*)

PEAKS loans were available only to ITT students, and owing an existing tuition debt to ITT was enough for students to qualify. (*Id.* at 14.) All loan applications were processed electronically on the website of Access Group, the origination agent, and thus could be completed from ITT's financial aid offices. (*Id.*) ITT students were already likely to be heavily indebted and the loan terms were unfavorable, including high interest rates and daily accrued interest. (*Id.*)

ITT represented PEAKS as an outside private loan source, but ITT was in fact the ultimate Guarantor to the PEAKS Trust, which had purchased the PEAKS loans and was the creditor to whom the loans were owed. (*Id.* at 6.) Representing PEAKS as unaffiliated private loans helped ITT comply with its 90/10 obligations, the Education Department's requirement that at least 10% of an educational institution's revenue come from outside the Department of Education. (*Id.* at 11–12.) The PEAKS Trust sold senior notes to institutional investors, who became the Senior Creditors in the Trust with the right to be paid first. (*Id.* at 14–15.) ITT guaranteed the Trust that it would maintain a 105% "Parity Ratio" between the non-defaulted loans in repayment and the outstanding amount due to

4

the Senior Creditors. (*Id.* at 15.) If it could not, ITT would be required to make payments directly to the Senior Creditors. (*Id.*) Defaulted loans would be removed from the Trust portfolio, thus impacting the Parity Ratio and eventually triggering ITT to make the mandatory Guarantor payments. (*Id.*)

By October 2012, ITT was required to make its first such Guarantor payment. (*Id.* at 18.) ITT also, for the first time, wired nearly $1 million directly to Vervent to make payments on loans which were nearing default. (*Id.*) This would forestall these loans from being removed from the Trust portfolio and avoid corresponding changes to the Parity Ratio which would require ITT to make more Guarantor payments. (*Id.*) Payments by ITT on loans nearing default, processed by Vervent, continued through January 2014 and totaled approximately $16 million. (*Id.* at 19.)

Plaintiff Heather Turrey attended an ITT school in California between 2008 and 2011. (ECF No. 1, Compl. ¶ 99.) Turrey alleges she does not recall ever applying for or agreeing to a PEAKS loan, and that if a PEAKS loan was obtained on her behalf, it was procured by fraud. (*Id.* ¶ 101.) Turrey began receiving payment demands on a PEAKS loan after leaving ITT (*id.* ¶ 102), in response to which she made payments from approximately 2012 to April 2017. (*Id.* ¶ 103.) Turrey continued to receive calls and notices regarding her alleged PEAKS loan, including notices from Activate Financial in 2019 and 2020. (*Id.* ¶¶ 104–08.)

## III.
## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that summary judgment is proper by "showing the absence of any genuine issue of fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Id.*; *see also* Fed. R. Civ. P. 56(c)(1). "A material issue of fact is one

that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). An issue of fact is "genuine" where it goes beyond "metaphysical doubt" such that the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

If the moving party meets its burden, the burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* There must be more than "a scintilla of evidence" to establish a genuine issue of material fact. *In re Oracle Corp. Secur. Litig.*, 627 F. 3d 376, 387 (9th Cir. 2010). Indeed, the "non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Products, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Summary judgment is also to be used sparingly where a case turns on factual issues of knowledge or state of mind. *Cf. Am. Ad Mgmt. v. GTE Corp.*, 92 F.3d 781 (9th Cir. 1996) (citing *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962)) ("We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.")

"To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the

6

requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324 (1986)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" the court may grant summary judgment if materials show the movant is so entitled. Fed. R. Civ. P. 56(e).

## IV.

## DISCUSSION

**A. Defendants' Summary Judgment Motion is Premature.**

Motions for summary judgment are frequently considered premature and denied when discovery has not been completed, under Federal Rule of Civil Procedure 56(d), previously 56(f).[1] *See, e.g.*, *Head v. Wilkie*, 784 F. App'x 503, 506 (9th Cir. 2019) (vacating summary judgment and remanding where district court failed to allow plaintiff adequate discovery before deciding summary judgment motion). "[S]uch premature motions can be adequately dealt with under Rule [56(d)], which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex Corp.*, 477 U.S. at 326 (1986).

