UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER TURREY, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>VERVENT, INC., et al.,<br><br>　　　　　　　　　　Defendants. | Case No.:  20-CV-0697 DMS (AHG)<br><br>**ORDER (1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (2) DENYING PLAINTIFFS' MOTION TO STRIKE; AND (3) GRANTING PLAINTIFFS' MOTION TO FILE A SURREPLY** |

　　　This case comes before the Court on Defendants' renewed Motion for Summary Judgment (ECF No. 158), and Plaintiffs' Motion to Strike Reply to Response to Motion, or in the alternative, to file a Surreply brief (ECF No. 178). The matter is fully briefed and submitted.

　　　Defendants bring a second summary judgment motion again challenging Plaintiffs' claims under (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) the Fair Debt Collection Practices Act ("FDCPA"); (3) California's Rosenthal Fair Debt Collection Practice Act ("Rosenthal Act"); (4) California's Unfair Competition Law ("UCL"); and (5) common law negligent misrepresentation.  Plaintiffs move to strike portions of Defendants' Reply brief, which introduced new evidence obtained from third-party Access Group.  Alternatively, Plaintiffs request leave to file a Surreply if the Court

elects to consider the new evidence. For the reasons set forth below, the Court denies Defendants' renewed motion for summary judgment, denies Plaintiffs' motion to strike, and grants Plaintiffs' motion to file a Surreply brief.

The background of this case is summarized in prior orders, (*see* ECF Nos. 128, 140, 151), as is the standard governing a motion for summary judgment, and need not be repeated. Defendants' arguments are nearly identical to those raised in their earlier motion for summary judgment. (ECF No. 105.) The Court denied that motion as to Plaintiffs' RICO and UCL claims, (*see* ECF No. 128 at 10-16), and deferred ruling on the FDCPA, Rosenthal Act, and negligent misrepresentation claims pending substitution of new plaintiffs. (*See id.* at 16-20.) Nothing of significance has changed. The Court's prior summary judgment order, (*see generally id.*), and this Order, should guide the parties as they prepare for trial.

A renewed motion for summary judgment is appropriate if it is based on previously unavailable evidence. *Hoffman v. Tonnemacher*, 593 F.3d 908, 911-12 (9th Cir. 2010). In support of the present motion, Defendants proffer evidence from recent depositions of the named Plaintiffs, a declaration from expert witness David Harmon, written discovery responses, and newly discovered Truth In Lending Act (TILA) disclosures. Defendants also argue Plaintiffs' claims fail for lack of evidence as Plaintiffs will not be calling witnesses at trial from ITT or Deutsche Bank, the alleged principal fraudsters in the PEAKS student loan scheme at issue. Defendants further argue that Defendants were never ordered to stop collecting PEAKS loans by any governmental entity investigating the loan scheme and no criminal charges were ever brought against ITT or Deutsche Bank, let alone a finding that a RICO enterprise existed. In addition, in their Reply brief, Defendants submit a declaration by Melissa Scott, an employee with Access Group, and attach as exhibits TILA disclosures for the named Plaintiffs regarding their PEAKS loans and argue that evidence shows the underlying loans complied with TILA and were not invalid as alleged by Plaintiffs. (*See* ECF No. 175-1.) The declaration states that due to the age of the records and archiving system, Access Group was previously "unable to recover records for the

50,000+ borrowers in the entire PEAKS portfolio." (*Id.* ¶ 11.)  Now, shortly before trial and well after discovery has closed, Defendants provide the foregoing TILA disclosures. Plaintiffs argue Defendants are engaging in "last minute gamesmanship." (ECF No. 178 at 1.)  Despite the late disclosure, the Court elects to consider the evidence, as well as Plaintiffs' Surreply, which adequately responds to Defendants' late discovery.

