John S. Purcell (SBN 158969)
Douglas E. Hewlett, Jr. (SBN 293438)
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile:  213.629.7401
Email:      john.purcell@afslaw.com
            douglas.hewlett@afslaw.com

Attorneys for Defendants
VERVENT INC. fka FIRST ASSOCIATES
LOAN SERVICING, LLC; ACTIVATE
FINANCIAL, LLC; DAVID JOHNSON;
and LAURENCE CHIAVARO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER TURREY, OLIVER FIETY, JORDAN HERNANDEZ, and JEFFREY SAZON, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>VERVENT, INC. fka FIRST ASSOCIATES LOAN SERVICING, LLC; ACTIVATE FINANCIAL, LLC; DAVID JOHNSON; and LAURENCE CHIAVARO<br><br>        Defendants. | Case No.  3:20-CV-00697-DMS (AHG)<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' TRIAL BRIEF RE: PLAINTIFFS' UCL CLAIM**<br><br>Compl.:     April 10, 2020<br>SAC filed:  Sept. 30, 2022<br>Trial Dates: June 8–June 22, 2023;<br>            Aug. 7, 2023 (UCL Claim) |

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 1 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................6

BACKGROUND ................................................................................................9

    A.    The First Amended Complaint and the "Disclosure Theory." ...........9

    B.    The Second Amended Complaint and the "Disclosure Theory." .........9

    C.    Trial:  Plaintiffs Dismiss their Debt Collection claims and Bring Only RICO to the Jury. ...................................................................10

    D.    The RICO Claim and Jury Instructions. ...........................................11

    E.    The Verdict. ......................................................................................12

ARGUMENT......................................................................................................13

I.     PLAINTIFFS' UCL CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW ...................13

II.    THE SEVENTH AMENDMENT PROHIBITS PLAINTIFFS FROM RECOVERING MORE THAN THE JURY'S DETERMINATION OF PLAINTIFFS' LOSS. ........................................................................17

III.   IF THE COURT WERE TO EXERCISE JURISDICTION AND ADJUDICATE THE UCL CLAIM, THERE IS NO LIABILITY UNDER THE "UNFAIR" PRONG, AND THERE IS NOTHING LEFT TO RECOVER UNDER THE "UNLAWFUL" PRONG.................21

    A.    For the Reasons the Court Has Already Agreed With, Plaintiffs' "Unfair" Prong of Their UCL Claim Must Be Dismissed .................21

    B.    Recovery nder the "Unlawful" Prong Would Be An Impermissible Windfall When the Verdict Exceeds Both Restitution and Disgorgement.............................................................21

CONCLUSION ..................................................................................................26

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)      - 2 -      Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. City of Costa Mesa*,
   718 F.3d 800 (9th Cir. 2013) ......................................................................18

*Aliff v. Vervent Inc.*,
   No. 20-CV-697-DMS-AHG, 2022 WL 3588322 (S.D. Cal. Aug.
   22, 2022) (Sabraw, J.) ............................................................................25

*Cadence Design Sys., Inc. v. Viera*,
   836 F. App'x 493 (9th Cir. 2020) ............................................................23

*Cortez v. Purolator Air Filtration Prod. Co.*,
   23 Cal. 4th 163 (2000) ............................................................................13

*Daniels v. Select Portfolio Serv. Inc.*,
   246 Cal. App. 4th 1150 (2016) ................................................................25

*Das v. WMC Mortg. Corp.*,
   831 F. Supp. 2d 1147, 1157 (N.D. Cal. 2011) ........................................21

*Diaz v. Tesla, Inc.*,
   No. 3:17-CV-06748-WHO, 2022 WL 17584235 (N.D. Cal. Dec.
   12, 2022) ................................................................................................14

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011) ......................................................23, 24

*Fong v. United States*,
   300 F.2d 400 (9th Cir. 1962) ............................................................14, 23

*Guzman v. Polaris Indus.*,
   49 F.4th 1308 (9th Cir. 2022) .............................................................7, 13

*Heredia v. Sunrise Senior Living LLC*,
   No. 818CV01974JLSJDE, 2021 WL 819159 (C.D. Cal. Feb. 10,
   2021) ......................................................................................................16

*Hoopes v. Dolan*,
   168 Cal. App. 4th 146 (2008) ..................................................................18

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)    - 3 -    Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

*Jordan v. Pau. Fin., LLC*,
    745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010) ...................................................21

*Ketayi v. Health Enrollment Grp.*,
    2021 WL 2864481 (S.D. Cal. July 8, 2021) .............................................16, 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ........................................................................19, 25

*Los Angeles Police Protective Language v. Gates*,
    995 F.2d 1469 (9th Cir. 1993).......................................................................18

*McFall v. Perrigo Co.*,
    No. 220CV07752FLAMRWX, 2021 WL 2327936 (C.D. Cal. Apr.
    15, 2021).....................................................................................................15

*Morris v. JPMorgan Chase Bank, N.A.*,
    78 Cal. App. 5th 279, 315 (2022)...................................................................25

*Moss v. Infinity Ins. Co.*,
    197 F. Supp. 3d 1191 (N.D. Cal. 2016)...........................................................13

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    No. CV 05-6838 CAS MANX, 2011 WL 4852314 (C.D. Cal. Oct.
    13, 2011)......................................................................................................19

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)......................................................................................14

*Niedermeier v. FCA US LLC*,
    56 Cal. App. 5th 1052 (2020).........................................................................20

*PacifiCare Health Sys. v. Book*,
    538 U.S. 401 (2003)......................................................................................19

*Sonner v. Premium Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)............................................................7, 13, 16

*Speyer v. Avis Rent a Car Sys., Inc.*,
    415 F. Supp. 2d 1090 (S.D. Cal. 2005), *aff'd*, 242 F. App'x 474 (9th
    Cir. 2007) (Sabraw, J.).................................................................................24

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)    - 4 -    Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

*Stafford v. Rite Aid Corp.*,
    No. 17-CV-1340 TWR (JLB), 2023 WL 2876109 (S.D. Cal. Apr.
    10, 2023) ................................................................................................ 17