Even where a party does not make a separate motion under 56(d), substantially complying with the requirements of the rule by showing how particular discovery would defeat summary judgment and why specific facts are not yet available is enough for a party to successfully demonstrate that summary judgment is precluded. *See, e.g.*, *TMJ Inc., v. Nippon Tr. Bank*, 16 F. App'x 795, 797 (9th Cir. 2001) (finding the district court abused its discretion in granting summary judgment where a party had "adequately complied with the requirements of Rule [56(d)].").

---

[1] Rule 56(f) was recast as 56(d) by the 2010 amendments to the Federal Rules. Fed. R. Civ. P. 56 Advisory Notes, 2010 Amendment ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).")

7

Plaintiff here has complied with the requirements of the rule, by explicitly arguing the motion is premature per 56(d) in her opposition. (ECF No. 115 at 25–26.) She identifies the specific discovery and material facts which are still outstanding, namely "The depositions of Johnson and Chiavaro," two of the individual defendants in this case, which will provide material facts as to their individual knowledge as high-ranking agents at Vervent—and thus the knowledge of the defendant corporations—regarding the PEAKS loan scheme. (*Id.* at 26.) Assessing this knowledge is crucial to Plaintiff's claims, particularly the RICO cause of action. These depositions were noticed as of Plaintiff's reply filing. (*Id.* at 25.) As fact discovery in this case was not set to close until July 25, 2022 (ECF No. 98), it is unsurprising that these depositions were not yet taken when Defendants filed this motion in January 2022.[2]

Indeed, Plaintiff is not seeking leave to undertake additional discovery beyond that initially contemplated, merely to proceed within the scheduling order. The instant situation is thus unlike the case from this district cited by Defendants, where plaintiffs failed to timely serve discovery on defendants, thus missing the court's first discovery deadline, and plaintiffs subsequently sought relief after the close of discovery. *In re Cardtronics ATM Fee Notice Litig.*, 874 F. Supp. 2d 916 (S.D. Cal. 2012), *aff'd*, 559 F. App'x 633 (9th Cir. 2014). While that court held the plaintiffs could not "raise a request for relief under Rule 56(d) in an opposition brief[,]" *id.* at 27, that concerned a request for additional discovery past the deadline and is thus not analogous to the facts here. Defendants have not pointed to cases where a plaintiff was denied the opportunity to complete planned discovery so that a summary judgment motion could be decided.

---

[2] Indeed, this is Defendants' second such motion, as they also filed a summary judgment motion in July 2021. (*See* ECF No. 85.) While Defendants argue Plaintiff should have noticed the depositions of Johnson and Chiavaro after the first summary judgment motion, that motion was stayed and eventually mooted once the Court addressed Plaintiff's motion for leave to amend, which was filed earlier the same day. *See* Background, *supra* at 3.

8

Defendants are eager to have the claims in this case adjudicated, noting the long life of this litigation, but it would be inequitable to assess these claims without allowing Plaintiff to conduct key discovery.[3] Given the importance of deposing defendants Johnson and Chiavaro, and that Plaintiffs are merely seeking the "opportunity to make full discovery" which was already contemplated by both parties, the Court finds that Defendants' summary judgment motion is premature under Rule 56(d) and is therefore denied. *See Celotex Corp.*, 477 U.S. at 326 (1986).

In addition, regardless whether Defendants' motion is premature or not, the Court finds that summary judgment is not warranted at this time. As discussed below, Plaintiff has sufficiently demonstrated genuine issues of material fact as to the RICO and UCL claims, such that summary judgment is denied as to these claims. The FDCPA, Rosenthal, and negligent misrepresentation claims are time-barred as to Plaintiff Turrey but may not be as to other PEAKS borrowers. The other representatives on these claims settled with Defendants in December 2021 (*see* ECF No. 103 at 2) and were only voluntarily dismissed from this case in February 2022, after the filing of the instant motion. (ECF Nos. 113, 114.) The Court thus defers ruling on summary judgment as to these three claims until appropriate named plaintiffs are added to represent the putative classes via a second amended complaint.

/ / /

/ / /

---

[3] Additionally, many of these delays are of Defendants' own making. Defendants filed both the instant motion for summary judgment and their prior summary judgment motion prematurely, before discovery had closed, at moments when Ms. Turrey was the only plaintiff remaining in the litigation. Defendants are of course free to extend settlement offers to class representatives early in the litigation. But Defendants cannot then be surprised when Plaintiff seeks leave to amend to add new plaintiffs. Nor can Defendants expect that they can capitalize on having settled with some class representatives to seek wholesale summary adjudication of the claims in this case in moments when only one plaintiff remains.