The question of the validity of the underlying PEAKS loans is principally related to Plaintiffs' FDCPA, RFDCPA, UCL and negligent misrepresentation claims.  The alleged invalidity of the underlying loans is also relevant to Plaintiffs' RICO conspiracy claim, as it is one of the alleged red flags they claim put Defendants on notice of ITT's alleged fraudulent loan scheme.  The newly discovered TILA disclosures are not dispositive of any of the claims at issue.  As Plaintiffs note, there is no documentation in the record establishing consummation of the PEAKS loans.  Defendants admit they never saw such documentation.  (*See* ECF No. 143-3, Ex. 1 at 90:21-99:17.)  Moreover, as explained by Plaintiffs' expert, Persis Yu, TILA requires an Application Disclosure, an Approval Disclosure, and a Final Disclosure.  (ECF No. 169-8, Expert Report of Persis Yu ISO Plaintiffs' Opposition at 17-20.)  The TILA disclosures submitted by Defendants appear to be Final Disclosures only.  Triable questions of fact remain whether other required TILA disclosures exist, and if so, whether they were provided to Plaintiffs.  These questions are appropriately addressed at trial and not on a motion for summary judgment.  The validity of the underlying loans cannot be determined as a matter of law based on this newly discovered evidence.

Defendants argue Plaintiffs "have no evidence to establish any triable issues as to the requisite existence of a RICO enterprise[,]" and that there is no causation as a matter of law "stemming from the alleged wrongful conduct[,]" (Mot. at 13, 17), but the Court disagrees for the reasons set forth in detail in its prior Order. (*See* ECF No. 128 at 10-16.) In addition, Plaintiffs' percipient and expert testimony and the circumstances of the case raise material questions about the existence of a RICO enterprise and whether Defendants joined such an enterprise knowing of its illicit objectives.  Plaintiffs argue the PEAKS loan

structure, the large number of underperforming loans, Defendants' client (alleged principal fraudster ITT, not an independent trust), Defendants collection for many years on loans without proper documentation and underwriting, the contents of CFPB and SEC complaints and likely cancelation of loans assigned to Activate Financial for collection, and the lack of a genuine securitization structure combine to show Defendants knowingly or with deliberate indifference participated in a RICO enterprise and furthered ITT's deception of investors and the Department of Education ("DOE") by disguising payments made by ITT on behalf of borrowers. (*See generally* Pl. Oppo. at 4-18.) Triable questions of fact remain, including, among other questions, whether: (1) Defendants knew that PEAKS was a fraudulent scheme, designed as a financial subterfuge for ITT to defraud its investors and DOE; (2) the PEAKS loans lacked consummated loan agreements containing legally required information, such as the high interest rates and fees charged; (3) the PEAKS loan program functioned as an association in fact enterprise that included ITT, the PEAKS Loan Trust, DBTCA, Access Group and Defendants, with each member of the association in fact having an assigned role; and (4) that association in fact was engaged in making fraudulent representations to the DOE, ITT shareholders, and PEAKS Trust investors.

Defendants also contend for the first time that the alleged fraudulent conduct comprising the predicate RICO acts is barred by the statute of limitations. (Def. Mot. at 16-17.) Plaintiffs disagree, stating their "RICO claim accrued, alternatively, either in October 2020, when they received notice about the cancellation of the remaining balances, or at the earliest, in September 2016, when ITT collapsed into bankruptcy." (Pl. Oppo. at 18.) Civil RICO claims have a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). The "civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action" pursuant to the injury discovery rule. *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). Under the separate accrual rule, "a cause of action accrues when new overt acts occur within the limitations period, even if a conspiracy was formed and other

acts were committed outside the limitations period." *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996).

Here, Plaintiffs "seek to remedy the payments they made on or after April 10, 2016." (Pl. Oppo. at 18.) Plaintiffs filed their complaint on April 10, 2020. (*See* ECF No. 1.) Under the injury discovery rule, Plaintiffs either discovered their injuries in October 2020 upon notice of their loan balances being cancelled, or in September 2016, once ITT filed bankruptcy. Defendants' assertion that the injury occurred in January 2014, is incorrect. As Plaintiffs note, that timeframe relates to the PEAKS creditors' knowledge about ITT's payments on behalf of borrowers, not PEAKS borrowers' knowledge, who argue they were never notified that ITT had been making such payments on behalf of borrowers nearing default. The separate accrual rule requires "new and independent acts" which involve "new and accumulating injury." *Grimmett*, 75 F.3d at 513. Each collection effort by Defendants was a distinct choice constituting a new and independent act, and each monetary collection allegedly inflicted new injury. The Court, therefore, need not decide which event triggers the limitations period for Plaintiffs because all alleged events fall within the Class timeframe.