*Std. Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) ............................................................................... 14

*Zeller v. Optavia, LLC*,
    No. 22-CV-434-DMS-MSB, 2022 WL 17858032 (S.D. Cal. Dec.
    22, 2022) (Sabraw, J.) .................................................................. 7, 14, 15

*Indiana ex rel. Zoeller v. Pastrick*,
    696 F. Supp. 2d 970 (N.D. Ind. 2010) ................................................... 19

**Statutes**

18 USC § 1964 ......................................................................................... 6

Bus. & Prof. C. § 17200 ......................................................................... 25

Bus. & Prof. C.§ 17500 .......................................................................... 25

**Other Authorities**

Fed. R. Civ. P. 12(c), (h)(2) ................................................................... 17

RICO ............................................................................................. *passim*

U.S. Const., 7th Am. ...................................................................... *passim*

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 5 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

# INTRODUCTION

This case should be over. The jury verdict of $4 million in favor of Plaintiffs on Plaintiffs' RICO claim – the only claim that survived to reach the jury – deprives the Court of any further jurisdiction to proceed on Plaintiffs' UCL claim. Every minute spent and hour billed on the UCL claim from the verdict forward wastes the Court's resources and Defendants' money. The undisputed, and here dispositive, rule of law in the Ninth Circuit is that UCL claims are extinguished by the availability of a remedy at law. Here, Plaintiffs have the quintessential remedy at law for their claimed losses involving the PEAKS loan program – money damages. And, by virtue of their verdict on their RICO claim, Plaintiffs have now obtained that legal remedy in the amount of $4 million (which is trebled to $12 million). Their case ends there.

Nobody recognizes that more than Plaintiffs, who not only advised this Court of precisely that legal principle, but then expressly admitted it in pleading their UCL claim. In Count IV of the Second Amended Complaint ("SAC")—Plaintiffs' UCL claim—Plaintiffs allege that they suffered "injury in fact" in the form of "lost money as a result of Defendants' unfair and unlawful conduct, entitling them to . . . restitution." SAC ¶ 192. In the very next paragraph, Plaintiffs made clear that they pleaded this claim for "lost money" entirely in the alternative, only in the event that they did not recover a remedy at law through their RICO claim, because if they did, it would extinguish their UCL claim:

> 193. As a consequence, **but only in the event that RICO damages are not granted under Count I**, the California members of the RICO class are entitled to restitution in the amount of their portion of the $43 million in loan payments made by the RICO class, pursuant to the UCL.

(emphasis added). Plaintiffs repeated the alternative-only nature of their UCL claim in their Prayer for Relief ¶ E, seeking:

> Restitution for all California residents who are members of the RICO class under the UCL **in the event damages are not provided to the class under 18 USC § 1964** [RICO].

(emphasis added). Plaintiffs added ¶ 193 to the SAC for the first time – it was absent

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)         - 6 -         Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

in the prior versions of their complaints.  (*See* ECF 133-4 (Redline of FAC and SAC) ¶ 193).  They also added the above-boldfaced language to their SAC Prayer for Relief. (ECF 133-4 at 54).  They re-framed their UCL claim and expressly disclaimed any ability to proceed under the UCL if they prevailed on RICO in order to head-off a motion to dismiss.  Plaintiffs knew they could not simultaneously seek RICO damages and UCL restitution for the same alleged economic loss under the same set of facts unless they stated up-front that their UCL claim was only being alleged in the alternative and would not be pursued "in the event RICO damages" were awarded.

While Plaintiffs may now be trying to backtrack on the position they expressly pleaded, it is clear that the Ninth Circuit's controlling decisions in *Guzman v. Polaris Indus.*, 49 F.4th 1308 (9th Cir. 2022), and *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), prevent them from doing so.  Plaintiffs' recovery of RICO damages deprives this Court of equitable jurisdiction to even consider, much less award restitution under, Plaintiffs' UCL claim.  Indeed, only months ago, **this very Court** recognized and applied *Guzman* and *Sonner* to disallow a UCL claim where a plaintiff had an adequate remedy at law in the form of money damages.  *Zeller v. Optavia, LLC*, No. 22-CV-434-DMS-MSB, 2022 WL 17858032, at *6–7 (S.D. Cal. Dec. 22, 2022) (**Sabraw, J.**).  The result should be no different here, especially where Plaintiffs have now **actually received** monetary damages.

However, even putting aside the dispositive lack of equitable jurisdiction here – and even if Plaintiffs were permitted to renege on their express representations in their operative pleading – Plaintiffs **still** would not be entitled to additional monetary relief on their UCL claim.  In awarding Plaintiffs damages under RICO, the jury was required to, and did, make factual determinations regarding the total economic loss Plaintiffs experienced in connection with the PEAKS loan program.  Both the Seventh Amendment to the United States Constitution and corresponding Ninth Circuit precedent prevent this Court from then revisiting, let alone overriding, those binding jury findings in a second equitable phase of trial in order to award Plaintiffs

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 7 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

further monetary relief. That is especially true where: (i) Plaintiffs have repeatedly made clear, including in their discovery responses, that they sought/seek identical monetary relief under RICO and the UCL claims – namely, all amounts paid on PEAKS loans during the relevant time period; (ii) the jury was instructed on, and clearly rejected, Plaintiffs' expansive theory of economic loss; and (iii) the measure of RICO damages and UCL restitution are substantively the same, except that RICO damages are even more expansive given they are trebled specifically to ensure full remediation of any loss. There is no legal basis to allow double recovery via equitable monetary recovery after the jury has already determined and remedied in full.