**B. Genuine issues of material fact exist that preclude summary judgment on Plaintiff's RICO claim.**

1. Plaintiff alleges a RICO conspiracy claim.

Plaintiff brings a RICO conspiracy claim under 18 U.S.C. § 1962(d), which states it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [the RICO section]." 18 U.S.C § 1962. RICO conspiracy liability is broader than the general § 371 federal conspiracy provision, as "There is no requirement of some overt act or specific act." *Salinas v. United States*, 522 U.S. 52, 63 (1997). Subsection (d) also differs from direct RICO liability under § 1962(c), as a defendant need not "have actually conspired to operate or manage the enterprise" but rather may be guilty of a conspiracy to violate § 1962(c) if it "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *U.S. v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005) (internal quotation omitted); *see also Salinas*, 522 U.S. at 65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.").

2. Defendants have not met their burden to show the absence of genuine issues of fact and Plaintiff provides enough evidence to allege a factual dispute as to all elements of the RICO claim.

Here, crediting Plaintiff's evidence as the Court must on summary judgment, *Anderson*, 477 U.S. at 255, there is more than a scintilla of evidence that the Defendants conspired to further a RICO enterprise. *See In re Oracle*, 627 F. 3d at 387. Defendants' arguments for summary judgment in their initial motion are primarily centered on direct

RICO liability[4] and thus fall short of demonstrating there is no genuine issue of material fact. (*See* ECF No. 105-1.) Plaintiff Turrey's RICO claim is not based on a usurious interest rate, nor does she claim FDCPA or FCRA violations are the underlying enumerated acts. (*Id.* at 12–13.) Plaintiff disputes that Defendants merely "carried out routine corporate business"—which can still support liability under § 1962(d)—and being duly registered corporations does not preclude entities from committing RICO violations. (*Id.* at 14.)

Rather, the gravamen of Plaintiff's RICO claim is that the entire ITT PEAKS loan program was a fraudulent enterprise, and Defendants were aware of this and undertook to facilitate it. Plaintiff provides evidence that goes beyond her initial pleading to present facts supporting this claim. *See Far Out Products*, 247 F.3d at 997. The PEAKS program was created and run for ITT by DBTCA and Access Group, with Vervent signing an agreement to replace Access Group as the loan servicer in December 2011. (ECF No. 115-8, Ex. 5, Servicing Agreement.) There was little to no underwriting done on the loans, as a student could be eligible solely through having an existing tuition debt to ITT. (*Id.* ¶ 6(a) at 40–41). The application process was done electronically, lasting mere minutes in the case of Ms. Turrey, and specified only the amount of the loan "requested," not that actually given. (ECF No. 115-10, Ex. 7, Rodriguez Dep. at 91:5–92:20; ECF No. 115-11, Ex. 8, Loan Agreement, ¶ B at 3.) The loan documentation provided to Defendants lacked evidence that borrowers were informed and agreed to the interest rates and loan fees—

---

[4] Defendants seek summary judgment as to direct RICO liability in their reply, indicating that was the count suggested by Plaintiff's FAC. (ECF No. 116 at 2.) The Court cannot grant summary judgment on counts not pled. The FAC appears to present only a conspiracy claim (ECF No. 84-3 at 37) ("In violation of 18 U.S.C. § 1962(d), Defendants conspired to violate § 1962(c)"), and Plaintiff clarifies in her opposition to the instant motion that she proceeds only under § 1962(d). (ECF No. 115 at 17.) Defendants address the § 1962(d) claim in their reply. (ECF No. 116 at 2.) Thus, the parties' recent filings make clear that the only RICO claim now at issue is under § 1962(d).

hallmarks of legitimate loans and required to be provided in a disclosure statement for private student loans per The Truth in Lending Act ("TILA"). (ECF No. 115-8, Ex. 5, Servicing Agreement at 40 ¶ 5; at 45 ¶ 14); 15 U.S.C. § 1638(e). Defendants were not provided with disclosure statements for PEAKS borrowers. (ECF No. 115-10, Ex. 7, Rodriguez Dep. at 94:13–99:17.)