Under the UCL claim, material questions of fact remain whether Plaintiff Hernandez suffered an injury as a result of Defendants alleged "unfair" business acts or practices raise. Defendants insist summary judgment is warranted because Plaintiffs seek damages, not restitution or injunctive relief. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003) (stating remedies for violation of UCL are "limited to injunctive relief and restitution.") Plaintiffs argue "Hernandez and class members seek restitution measured by the amount necessary to restore them to their status quo." (Pl. Oppo. at 22.) The point of UCL "restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply*, 29 Cal.4th at 1149. Such restitution is "measured by what was taken from the plaintiff." *Clark v. Superior Court*, 50 Cal.4th 605, 615 (2010). A "defendant may be ordered to restore what the plaintiff lost, even if the amount exceeds what the defendant received." *Hahn v. Massage Envy*, No. 12-cv-153,

2014 WL 5100220, at *15-16 (S.D. Cal. Sept. 25, 2014). As such, the Court declines to characterize Plaintiffs' desired UCL remedy as one for damages. The amount sought by Plaintiffs, and any offsets, is an issue for trial. *See Massage Envy*, 2014 WL 5100220, at *17 (finding genuine disputes of material fact regarding the amount of restitution precluded summary judgment and reserved the issue for trial).

The "FDCPA imposes strict liability on creditors, including liability for violations that are not knowing or intentional." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011). As this Court previously noted, collecting, or attempting to collect, an invalid debt is a violation of the FDCPA and Rosenthal Act, even absent knowledge of the debt's invalidity. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1175-76 (9th Cir. 2006). Nevertheless, Defendants insist debt collectors may attempt to collect debts that are invalid because "a debt collector's obligation to verify a debt [is] quite limited." (Def. Mot. at 21) (citing *Clark*, 460 F.3d at 1174). Defendants misinterpret *Clark*. Because the FDCPA imposes strict liability, an attempt to collect money not owed causes injury under the statute. *See Clark*, 460 F.3d at 1175-76. Here, there is a triable question of fact whether Defendants attempted to collect money Plaintiffs did not owe.

To establish negligent misrepresentation, Plaintiffs must prove "(1) the defendant made a false representation as to a past or existing material fact; (2) the defendant made the representation without reasonable ground for believing it to be true; (3) in making the representation, the defendant intended [plaintiff to rely on the representation]; (4) the plaintiff [reasonably] relied on the representation; and (5) the plaintiff suffered resulting damages." *Majd v. Bank of Am., N.A.*, 243 Cal.App.4th 1293, 1307 (2015); Judicial Council of CA Civil Jury Instructions ("CACI") No. 1903. Negligent misrepresentation "requires a positive assertion and does not apply to implied misrepresentations" or omissions. *Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal.4th 1066, 1083 (Cal. 1997); *Regents of Univ. of Cal. v. Principal Fin. Grp.*, 412 F.Supp.2d 1037, 1045 (N.D. Cal. 2006).

Defendants state Plaintiff Hernandez has provided no evidence of any positive assertion by Defendants. (Def. Mot. at 29-31.) However, Plaintiff Hernandez provided evidence of payment demands from both First Associates and Activate Financial, and evidence that he paid money to both entities as a result of their demands. (*See* ECF 158-2, Purcell Decl., Ex. D at Nos. 1-2 at 7:7-15, 8:1-9.) Here, whether the PEAKS loans were invalid and whether Defendants knew that to be the case when they made their collection demands are factual questions to be decided by the trier of fact.[1] Additionally, whether Defendant Vervent, fka First Associates, is liable under the FDCPA on an alter ego theory is reserved for trial or post-trial proceedings as the issue was not sufficiently briefed.

For the foregoing reasons, Defendants' renewed motion for summary judgment is denied.

Dated: April 20, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court

---

[1] Defendants argue Plaintiffs cannot seek damages beyond the statute of limitations for negligent misrepresentation, which they assert is limited to two years before the filing of this action on April 20, 2020. Because negligent misrepresentation is treated as a form of fraud, the statute of limitations for such claims is three years from discovery of facts constituting the fraud. Cal. Civ. Proc. § 338(d). The amount of such damages is reserved for trial. In addition, the Court is unable to determine the accrual date of the subject limitations period based on the present record. Plaintiffs have argued their RICO claim accrued "either" in October 2020, when they received notice of cancellation of their remaining loan balances, or in September 2016, when ITT "collapsed into bankruptcy." (Pl. Oppo. at 18.) The Court therefore reserves ruling on the issue, including whether the accrual date should be addressed at trial through special interrogatories to the jury.