Finally, if the Court were to somehow reach the merits of the UCL claim, it would be reversible error to award Plaintiffs the $51 million in UCL restitution they appear ready to seek. As the Court has already recognized, because Plaintiffs' claim under the "unfair" prong of the UCL is based solely on Plaintiffs' since-debunked and dismissed TILA disclosure theory, it is either preempted by TILA's one-year statute of limitations and thus time-barred, or requires an individual inquiry for each borrower and therefore is not appropriate for class determination. In addition, to the extent the Court finds a violation of the UCL's "unlawful" prong due to the RICO jury verdict, (i) only California borrowers are entitled to any recovery due the territorial limitations of the UCL, which Plaintiffs admit in their SAC (*see* SAC ¶ 193), and (ii) the only amounts that could possibly be awarded as restitution are the amounts Defendants "obtained" in servicing the PEAKS loan program, namely, the relatively minimal servicing fees – **not** all amounts every paid by any borrower (to Deutsche Bank) and **not** any associated principal or interest owed and paid.

Defendants reiterate: the Court should not even reach the questions of UCL liability or amount of restitution because the threshold jurisdictional and Constitutional issues preclude UCL relief of any kind here.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 8 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

**BACKGROUND**

Plaintiffs reach the end of their road to recovery after a number of procedural twists, turns, and trial developments.  Those developments had the twin and conclusive results of: (i) only the RICO conspiracy claim ever reached the jury; and (ii) that same RICO claim was duplicative of the UCL claim, as the RICO and UCL claims are based on the same facts and theories.  As a result, with RICO decided, there is nothing left to decide, and certainly no separate UCL "right."

We got here, from there, on the following path:

**A.    The First Amended Complaint and the "Disclosure Theory."**

Plaintiffs filed their initial Complaint on April 10, 2020.  (ECF 1.)  They later sought leave to file a substantial revision of their initial claims and theories (in addition to adding Plaintiffs Chambers and Fernandez) in their First Amended Complaint, on July 28, 2021.  (ECF 84.)  In the FAC, Plaintiffs raised for the first time their so-called "Disclosure Theory" which alleged that the PEAKS loans were invalid *ab initio* for failure to make requisite disclosures under the Truth In Lending Act (TILA).  (ECF 84-4 ¶¶54-58 (alleging "the loan documentation was so lacking that none of the loan agreements appeared [to] be fully formed" and that TILA "mandates specific disclosures" regarding interest rates and fees which Vervent "knew or should have known that this information had to be provided to borrowers, as a matter of federal law, *before* the borrower could be legally obligated.").

**B.    The Second Amended Complaint and the "Disclosure Theory."**

The Disclosure Theory survived summary judgment under multiple claims, even though the only representative at the time (Turrey) lacked standing for the Debt Collections claims – FDCPA, Rosenthal, and negligent misrepresentation.  (ECF 128 at 16-17.)

Plaintiffs' UCL claim also survived.  In ruling on summary judgment, this Court reasoned that although Vervent as loan servicer did not obtain the funds Plaintiff paid on their loans (which were paid to Deutsche Bank, the lender), it

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 9 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

retained a percentage of the total PEAKS portfolio such that "what Plaintiff lost potentially led to what Defendant gained as required for restitution" when "[a]s Plaintiff argues the entire PEAKS program was a fraudulent enterprise, the money made by Defendants from the PEAKS portfolio was something to which it was not entitled" (internal quotations and citations omitted).  (ECF 128 at 15-16).

In the same order, Plaintiffs were provided another opportunity to recruit class representatives, and on September 6, 2022, sought leave to file their SAC adding Plaintiffs Sazon, Hernandez, and Fiaty.  (ECF 141.)  Like the FAC, the SAC relies heavily upon the so-called Disclosure Theory.[1]  (ECF 133-4   ¶¶ 56-60 (largely maintaining prior version)).  In addition to serving as the foundation for their Debt Collection claims, the Disclosure Theory continued to support their RICO and UCL claims.  Preserving this RICO allegation from the FAC, Plaintiffs assert: "In [its] communications, FALS furthered the fraud by engaging in a systematic practice of concealing from borrowers the fact that their loan agreements had never been fully consummated and that they had the right not to pay PEAKS loans based on their claims against ITT."  (SAC ¶ 154).

Plaintiffs expressly based their UCL claim on the Disclosure Theory, alleging that Vervent collected "invalid student loan debt" in violation of the FDCPA, Rosenthal, and TILA, and that there was no evidence the loans had been consummated.  (SAC ¶¶ 188-89).

## C.   Trial:  Plaintiffs Dismiss their Debt Collection claims and Bring Only RICO to the Jury.

Plaintiffs proceeded through discovery on their Disclosure Theory.  In the weeks leading up to trial, Plaintiffs clarified their otherwise vaguely alleged Disclosure theory by arguing specifically that TILA requires three specific

---

[1] As described and quoted specifically in the Introduction to this Brief, the SAC is also where Plaintiffs admitted that they plead their UCL claim only in the alternative to a RICO damages recovery.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 10 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

disclosures to be provided to consummate a student loan, if those disclosures are not provided then TILA treats the loans as "unconsummated," and it is illegal for a loan servicer to collect on an unconsummated loan.

When it came time for trial, Plaintiffs continued to rest their Debt Collection claims solely on the Disclosure Theory, and a portion of each their RICO and UCL claims as well.  Eventually, however, it was apparent to all concerned – Plaintiffs, Defendants, and this Court – that Plaintiffs had run into a legal dead end.  Several days into the trial, at an Instructions Conference, the Court observed that it agreed with Vervent that Plaintiffs could not rest their Debt Collections claims on a TILA-based Disclosure Theory—either such claims would be preempted and time-barred by TILA's one-year statute of limitations, TILA and case law on the consummation issue expressly refuted Plaintiffs' theory, or in the alternative such a theory would have required individual factual determinations and thus could not be adjudicated on a classwide basis.

Plaintiffs then voluntarily dismissed these claims, declining to pursue them on an individual basis.  Plaintiffs went to the jury with only RICO.  Thus, in assessing the duplication of grounds and recovery sought, the Court need view the UCL claim only as against the RICO claim, which is critical here.

### D.    The RICO Claim and Jury Instructions.

The Court instructed the jury that it could award damages on plaintiffs' RICO claims based on Plaintiffs' alleged "economic loss" during the relevant time period. The instructions were specific as to the basis of the injury that the jury could find if it found a RICO violation.