ITT outwardly represented PEAKS loans as "unaffiliated" (ECF No. 115-7, Ex. 4, 2010 SEC Form 10K at 29) (describing PEAKS as an off-balance sheet arrangement), but Defendants knew that ITT was the ultimate Guarantor to the PEAKS Trust. (ECF No. 115-6, Ex. 3, PEAKS Investment Memorandum at 3). Eventually ITT began wiring money directly to Defendants to be applied to PEAKS loans nearing delinquency. (ECF No. 115-10, Ex. 7, Rodriguez Dep. at 151:2–157:16.) Loans that defaulted would be removed from the PEAKS portfolio. (*Id.* at 88:3–89:8.) This would reduce the monthly service fee earned by Defendants, measured as a percentage of the portfolio, as well as push ITT closer to having to pay its Guarantor obligation to the PEAKS Trust. (ECF No. 115-10, Ex. 7, Rodriguez Dep. at 76:12–77:24, 88:3–89:8; ECF No. 115-6, Ex. 3, PEAKS Investment Memorandum at 13–14). Defendants applied the money from ITT to the loans nearing default, but ITT did not identify itself to others as the source of the funds. (ECF No. 115-10, Ex. 7, Rodriguez Dep. at 151:2–157:16.) ITT eventually revealed the affiliated nature of the PEAKS loans, for example stating in its SEC Form 10-K disclosure filed on May 29, 2015:

> As previously disclosed, a number of factors, including the SEC's investigation of us related to our actions and accounting associated with, among other things, the PEAKS Program and the CUSO Program, have led to us conducting additional analyses and reviews with respect to accounting matters related to those programs. As a result of such additional analyses and reviews, the Audit Committee of our Board of Directors concluded that the PEAKS Trust should have been consolidated in our consolidated financial statements beginning on February 28, 2013 …

(ECF No. 115-16, Exh. 13, 2014 SEC Form 10-K at 9.)

12

Defendants continued to collect on the loans—including defaulted loans via its debt collection arm Activate Financial—throughout investigations by the SEC and CFPB, and after ITT's filing for Chapter 7 bankruptcy, when they kept collecting on behalf of the PEAKS Trust. (ECF No. 115-10, Ex. 7, Rodriguez Dep. at 210:3–211:19.) The CFPB investigation led to a civil action on behalf of PEAKS borrowers, S.D. Ind. Case No. 1:14-cv-00292. (ECF Nos. 115 at 14; 116 at 3.) Together with state Attorneys General, the CFPB ultimately reached a settlement that canceled all outstanding PEAKS loan obligations. (*Id.*)

In their reply, Defendants note that the pleadings in the CFPB and SEC cases cannot be referenced here as they contain only allegations, not adjudications of fact. (ECF No. 116 at 3–4.) The Court agrees and takes judicial notice only of the fact that these cases were filed, and the settlement reached in the CFPB case, which Defendants reference in their own pleadings and was announced to PEAKS borrowers.[5] (*See, e.g.*, ECF No. 105-1 at 28). Defendants also accurately note that none of these sources conclusively prove there was a criminal enterprise. (ECF No. 116 at 4.) However, at the summary judgment stage, Plaintiff need not provide indisputable proof of an enterprise, merely a factual dispute as to the existence of such a scheme, which she has done.

Indeed, construing the facts in Plaintiff's favor, there is enough to raise genuine issues of material fact on all elements of the RICO claim. Plaintiff argues that the PEAKS loan program was a fraudulent enterprise (the program was created for ITT with DBTCA, Access Group, and other entities; ITT misrepresented PEAKS loans as being unaffiliated for their own benefit; borrowers were not informed of all terms or given required disclosure statements); that Vervent, Activate Financial, and the individuals who operated them had

---

[5] Defendants also argue against the Court taking judicial notice of the Senate Report (ECF No. 115-4), although such reports can be appropriate for judicial notice if not subject to reasonable dispute. *See* Fed. R. Evid. 201(b). However, the Senate Report analyzes ITT generally rather than the PEAKS program specifically, and thus the Court does not take judicial notice of the findings for the purposes of deciding the instant motion.