> Instruction No. 20: "If you decide that a Defendant conspired to violate RICO, you must decide whether that conspiracy caused Plaintiffs and class members injury… If you conclude that a Defendant joined in a conspiracy to violate RICO, the Defendant is responsible for all damages caused by predicate acts committed by members of the conspiracy that caused injury to Plaintiffs and class members… The parties have stipulated that the class members paid Defendants $51,509,051.00 during th[e] [relevant] time period."

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 11 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

Instruction No. 21: "Damages means the amount of money that will reasonably and fairly compensate Plaintiffs and the Class for any injury you find was caused by defendant… In deciding this amount, you will consider only the Plaintiffs' economic loss, if any, caused by Defendants… The economic harm that Plaintiffs seek to recover is amount paid on PEAKS loans during the period starting April 10, 2016 to September 2020.

Verdict Form No. 3: … "State the amount, in dollars, that will fairly compensate Plaintiffs and the class."

So, the parties ultimately stipulated, and the jury was instructed that, "class members paid Defendants $51,509,051.00" and that "Defendant is responsible for **all damages** caused by predicate acts committed by members of the conspiracy that caused injury to Plaintiffs and class members" Instruction No. 20 (emphasis added). The jury was also informed during trial that Defendants made approximately $3.5 million from their work on the PEAKS portfolio during the class period. The jury, knowing the total amount paid by PEAKS borrowers, made an assessment of "all damages" in their RICO verdict, as instructed. Accordingly, by the Court's own definition, Plaintiffs have already received restitution as well as damages. The jury knew full well the total amount paid by the class, and the verdict accounted for Plaintiffs' total economic loss.

## E. The Verdict.

The jury, (i) having thus been instructed on damages, and the appropriate measure of damages for conspiracy to violate RICO, (ii) having heard the so-called Disclosure Theory, and (iii) with no other claims before it to decide, issued a verdict of $4 million in favor of Plaintiffs for "all damages" caused by all members of the alleged conspiracy. Coming full circle from the SAC's pleading to this verdict, the contingency that caused Plaintiffs to plead UCL in the alternative turned out not to occur. Plaintiffs pleaded UCL "*only in the event that RICO damages are not granted under Count I*." When the jury, in fact, granted these damages, the UCL claim evaporated as a matter of law and of pleading.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

AFDOCS:198551056.2

Case No. 3:20-cv-00697-DMS (AHG)          - 12 -          Defs.' Trial Brief re: Pls.' UCL Claim

## ARGUMENT

## I.   PLAINTIFFS' UCL CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW

"A UCL action is an equitable action[,]" *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173 (2000), and it "provides only for equitable remedies." *Guzman*, 49 F.4th at 1313.  Thus, as the Ninth Circuit recently explained, "[i]n order to entertain a request for equitable relief" under the UCL, "a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Id.* at 1313.  When a plaintiff has an adequate remedy at law, federal courts lack equitable jurisdiction to even consider, and must dismiss, a UCL claim.  *Id.* at 1314 (holding that "district court lacked equitable jurisdiction" over UCL restitution claim "because [the plaintiff] had an adequate remedy at law in his time-barred CLRA claim" for damages; therefore, the district court "could not . . . make a merits determination as to liability" and "should have dismissed [the] UCL claim").

Consistent with these governing principles, the Ninth Circuit and the district courts within it have repeatedly held that damages are an adequate legal remedy that prevent – and require the dismissal of – a claim for UCL restitution, **even if** the legal remedy is unavailable or ultimately fails on the merits.  *See, e.g., Guzman*, 49 F.4th at 1311-13 (affirming district court's ruling that CLRA damages claim was an adequate legal remedy that prevented UCL restitution even though the CLRA claim had been dismissed as time-barred and could not be pursued); *Sonner,* 971 F.3d at 845 (granting motion to dismiss a UCL claim on the eve of trial when plaintiff had an adequate remedy at law, though she had abandoned it); *Moss v. Infinity Ins. Co*., 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) ("A plaintiff may only seek equitable relief under California's UCL where she has no adequate remedy at law.  Such is the case even if all of plaintiff's non-UCL claims ultimately fail.").  **Indeed, as this very Court recently held and explained**, "*Guzman* only strengthens the proposition that

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 13 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

a plaintiff cannot pursue an equitable claim in federal court when he or she has an adequate remedy at law[,]" and it is therefore not only appropriate, but necessary, for a federal court to dismiss equitable claims – including a UCL restitution claim seeking a refund of payments – when the plaintiffs have adequate legal remedies by virtue of their statutory damages claims. *Zeller*, 2022 WL 17858032, at *6–7.

Without question, because this reasoning requires the dismissal of equitable claims at the pleading stage if the possibility of an adequate legal remedy exists, the dismissal of the UCL claim is compelled here when **Plaintiffs have actually received an adequate legal remedy** via the jury's RICO verdict.

As discussed herein, Plaintiffs have benefitted—to the tune of $4 million (trebled to $12 million)—through their RICO claim. This is more than an "adequate" legal remedy for their alleged economic losses involving the PEAKS loan program, the jury expressly found that, and none of Plaintiffs' anticipated arguments to the contrary can withstand scrutiny.

**First**, Plaintiffs should not be permitted to avoid the legal adequacy of RICO damages in light of their admission and representation in the operative SAC that they were not entitled to, and would not seek, any recovery under the UCL if they obtained monetary relief via RICO. Any attempt to reverse course on their pleading (which correctly sets forth the law on this issue) would be pure gamesmanship. The Supreme Court has warned that plaintiffs "are the masters of their complaints[,]" *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013), and it is well-established that a plaintiff should not be allowed to "deliberately chang[e] positions according to the exigencies of the moment[,]" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), nor "play[] fast and loose with the courts" by taking demonstrably inconsistent positions. *Diaz v. Tesla, Inc.*, No. 3:17-CV-06748-WHO, 2022 WL 17584235, at *2 (N.D. Cal. Dec. 12, 2022). Specifically with respect to the remedy sought, plaintiffs are under the same principles generally held to their pleadings. *See Fong v. United States*, 300 F.2d 400, 413–14 (9th Cir. 1962) (because plaintiffs must put defendants on notice

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 14 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

1    of the type and scope of recovery sought, plaintiffs are usually limited to recovering

2    the type and scope of recovery alleged under each cause of action).