13

knowledge of the scheme (Defendants knew they never received disclosure statements for the PEAKS loans; they knew ITT was the ultimate Guarantor to the PEAKS Trust; they knew ITT was making payments on students' loans nearing default); and that Defendants intended their work to further it (Defendants continued to collect on the loans for ITT and later the PEAKS Trust; Defendants applied the money sent to them by ITT to loans nearing default which helped keep these loans in the PEAKS portfolio, to the financial benefit of Defendants and ITT). These genuine issues of material fact on the RICO conspiracy claim preclude summary judgment.

### 3. Plaintiff has sufficiently alleged Mail and Wire Fraud

Defendants also argue that Plaintiff has not sufficiently alleged RICO mail and wire fraud. (ECF No. 105-1 at 15.) Plaintiff alleges multiple uses of the mails and wire system as steps in the overall process to defraud, such as the loan applications conducted over the internet, and the wiring of funds by ITT to Defendants to make payments on PEAKS loans nearing default, to name only two. (ECF No. 114–115.) As there need not be fraudulent statements in the mail or wire transmissions themselves, so long as the use of mail and wire are steps in the overall scheme, there is a triable issue of fact here precluding summary judgment. *United States v. Garlick*, 240 F.3d 789, 795 (9th Cir. 2001) ("In general, to be in furtherance of a scheme, the charged mailing or wire transmission need not be an essential element of the scheme, just a 'step in the plot.'").

### 4. Plaintiff has alleged enough to create a genuine issue of material fact as to causation.

Defendants further argue there is an insufficient nexus between Plaintiff Turrey's injury (her loan indebtedness) and the predicate RICO acts, as required for civil RICO recovery. (ECF No. 116 at 7–8.) Defendants note that they were uninvolved with Turrey enrolling at ITT or taking out a PEAKS loan. (*Id.*) But the predicate RICO acts that Plaintiff alleges relate to the underlying the fraudulent loan scheme. Had the loans not been made—using the mail and wire systems—and had Defendants not assisted in servicing them, Turrey would not have made loan payments to Defendants. (ECF No. 115

at 23–24.) That is enough at this stage to create a genuine factual issue as to the nexus between Plaintiff's injury and Defendants' conduct.

In short, Defendants have not shown the absence of any genuine issue of material fact on the RICO claim. Rather, Plaintiff has gone beyond the pleadings and raised triable issues of fact. Summary judgment on the RICO claim is denied.

### C. Plaintiff has raised genuine issues of material fact that preclude summary judgment on her UCL claim.

The Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, et seq., prohibits business acts or practices that are (a) unlawful, (b) unfair, or (c) fraudulent. Here, the parties disagree as to whether Plaintiff can seek a remedy under the UCL. The UCL provides private parties with only equitable remedies—restitution or injunctive relief—and Plaintiff has abandoned her claim for injunctive relief. *Id.* (ECF Nos. 84-3 at 40–41; 116 at 8.)

Defendants argue that a claim for restitution is not possible in this case, as they did not keep the funds from Plaintiff's loan payments. (ECF No. 116 at 8–9.) Plaintiffs argue that, as co-conspirators in fraudulent business practices, "Vervent and Activate Financial are liable for all money wrongfully obtained from PEAKS borrowers—regardless that they passed all or some of the money along to their co-conspirators." (ECF No. 115 at 28.)

Restitution requires something lost by the victim party and something improperly gained by the offending party. *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1187 (2016) (internal quotation omitted). Even if Plaintiff and others lost funds by paying on fraudulent loans, Defendants did not retain those loan payments in full. *Cf. id.* ("Even assuming appellants were entitled to keep the money they paid in the form of penalties and fees, they do not allege BofA obtained those payments."). However, Defendants were paid based on a percentage of the total PEAKS portfolio. (ECF No. 115-10, Ex. 7, Rodriguez Dep. at 76:12–77:24.) Plaintiff Turrey's payments would have kept her loan in the portfolio longer by avoiding default, thus contributing to Defendants' financial gain which was based on the total of all loans in the portfolio. (*Id.* at 88:3–89:8.)

15

As Plaintiff argues the entire PEAKS program was a fraudulent enterprise, the money made by Defendants from the PEAKS portfolio was "something to which it was not entitled." *Id.* As such, what Plaintiff lost potentially led to what Defendant gained as required for restitution. Thus, there remains a genuine issue on this count, such that summary judgment on the UCL claim is currently denied.