3         Here, in violation of these precepts, Plaintiffs filed a SAC that was specifically

4    amended to clarify that Plaintiffs would not seek any UCL relief in the event

5    Plaintiffs prevailed on their RICO claim.  (*See* ECF 133-4 ¶ 193).  This intentional

6    change clearly reflected Plaintiffs' understanding of the above-cited law prohibiting

7    them from simultaneously pursuing legal and equitable remedies for the same alleged

8    loss.  Plaintiffs cannot walk-back and contradict that position now, much less to seek

9    tens of millions in **additional** recovery under a UCL claim they disavowed years ago.

10   Put simply, Plaintiffs must be held to the position they staked out in their pleadings,

11   particularly when that position was based on a correct – and still correct –

12   understanding of the law governing equitable jurisdiction.

13        **Second**, to the extent Plaintiffs are dissatisfied with the jury's RICO verdict

14   and argue they are entitled to pursue potentially greater monetary relief via the UCL,

15   that contention is **also** precluded by the case law holding that a plaintiff's legal

16   remedy is not inadequate just because the plaintiff may be able to recover more

17   money under an equitable theory.  Indeed, as **this Court** found in *Zeller*, "Plaintiffs'

18   arguments that equitable claims provide greater remedy . . . does not make their

19   equitable claims proper."  2022 WL 17858032, at *7; *see also McFall v. Perrigo Co.*,

20   No. 220CV07752FLAMRWX, 2021 WL 2327936, at *15 (C.D. Cal. Apr. 15, 2021)

21   ("Although Plaintiffs may prefer to maximize their ultimate recovery, the mere

22   possibility that three years' worth of legal damages under the CLRA could be less

23   than four years of equitable restitution under the UCL does not render three years'

24   worth of legal damages inadequate, such that equitable restitution is warranted.").

25        **Third**, to the extent Plaintiffs try to draw a substantive distinction between the

26   relief they have sought under RICO versus the UCL, any such tactic must fail.  In

27   their SAC and discovery responses, Plaintiffs expressly admitted that they sought

28   identical relief on their RICO and UCL claims – namely, a refund of all amounts paid

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 15 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

to Vervent during the relevant time period.  *Compare* SAC ¶ 166 ("[Plaintiffs] suffered injuries to their property [] to wit, their **loan payments**, and are therefore entitled to trebled damages in an amount approximating $129 million, plus reasonable attorney's fees and costs") *with* SAC ¶ 193 ("[B]ut only in the event RICO damages are not granted [], the California members of the RICO Class are entitled to restitution in the amount of their portion of the $43 million in **loan payments** made by the RICO class, pursuant to the UCL").  If it were not clear that Plaintiffs sought the exact same recovery under the exact same theory under the UCL that they were ultimately awarded via RICO damages, each Plaintiff admitted in discovery responses that the amount they sought via RICO damages was—down to the penny— the exact same amount they sought via purported "restitution" under the UCL.  *See, e.g.*, Dkt. No. 158-2 at 97:15-21, 119:11–17, 141:22-28.

Under *Sonner* and its progeny, Plaintiffs' contention that RICO damages are somehow inadequate is squarely precluded.  *See* 971 F.3d at 844 ("Sonner concedes that she seeks the same sum in equitable restitution as 'a full refund of the purchase price'—$32,000,000—as she requested in damages to compensate her for the same past harm. Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion.").  In other words, Plaintiffs have obtained an adequate remedy at law, and a UCL claim for restitution seeking recovery under the exact same theory is therefore extinguished as a matter of law.

Further, the mere fact that relief may be calculated differently under legal and equitable theories is irrelevant because "an adequate legal remedy need not be an identical legal remedy."  *Ketayi v. Health Enrollment Grp.*, 2021 WL 2864481, at *10 (S.D. Cal. July 8, 2021).  Where the claims are based on the same set of facts and a remedy at law exists, the award of money damages is an adequate remedy even if a different amount was sought as restitution.  *See Heredia v. Sunrise Senior Living LLC*, No. 818CV01974JLSJDE, 2021 WL 819159, at *4–5 (C.D. Cal. Feb. 10, 2021)

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)                - 16 -                Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

("Plaintiffs have failed to explain how their claims for damages – which are based on the same factual predicate as their claim for restitution and seek the same relief, i.e., the return of fees paid to [Defendant] – are any less prompt, certain, or efficient than restitution.  Plaintiffs first argue that UCL restitution and CLRA damages serve different purposes . . . . But Plaintiffs do not explain how this makes money damages inadequate to compensate them for their fees paid to [Defendant].").

In the simplest terms – and by their own admission – Plaintiffs' UCL claim arises from the **same** factual predicate (the PEAKS loan program) and seeks relief for the **same** alleged losses as their RICO cause of action (payments made on their PEAKS loans), and it thus **cannot** be maintained after Plaintiffs obtained RICO damages.  Despite previously recognizing and conceding these dispositive points, Plaintiffs now seek to evade them in order to pursue a double-recovery and windfall.  Because this is precisely what Ninth Circuit law governing equitable jurisdiction forbids, the Court must dismiss Plaintiffs' UCL claim.  *See also Stafford v. Rite Aid Corp.*, No. 17-CV-1340 TWR (JLB), 2023 WL 2876109, at *5 (S.D. Cal. Apr. 10, 2023) (dismissing Plaintiffs' UCL claims for failure to sufficiently allege inadequacy of legal remedies via a motion for judgment on the pleadings *nearly six years after the case was filed*); Fed. R. Civ. P. 12(c), (h)(2) (allowing a motion for failure to state a claim upon which relief can be granted to be raised at the time of trial and motion for judgment on pleadings to be heard after pleadings are closed).

## II.   THE SEVENTH AMENDMENT PROHIBITS PLAINTIFFS FROM RECOVERING MORE THAN THE JURY'S DETERMINATION OF PLAINTIFFS' LOSS.