### D. The Court Defers on the FDCPA, Rosenthal, and Negligent Misrepresentation Claims Pending Substitution of New Named Plaintiffs.

Defendants argue, and Plaintiff concedes, that some of her claims are time-barred. But assuming new named plaintiffs will have timely claims, Defendants have not otherwise shown that these causes of action will necessarily lack genuine issues of material fact that would entitle Defendants to summary judgment.

Defendants further aver that Plaintiff Turrey has been improperly litigating claims on behalf of classes to which she does not belong, and thus all such claims must be dismissed. (ECF No. 123 at 7–8.)[6] Defendants cite to *Lierboe v. State Farm Mut. Auto. Ins. Co.*, where the Ninth Circuit remanded with instructions to dismiss after the plaintiff was discovered to lack standing on a claim after the district court had already certified a class. 350 F.3d 1018, 1023 (9th Cir. 2003) ("where the sole named plaintiff never had standing … and where she never was a member of the class she was named to represent, the case must be remanded with instructions to dismiss.") (internal quotations omitted).

However, this case is not akin to the situation in *Lierboe*. In *Lierboe*, the only plaintiff ever named lacked standing; here, the class was previously also represented by Fernandez and Chambers (ECF No. 84-3 at 28–31), and before that by Aliff and Smith. (ECF No. 1 at 21–24.) Unlike in *Lierboe*, Plaintiff Turrey has not been litigating claims for which she lacks standing for the duration of the case. Rather, it is only since Plaintiffs

---

[6] This argument is fleshed out in Defendants' supplemental briefing (ECF No. 123) and is considered by the Court. Plaintiff's motion to strike that briefing (ECF No. 124) is denied.

16

Fernandez and Chambers settled with Defendants that the classes for the FDCPA, Rosenthal, and negligent misrepresentation claims have been without a proper representative. Indeed, Defendants filed the instant motion for summary judgment on January 7, 2022 (ECF No. 105), shortly after settling with Fernandez and Chambers, and before they were even dismissed from this case on February 3, 2022. (ECF Nos. 113, 114.)

Further, in *Lierboe*, the district court had already certified the class based only on the one plaintiff who lacked standing, and who was not even aware that she was representing a class. *Lierboe*, 350 F.3d 1018, 1021. Similarly, *Blackwell v. SkyWest Airlines, Inc.* concerned plaintiff's motion for class certification and her request for additional discovery to find a new class representative as her claims were time-barred. 245 F.R.D. 453 (S.D. Cal. 2007) (denying request for additional discovery and denying class certification). Here, the case has not yet reached class certification. Rather, while Plaintiff's counsel erred in asserting Plaintiff Turrey could bring claims which were in fact time-barred, Plaintiff Turrey has gotten stuck opposing the motion for summary judgment for the class before being able to substitute in new representatives, a case staging decision made by the Court given Defendants' request to move the case forward. The Court's decision to hear the instant motion before considering leave to amend is not enough reason for the Court to preclude the class from the opportunity for representation, if the claims are otherwise valid.

        1. <u>The FDCPA and Rosenthal claims are time-barred as to Plaintiff Turrey but not otherwise inherently deficient as to require summary judgment.</u>

Plaintiff brings claims under the FDCPA and Rosenthal Act on behalf of herself and the putative class. Both the FDCPA and Rosenthal Act have a one-year statute of limitations from the date of the violation. 15 U.S.C. § 1692k(d); Cal. Civ. Code §1788.30(f); *see also Rotkiske v Klemm*, 140 S. Ct. 355, 360 (2019) (interpreting § 1692k(d) and finding a one-year limitation from the date of violation, not discovery). Here, Plaintiff's counsel concede that Plaintiff Turrey's claims fall outside of the one-year statute of limitations. (*See* ECF No. 115 at 29) (acknowledging Plaintiff Turrey lacks standing as

17

to some claims.)  However, "Plaintiff has already identified at least one [] potential class member willing to" be added as a named plaintiff.  (*Id.*)