Even were this Court to overlook the lack of equitable jurisdiction over Plaintiffs' UCL claim, the Seventh Amendment and corresponding Ninth Circuit precedent independently prohibit the Court from granting Plaintiffs any monetary relief above-and-beyond the RICO damages awarded by the jury.

"The Seventh Amendment provides that no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 17 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

of the common law[,]" and "it would be a violation of the Seventh Amendment right to jury trial for the court to disregard a jury's finding of fact." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828-829 (9th Cir. 2013). Thus, "in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, in deciding equitable claim the Seventh Amendment requires the trial judge to follow the jury's **implicit and explicit** factual determinations." *Id.* (emphasis added). In other words, a jury's findings during phase one of trial are binding upon, and cannot be ignored or overridden by, a court in a second equitable phase. *See Los Angeles Police Protective Language v. Gates*, 995 F.2d 1469, 1473-75 (9th Cir. 1993) (reversing district court's denial of equitable relief when it was inconsistent with prior implicit findings in jury's verdict); *accord Hoopes v. Dolan*, 168 Cal. App. 4th 146, 158 (2008).

Here, the jury's explicit and implicit findings embodied in its RICO damages verdict are binding on the Court and preclude it from granting restitution under UCL.

**First**, the jury was instructed to – and did – calculate the total economic loss Plaintiffs experienced as a result of the PEAKS loan program. The jury was expressly instructed to determine the amount of money needed to "compensate" Plaintiffs based on their alleged "economic loss" and "economic harm," as follows:

> Instruction No. 20: If you decide that a Defendant conspired to violate RICO, you must decide whether that conspiracy caused Plaintiffs and class members injury . . . . If you conclude that a Defendant joined in a conspiracy to violate RICO, the Defendant is responsible for all damages caused by predicate acts committed by members of the conspiracy that caused injury to Plaintiffs and class members… The parties have stipulated that the class members paid Defendants $51,509,051.00 during th[e] [relevant] time period.

> Instruction No. 21: Damages means the amount of money that will reasonably and fairly compensate Plaintiffs and the Class for any injury you find was caused by defendant . . . . . In deciding this amount, you will consider only the Plaintiffs' economic loss, if any, caused by Defendants… The economic harm that Plaintiffs seek to recover is amount paid on PEAKS loans during the period starting April 10, 2016 to September 2020.

> Verdict Form No. 3: … State the amount, in dollars, that will fairly compensate Plaintiffs and the class.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 18 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

In response to these instructions – and despite being expressly advised of Plaintiffs' theory that they were entitled to recover all $51+ million paid to Vervent during the relevant time period (which theory Plaintiffs now seek to resurrect in phase two of trial) – the jury calculated Plaintiffs' economic loss as **$4 million**.  As a matter of law, this number reflects and constitutes the amount necessary to "restore [Plaintiffs] to the financial position [they] enjoyed prior to" the alleged "fraudulent transaction," including by returning all "out of pocket losses" they incurred.  *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS MANX, 2011 WL 4852314, at *8–9 (C.D. Cal. Oct. 13, 2011) (describing RICO damages).  Accordingly, the Court cannot legally reconsider that finding and conclude that Plaintiffs actually incurred more than $4 million in losses, especially where the standards for calculating RICO damages and UCL restitution are substantively aligned.

Specifically, it is clear that RICO damages and UCL restitution **are** essentially identical remedies because both seek to restore a plaintiff to the position it occupied prior to the disputed transaction.  *Compare Negrete*, 2011 WL 4852314 at *9 (stating that RICO damages are intended to restore a plaintiff to the position she was in prior to the transaction) *with Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) ("The object of restitution [under the UCL] is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.").  Of course, RICO damages are **even more expansive** than UCL restitution to the extent they are trebled.  *See PacifiCare Health Sys. v. Book*, 538 U.S. 401, 406 (2003) ("[W]e have repeatedly acknowledged that the treble-damages provision contained in RICO itself is remedial in nature" and is "designed to remedy economic injury").

As such, Plaintiffs cannot establish the validity of their UCL claim by falsely arguing it entitles them to different or potentially additional relief than RICO.  *See Ketayi*, 2021 WL 2864481, at *9–10 (RICO damages were an adequate legal remedy that precluded equitable relief under the UCL); *Indiana ex rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970, 981 n. 7 (N.D. Ind. 2010) (collecting cases holding that RICO

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 19 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

damages are a legally adequate remedy that preclude equitable relief). Indeed, restitution under the UCL does not allow for "a full refund" that would "put [a plaintiff] in a better position than had she never" entered the transaction. *Niedermeier v. FCA US LLC*, 56 Cal. App. 5th 1052, 1061 (2020). Here, Plaintiffs seek a full refund **and** to be allowed to keep the proceeds of their loans.

Given these clear substantive parallels, the Court cannot legally award greater monetary relief under the UCL than the jury approved under the effectively the same RICO standard. To the contrary, any recoverable "restitution" is necessarily subsumed in the RICO damages award because such damages include out of pocket losses, and restitution requires the return of nothing more than that (i.e., money Plaintiffs parted with).

**Second**, the binding effect of the jury's verdict is particularly clear because Plaintiffs' RICO and UCL claims share the same factual predicate involving Vervent's participation in the PEAKS loan program. This is apparent from the face of Plaintiffs' operative SAC and indeed was the entire basis of the evidence and arguments Plaintiffs offered at trial. Whether couched as concealment, nondisclosure, or a scheme to defraud, at bottom, Plaintiffs cannot avoid that their UCL claim is grounded in the same set of facts as its RICO claims – that Vervent serviced PEAKS loans. *See* Instruction No. 19.