The FDCPA protects consumers from various debt-collection practices.  Plaintiff's FAC alleges Defendants violated 15 U.S.C. § 1692e(2), (10), and § 1692f(1) by collecting or attempting to collect on invalid loans and using false, deceptive, or misleading representations in its collection efforts.  (ECF No. 84-3 at 38.)  The Rosenthal Act is a California statute which mirrors the federal FDCPA, and Plaintiff's Rosenthal claims here mirror those she makes under the FDCPA.  *See* Cal. Civ. Code §§1788-1788.33; (ECF No. 84-3 at 39–40.)  Plaintiff also alleges that Defendants did not include a notice required by Rosenthal in initial communications to Plaintiff and the class.  (ECF No. 84-3 at 40); Cal. Civ. Code § 1812.700 (requiring third-party debt collectors to include specific informational statement on debtors' rights for consumers.)  Collecting, or attempting to collect, on an invalid debt is an FDCPA and Rosenthal violation, even absent knowledge of the invalidity.  *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1175–76 (9th Cir. 2006); *Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1085–86 (2019).

Assuming plaintiffs who do not face statutes of limitations issues can be substituted in as class representatives, Defendants' other arguments in favor of summary judgment are unavailing at this time.  First, Defendants argue that their collection activity as to Ms. Turrey did not violate the FDCPA or Rosenthal Act.  (ECF No. 105-1 at 21–25.)  Whether or not specific communications violated these statutes as to the substituted plaintiffs will depend on what they allege and thus there remain genuine issues of material fact that preclude judgment as a matter of law.

Second, Defendants argue that they are not debt collectors under the FDCPA, as it exempts those collecting or attempting to collect on a debt that was not in default when it was acquired.  (ECF No. 105-1 at 25–26); 15 U.S.C. 1692a(6)(F)(iii); *De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1074 (9th Cir. 2011) (granting summary judgment for defendant company where it acquired a debt before default and was thus not a debt collector under the FDCPA).  While Ms. Turrey does not allege her PEAKS loans were in

default, it is unknown whether new named plaintiffs will so allege, especially as Activate Financial is a collection agency. This will therefore also be a factual inquiry which will turn on the facts as alleged in the second amended complaint and cannot be decided at this time as a matter of law.

Third and relatedly, Defendants argue that Defendant Johnson is not a debt collector as regards Ms. Turrey and never communicated with her. (ECF No. 105-1 at 26.) However, "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a; Cal. Civ. Code § 1788.2 (using substantially similar language to define debt collector as including an individual person in the Rosenthal Act). Thus, an individual such as Mr. Johnson can be liable as a debt collector under these statutes, and whether he acted as a debt collector as to the new named plaintiffs will again depend on the specific facts they allege, making a genuine issue of material fact possible.

In sum, FDCPA and Rosenthal claims could be viable, depending on the facts alleged by substitute plaintiffs. The Court thus defers ruling on these claims until new named plaintiffs are added via Plaintiff's second amended complaint.

2. <u>The Negligent Misrepresentation claim is likewise time-barred as to Plaintiff Turrey but not otherwise inherently deficient as to require summary judgment.</u>

Similarly, Plaintiff brings negligent misrepresentation claims on behalf of herself and the putative class, but both sides agree such a claim is untimely as to Ms. Turrey. (ECF No. 105-1 at 30; ECF No. 115 at 29.)

Negligent misrepresentation arises when a party fails to exercise a reasonable duty of care; it requires a positive assertion, not implied misrepresentations or omissions. *Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066, 1075, 1083 (1997) as modified (Feb. 26, 1997); *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011). Plaintiff's FAC alleges that Defendants breached their duties in their communications to

consumers by, among other things, representing to consumers that the PEAKS loan debts were valid and enforceable. (ECF No. 84-3 at 42.)

Here again Defendants have not shown such a claim will inherently lack genuine issues of material fact so as to require judgment as a matter of law, assuming timely claims can be asserted by the new representative plaintiffs. Defendants argue that Plaintiff Turrey does not point to any assertions made by Defendants that could support a negligent misrepresentation claim. (ECF No. 105-1 at 31.) However, the specific positive assertions—or lack thereof—will again depend on what is alleged by the new named plaintiffs and must be assessed by the Court once pled to determine whether a genuine issue of material fact exists. The Court thus defers ruling on the negligent misrepresentation claim until new named plaintiffs are added via Plaintiff's second amended complaint.

## V.
## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied. Plaintiff shall move for leave to file a second amended complaint by **September 6, 2022**.

**IT IS SO ORDERED.**

Dated: August 22, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court

20