In sum: (1) in phase one of trial, the jury necessarily determined Plaintiffs' total economic loss resulting from the payments they made related to the PEAKS loan program; (2) in making that factual finding, the jury rejected Plaintiffs' expansive theory of economic harm; and (3) the Seventh Amendment renders the jury's express and implied findings binding on the Court, and the Court therefore cannot legally grant Plaintiffs "restitution" for loan payments the jury was expressly instructed on and aware of, but declined to award as losses. Although Plaintiffs may be disappointed in their $4 million award, it remains that they had their day in court.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 20 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

**III. IF THE COURT WERE TO EXERCISE JURISDICTION AND ADJUDICATE THE UCL CLAIM, THERE IS NO LIABILITY UNDER THE "UNFAIR" PRONG, AND THERE IS NOTHING LEFT TO RECOVER UNDER THE "UNLAWFUL" PRONG**

There is no basis for Plaintiffs to recover under either the "unfair" or the "unlawful" prong of the UCL (the only two prongs they proceed under).  At bottom, Plaintiffs will receive a $12 million award which wholly consumes any award of restitution or disgorgement under the UCL.  This is so because RICO damages are trebled to ensure full and complete recovery.  If this Court ignores its jurisdictional restriction and Vervent's Seventh Amendment rights, electing instead to evaluate equitable remedies under the UCL, it remains that the maximum Plaintiffs could recover—either under a theory of restitution or a theory of disgorgement—*falls short of $12 million.*  Thus, there is nothing further to award on an equitable basis.

**A.   For the Reasons the Court Has Already Agreed With, Plaintiffs' "Unfair" Prong of Their UCL Claim Must Be Dismissed**

Plaintiffs plead a theory under two prongs of the UCL (*see* SAC ¶ 187), a theory under the "unfair" prong (SAC ¶ 189), and a theory under the "unlawful" prong (SAC ¶ 188).  Plaintiffs' "unfair" prong theory, however, is premised solely on Plaintiffs' Disclosure Theory—the same theory Plaintiffs conceded had to be dismissed under their now defunct Debt Collection claims.

**First**, as argued in Defendants' June 5, 2023 Trial Brief, because Plaintiffs' "unfair" prong is premised entirely on allegations relating to alleged failure to provide TILA disclosures, the theory is preempted by TILA's one-year statute of limitations and time-barred.  Dkt. No. 245 at 14–15 (citing among other cases, *Jordan v. Pau. Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010)).  TILA's one-year limitations period for money damages runs from "the date the loan documents are signed," and in this case all loan documents were signed in 2010 and 2011.  Dkt. No. 274 at 16 (citing among other cases, *Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1157 (N.D. Cal. 2011)).  At least 19 cases from courts of the Ninth Circuit

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)         - 21 -         Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

addressing this issue make clear that a UCL claim based on TILA disclosure allegations is subject to and cannot survive beyond TILA's one-year statute of limitations. *See* Dkt. No. 245 at 17–18 (citing among other cases *Zlotnick v. U.S. Bancorp*, 2009 WL 5178030, at \*3 (N.D. Cal. Dec. 22, 2009) (dismissing UCL claim based on TILA disclosure because courts cannot "allow [] plaintiffs to seek relief for TILA violations [] after TILA's statute of limitations has expired.")). Plaintiffs' "unfair" prong theory is time-barred.

**Second**, even if Plaintiffs' "unfair" prong theory were not time-barred, the theory that a loan originator's failure to provide TILA disclosures means the loan is never "consummated" is legally unfounded and expressly refuted by controlling cases, statutes, and regulations. As mentioned above, after Defendants briefed this issue for the Court during trial, (*see* Dkt. No. 274 at 14–23), Plaintiffs conceded their Disclosure Theory was not supported by law, the Court agreed with Defendants and also announced that such a theory would require individualized inquiries into each borrowers' loan file so the theory is not appropriately advanced on a class action basis. The Disclosure Theory was dismissed under the Debt-Collection claims, and because Plaintiffs' "unfair" prong under their UCL claim is premised solely on that same theory, it also should be dismissed, for the same reasons.

Accordingly, if the Court were to reach the UCL Claim, Plaintiffs' "unfair" prong should be dismissed and only the "unlawful" prong addressed.

**B.** **Recovery Under the "Unlawful" Prong Would Be An Impermissible Windfall When the Verdict Exceeds Both Restitution and Disgorgement.**

**1.** **The RICO Verdict Already Provided Recovery for the Class's Total Economic Loss.**

As discussed in Section II above, Plaintiffs have already received an award of their total "economic loss," per the jury instructions on the RICO claim. Where, as here, restitution has already been accounted for in damages—and where restitution cannot exceed \$5.201 million—awarding restitution *in addition to* damages would impermissibly award a windfall.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 22 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

2.      **Restitution under the UCL is limited only to California Borrowers.**

*In arguendo*, even if the Court were to accept Plaintiffs' theory that an award of the total amount of borrower payments made under the PEAKS program would not amount to double recovery, Plaintiffs would be entitled to **recovery only for the California borrowers**.

Acknowledging this California-residents-only limitation, Plaintiffs in their SAC expressly requested only recovery for California residents (and even then, only in the event that damages were not awarded for their RICO Claim). *See* SAC ¶ 193 ("[O]nly in the event RICO damages are not granted . . . , **the California members of the RICO Class** are entitled to restitution in the amount of their portion of the $43 million in loan payments . . . ."); SAC Prayer for Relief E. (seeking "[r]estitution for all **California residents** who are members of the RICO Class under the UCL, in the event that damages are not provided to the Class . . . ."). To allow an expanded scope of recovery simply because Plaintiffs are not satisfied with their RICO recovery— without notice to Defendants—would run counter to law and would implicate due process concerns. *Fong*, 300 F.2d at 413–14; *see Cadence Design Sys., Inc. v. Viera*, 836 F. App'x 493, 496 (9th Cir. 2020) (due process concerns warrant district court refusing to permit a plaintiff to expand its theories of recovery after trial).

To the extent this point requires further expounding beyond accepting at face what Plaintiffs themselves claim they are entitled to seek, their recovery is limited to California PEAKS borrowers only. "California law embodies a presumption against the extraterritorial application of its statutes." *In re Ferrero Litig.*, 278 F.R.D. 552, 561 (S.D. Cal. 2011). The UCL does not have extraterritorial reach and thus non-California residents cannot pursue UCL class claims for injuries suffered outside of California. *See Speyer v. Avis Rent a Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1098–99 (S.D. Cal. 2005), *aff'd*, 242 F. App'x 474 (9th Cir. 2007) (**Sabraw, J.**) (discussing seminal California case delineating territorial limits of UCL applicability given the California "Legislature did not intend the statutes of this state to have force or

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)                - 23 -                Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

operation beyond the boundaries of the state"). As Plaintiffs' own allegations acknowledge, non-California residents were not harmed in California as is necessary to pursue a UCL claim in this case; they were harmed in their respective states. Because what matters for purposes of the UCL is where the borrowers suffered their harm, only California PEAKS borrowers can obtain recovery under Plaintiffs' UCL Claim under the facts of this case. Providing California UCL recovery to thousands of non-California borrowers harmed in their respective states and not in California would run directly counter to the well-established territorial bounds of the UCL. *In re Ferrero Litig.*, 278 F.R.D. at 561; *Speyer*, 415 F. Supp. 2d at 1098–99.

Thus, Plaintiffs' recovery would be limited to far short of the requested $51.5 million in borrower payments. Specifically, Plaintiffs' recovery would be limited to $5.201 Million. *See* Bench Trial Ex. A at Cell Q-1374 (PDF-version at 64).

But again, **Plaintiffs have been awarded $12 million for their economic loss**—that $5.201 million is subsumed within the $12 million they have already been awarded under RICO**. What Plaintiffs paid toward their PEAKS loans represents their economic loss and Plaintiffs paid $5.201 million. To give it back is restitution and it has been given back through their $12 million award.

### 3. The RICO Verdict Already Requires Vervent to Disgorge Any Profits Made from the PEAKS loans.

Plaintiffs' attempt to recover the amount of all borrower payments made is inappropriate. That figure represents damages and not restitution as against Defendants here, who never obtained Plaintiffs' loan payments. *See* Dkt. No. 158-2 at 119. Setting aside, for a moment, that the RICO award already achieves restitution as discussed above, the only other **conceivable** equitable remedy would be disgorgement of the profits Defendants earned for servicing the PEAKS loan program. That amount is approximately $3.5 Million. *See* Jury Trial Ex. C. And that amount is also subsumed within the $12 million RICO award.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)    - 24 -    Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

**First**, restitution is the only form of monetary recovery allowed under the UCL.  *Korea Supply*, 29 Cal. 4th at 44 (2003) ("[D]amages cannot be recovered.")

**Second**, "[t]o obtain restitution, the plaintiff has to identify 'money' or 'property' wrongfully held by a UCL defendant, not someone else." *Rutter*, Relief Available Under §§ 17200 and 17500, Bus. & Prof.C. 17200, Ch. 8-A (citing *Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 315 (2022)). Thus, a borrower whose home was sold at auction could not obtain restitution of her house from the auctioneer or original lender, as title had passed to another lender whom the plaintiff did not name as a UCL defendant. *Id.*

Here, Plaintiffs' prior complaint initially sought injunctive relief under their UCL Claim. *See* FAC Prayers for Relief. But, just as in the *Morris* case, Plaintiffs have pleaded themselves out of recovery of any monetary restitution of their payments when they dismissed Deutsche Bank from the case (the entity who obtained or "acquired" their loan payments) and tried to maintain the claim against a loan servicer who never obtained title to or kept their payments. *See id.*; *see also Daniels v. Select Portfolio Serv. Inc.*, 246 Cal. App. 4th 1150, 1187 (2016) (stating plaintiff cannot maintain UCL claim for restitution against loan servicer absent any allegation that the servicer obtained the money the borrower paid). This Court has already agreed with this exact analysis and thus determined that Plaintiffs cannot seek a return of their payments from the Vervent Defendants—who do not have and never "obtained" their payments—but instead could seek disgorgement of the profits Defendants earned for servicing the program. *Aliff v. Vervent Inc.*, No. 20-CV-697-DMS-AHG, 2022 WL 3588322, at *8 (S.D. Cal. Aug. 22, 2022) (**Sabraw, J.**). The seminal case on this issue also dictates the same result. *Korea Supply Co.*, 29 Cal. 4th at 1145 ("[D]isgorgement of money obtained . . . is an available remedy in a representative action only to the extent that it constitutes restitution.").

The evidence at trial showed Vervent earned roughly $3.5 Million during the limitations period. *See* Jury Trial Ex. C. If the $12 million award did not already

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 25 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2

account for this, Plaintiffs might be entitled to disgorgement of the $3.5 million. But it of course did, as the jury calculated and awarded Plaintiffs' total economic loss.

Accordingly, if the Court were to reach an adjudication of the UCL Claim despite each of the aforementioned controlling reasons not to reach such an adjudication, it remains that Plaintiffs' recovery under the UCL (either $3.5 million in disgorgement or $5.201 million in restitution) has already been awarded through RICO damages of $12 million. To award more is to award a windfall.

## CONCLUSION

For each of the foregoing reasons, the Court lacks jurisdiction to adjudicate Plaintiffs' UCL Claim. Plaintiffs have received an award which accounts for their economic loss and, as such, RICO damages accomplishes the same goals as UCL restitution. Plaintiffs cannot recover twice. However, if the Court were to reach an adjudication of the UCL Claim despite this, Plaintiffs' recovery would be limited, in accordance with their own allegations and controlling law, to recovery of either $3.5 million or $5.201 million in restitution payable to California PEAKS borrowers only.

Dated:  July 17, 2023                    **ARENTFOX SCHIFF LLP**


By: */s/ John S. Purcell*
    JOHN S. PURCELL
    DOUGLAS E. HEWLETT, JR.

    Attorneys for Defendants
    VERVENT INC. fka FIRST
    ASSOCIATES LOAN SERVICING,
    LLC; ACTIVATE FINANCIAL, LLC;
    DAVID JOHNSON; and LAURENCE
    CHIAVARO

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 26 -          Defs.' Trial Brief re: Pls.' UCL Claim

AFDOCS:198551056.2