BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
JAMES M. DAVIS (301636)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
jdavis@bholaw.com

LANGER GROGAN & DIVER, PC
IRV ACKELSBERG (*pro hac vice*)
JOHN J. GROGAN (*pro hac vice*)
DAVID A. NAGDEMAN (*pro hac vice*)
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: 215/320-5660
215/320-5703 (fax)
iackelsberg@langergrogan.com
jgrogan@langergrogan.com
dnagdeman@langergrogan.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER TURREY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VERVENT, INC., etc., et al.,<br><br>Defendants. | Case No. 3:20-cv-00697-DMS-AHG<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' ADDITIONAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT ON UCL CLAIM**<br><br>District Judge Dana M. Sabraw<br>Courtroom 13A, 13th Fl. (Carter-Keep)<br>Magistrate Judge Allison H. Goddard<br>Chambers Room 3B, (Schwartz)<br><br>Complaint Filed: April 10, 2020<br>Trial Date: June 8, 2023<br><br>**JURY TRIAL DEMANDED** |

(vertical left margin) BLOOD HURST & O' REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O' REARDON, LLP

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ............................................................................................. 2

      A.    Class Members Are Entitled to UCL Restitution ................................... 2

            1.    Plaintiffs' "Unlawful" UCL Claim .............................................. 2

            2.    Plaintiffs' "Unfair" UCL Claim .................................................. 4

      B.    The Court Has Equitable Jurisdiction to Adjudicate the UCL Claim ............................................................................................. 5

            1.    The Awarded RICO Damages Are Not an Adequate Remedy at Law ...................................................................... 6

            2.    Defendants Consented to Equitable Jurisdiction and Otherwise Waived Any Challenge to It .................................. 8

            3.    Defendants Are Judicially Estopped from Challenging the Court's Equitable Jurisdiction ...................................... 11

      C.    The Court Properly Certified a Nationwide UCL Class ....................... 12

      D.    Plaintiff Hernandez Properly Represents the Nationwide UCL Class ............................................................................................. 14

III.  CONCLUSION ........................................................................................ 14

00204750

1

# **TABLE OF AUTHORITIES**

2

3

**Page(s)**

4

**Cases**

5

*Alkayali v. den Hoed,*
6   No. 3:18-cv-777-H-JMA, 2018 U.S. Dist. LEXIS 118304
    (S.D. Cal. July 16, 2018) ................................................................. 7

7

*Am. Mills Co. v. Am. Sur. Co.,*
8   260 U.S. 360 (1922) ........................................................................ 9

9

*Am. Philatelic Soc. v. Claibourne,*
10   3 Cal. 2d 689 (1935) ...................................................................... 4

11

*Atlas Life Ins. Co. v. W. I. S., Inc.,*
12   306 U.S. 563 (1939) ........................................................................ 8

13

*Castillo v. Bank of Am. N.A.,*
14   980 F.3d 723 (9th Cir. 2020) ......................................................... 14

15

*Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) .................................................................... 4
16

17

*Chavez v. Blue Sky Nat. Beverage Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010) ................................................... 12
18

*Clark v. Super. Ct.,*
19   50 Cal. 4th 605 (2010) .................................................................... 7

20

*Clay v. Cytosport, Inc.,*
21   No. 3:15-cv-00165-L-AGS, 2018 U.S. Dist. LEXIS 153124
    (S.D. Cal. Sept. 7, 2018) .......................................................... 12, 13
22

23

*Clevenger v. Welch Foods Inc.,*
    No. SACV 20-01859-CJC, 2022 U.S. Dist. LEXIS 235432
24   (C.D. Cal. Dec. 14, 2022) .............................................................. 11

25

*Clothesrigger, Inc. v. GTE Corp.,*
26   191 Cal. App. 3d 605 (1987) .................................................... 12, 13

27

*Colegrove v. Green,*
28   328 U.S. 549 (1946) ........................................................................ 9

BLOOD HURST & O' REARDON, LLP

00206431

BLOOD HURST & O' REARDON, LLP

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000) ............................................................................. 6

*Drakeford v. Capital Ben., Inc.*,
   No. 20-cv-04161-WHO, 2022 U.S. Dist. LEXIS 120934
   (N.D. Cal. July 8, 2022) ........................................................................... 3

*Epic Games, Inc v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) .................................................................... 4

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ................................................. 13

*Fowler v. Wells Fargo Bank, N.A.*,
   No. 17-cv-02092-HSG, 2017 U.S. Dist. LEXIS 146732
   (N.D. Cal. Sept. 11, 2017) ....................................................................... 6

*Guar. Trust Co. v. York*,
   326 U.S. 99 (1945) ................................................................................... 6

*Guzman v. Polaris Indus.*,
   49 F.4th 1308 (9th Cir. 2022) ......................................................... 6, 8, 12

*Hahn v. Massage Envy Franchising, LLC*,
   No. 12cv153 DMS (BGS), 2014 U.S. Dist. LEXIS 147899
   (S.D. Cal. Sept. 25, 2014) ........................................................................ 6

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) .................................................................. 11

*Hurtado v. Super. Ct.*,
   11 Cal. 3d 574 (1974) ............................................................................ 13

*Kasel v. Remington Arms Co.*,
   24 Cal. App. 3d 711 (1972) ................................................................... 13

*People ex rel. Kennedy v. Beaumont Invest., Ltd.*,
   111 Cal. App. 4th 102 (2003) .................................................................. 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................................ 6, 7

*Kraus v. Trinity Mgmt. Servs., Inc.*,
   23 Cal. 4th 116 (2000) ............................................................................. 6

00204750

*Matthews v. Rodgers*,
284 U.S. 521 (1932) ........................................................................9

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ......................................................13

*Moran v. Prime Healthcare Mgmt., Inc.*,
3 Cal. App. 5th 1131 (2016)..........................................................4

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ....................................................................12

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
No. 5:16-cv-06370-EJD, 2020 U.S. Dist. LEXIS 62795
(N.D. Cal. Apr. 9, 2020)................................................................3

*Osborn v. Griffin*,
865 F.3d 417 (6th Cir. 2017) ........................................................7

*Pa. v. Williams*,
294 U.S. 176 (1935) ......................................................................9

*Phillips Petroleum, Co. v. Shutts*,
472 U.S. 797 (1985) ....................................................................13

*Piccarreto v. Presstek, LLC*,
No. CV 16-1862 DMG, 2017 U.S. Dist. LEXIS 137255
(C.D. Cal. Aug. 24, 2017) ..............................................................3

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
Nos. ML 10-02199 DDP, 2012 U.S. Dist. LEXIS 141150
(C.D. Cal. Sept. 28, 2012) ..........................................................12

*Pusey & Jones Co. v. Hanssen*,
261 U.S. 491 (1923) ......................................................................9

*Rose v. Bank of Am., N.A.*,
57 Cal. 4th 390 (2013)..................................................................6

*Ruhrgas Ag v. Marathon Oil Co.*,
526 U.S. 574 (1999) ......................................................................8

*Russell v. Rolfs*,
893 F.2d 1033 (9th Cir. 1990) ....................................................11

BLOOD HURST & O' REARDON, LLP

*Rutledge v. Hewlett-Packard Co.*,
  238 Cal. App. 4th 1164 ............................................................................12

*Saunders v. Super. Ct.*,
  27 Cal. App. 4th 832 (1994) .......................................................................2

*SEC v. Huffman*,
  996 F.2d 800 (5th Cir. 1993) ......................................................................7

*Singer Sewing Mach. Co. v. Benedict*,
  229 U.S. 481 (1913) ...................................................................................9

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ......................................................................6

*Turrey v. Vervent, Inc.*,
  No. 20-CV-0697 DMS (AHG), 2023 U.S. Dist. LEXIS 69654
  (S.D. Cal. Apr. 20, 2023) ...........................................................................6

*Utne v. Home Depot U.S.A., Inc.*,
  No. 16-cv-01854-RS, 2022 U.S. Dist. LEXIS 82546
  (N.D. Cal. May 6, 2022) ...........................................................................10

*Wash. Mut. Bank v. Super. Ct.*,
  24 Cal. 4th 906 (2001) ..............................................................................13

*In re Wells Fargo Ins. Mktg. & Sales Practices Litig.*,
  No. SAML 17-02797 AG (KESx), 2018 U.S. Dist. LEXIS 230306
  (C.D. Cal. Dec. 14, 2018) ...........................................................................3

*Wershba v. Apple Computer, Inc.*,
  91 Cal. App. 4th 224 (2001) .....................................................................13

**Statutes**

Bus. & Prof. Code § 17200 ..................................................................1, 10, 14

Bus. & Prof. Code § 17203 ...........................................................................6

**Other Authorities**

Cal Const, Art. XV § 1 ................................................................................14

PLAINTIFFS' ADDITIONAL MEMO. ISO MOTION FOR ENTRY OF JUDGMENT ON UCL CLAIM

On July 17, 2023, Plaintiffs filed a motion and related documents for entry of judgment on their claim for violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ECF 314 and 314-1 through 314-5. Plaintiffs now submit the following memorandum addressing related issues raised by the Court and Defendants.

## I.    INTRODUCTION

The parties have litigated this case for more than three years, substantial motions including for summary judgment have been ruled upon; the classes have been certified; a two-week simultaneous bench and jury trial on Plaintiffs' UCL and RICO claims has taken place, with a jury verdict reached on the RICO claim. The next step is for the Court to decide the UCL claim. Plaintiffs seek an award of restitution in favor of Plaintiffs and the Class in the amount of $51,509,051, plus prejudgment interest, reflecting the money Class members paid because of Defendants' unfair business practices.

Defendants Vervent and Activate Financial's liability under the UCL is clear. The jury found they violated RICO, which establishes the predicate violation of the UCL's unlawful prong. Defendants' business acts and practices in servicing loans they knew to be fraudulent, servicing loan products they knew to be predatory, made coercively and with concealed terms, collecting on loans products that lacked adequate documentation, and misrepresenting the nature of that documentation to borrowers all separately violates the UCL's unfair prong.

In their prior briefing, Defendants raised no serious challenge to their substantive liability under the UCL. Instead, Defendants raise various procedural challenges which should all be rejected. First, Defendants challenge the Court's equitable jurisdiction, arguing that the $4 million awarded by the jury for the RICO claim reflects an adequate remedy at law. However, as Defendants have argued, the amount awarded by the jury on the RICO claim was a disgorgement measure of damages. This measure does not constitute an adequate remedy at law because the

UCL only permits restitution. The California Supreme Court has expressly held that disgorgement is not restitution and not an available remedy under the UCL. Restitution under the UCL restores victims to the status quo by returning money wrongfully taken from them. As stipulated by the parties, that amount is $51,509,051 – the amount Defendants collected from Class members from payments on PEAKS loans.

Defendants have also waived their challenge to the Court's equitable jurisdiction by consenting to that jurisdiction and otherwise failing to timely assert the affirmative defense until three weeks after the close of evidence and the return of the jury verdict. Defendants took a "wait and see" approach to avoid any chance they would be litigating on two fronts – in federal court and in state court. When they lost the RICO claim, all but ensuring they would also lose the UCL claim, Defendants changed position. Their litigation tactics go beyond waiver and warrant judicial estoppel.

Finally, UCL restitution should be awarded to all Class members. A nationwide class was properly certified, noticed without Defendants' opposition, and tried in accordance with Defendants' consent. Defendants have no basis to now assert the UCL class should be reduced in scope. Even if they were to move to partially decertify the Class – which they have not done – there are no new facts or changes in the law that would support their assertion.

## II. ARGUMENT

### A. Class Members Are Entitled to UCL Restitution

The following is a summary of Plaintiffs' UCL claim. The facts and applicable legal principles are set out in more detail in Plaintiffs' initial UCL brief. *See* ECF 314.

#### 1. Plaintiffs' "Unlawful" UCL Claim

"Unlawful" practices prohibited by the UCL "are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838–39 (1994). Plaintiffs'

BLOOD HURST & O' REARDON, LLP

"unlawful" UCL claim against Defendants Vervent and Activate Financial is based on their violation of RICO, 18 U.S.C. § 1962(d).

On June 22, 2023, the jury returned a verdict finding that Plaintiffs proved by a preponderance of the evidence that Defendants Vervent and Activate Financial violated RICO, 18 U.S.C. § 1962(d), by knowingly facilitating the PEAKS loan program which the jury found to constitute a RICO enterprise that was conducted through a pattern of mail or wire fraud.[1] A RICO violation may serve as "the basis for the 'unlawful' variety of their UCL claim." *In re Wells Fargo Ins. Mktg. & Sales Practices Litig.*, No. SAML 17-02797 AG (KESx), 2018 U.S. Dist. LEXIS 230306, at *53 (C.D. Cal. Dec. 14, 2018).

Here, the "jury's findings as to Defendant's violations of law are sufficient to demonstrate that Defendant's conduct was 'unlawful' under the UCL." *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-cv-06370-EJD, 2020 U.S. Dist. LEXIS 62795, at *14–15 (N.D. Cal. Apr. 9, 2020), *accord Drakeford v. Capital Ben., Inc.*, No. 20-cv-04161-WHO, 2022 U.S. Dist. LEXIS 120934, at *27 (N.D. Cal. July 8, 2022) ("unlawful" "business acts and practices [under] the UCL … [for] predicate violations of RESPA and the Rosenthal Act identified by the jury verdict."); *Piccarreto v. Presstek, LLC*, No. CV 16-1862 DMG (JCx), 2017 U.S. Dist. LEXIS 137255, at *17 (C.D. Cal. Aug. 24, 2017) ("Since [Plaintiff's] UCL claim is based on the same underlying facts as the legal claim decided by the jury, it follows from the jury's explicit determination on the legal claim that [Plaintiff] satisfied his burden of establishing by a preponderance of the evidence that [Defendant] engaged in an unlawful business practice."). Defendants have raised no substantive challenge to liability under the "unlawful" prong of the UCL.

Accordingly, because the jury found that Defendants Vervent and Activate Financial violated RICO, 18 U.S.C. § 1962(d), the Court should likewise find in favor

---

[1] *See* ECF 300 (Jury Verdict).

Case No. 3:20-cv-00697-DMS-AHG

BLOOD HURST & O' REARDON, LLP

00206431

of Plaintiffs' and Class members' "unlawful" UCL claim.

### 2. Plaintiffs' "Unfair" UCL Claim

A business practice may be "unfair" in violation of the UCL "even if not specifically proscribed by some other law." *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The unfair prong is "intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.'" *Id.* at 181 (quoting *Am. Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 698 (1935)); *see also Epic Games, Inc v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023) (same).

For actions brought by consumers, courts have employed three tests under which a business practice can be found "unfair."

> One states an "unfair" business practice occurs when that practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." [] A second rule provides the "public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." [] A third holds "[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."

*Moran v. Prime Healthcare Mgmt., Inc.*, 3 Cal. App. 5th 1131, 1150 (2016) (citations omitted).

Under any of these tests, the evidence shows that Defendants Vervent and Activate Financial engaged in conduct that was "unfair." Their conduct was immoral, unethical, oppressive, unscrupulous; it violated public policy as set forth by statutory and regulatory provisions; and it caused substantial injury to the Class that was not outweighed by any countervailing consumer benefit.

As more fully detailed in Plaintiffs' initial UCL brief, ECF 314, Defendants' acts and practices constitute unfair business acts and practices in numerous ways, including ways that go beyond the facts establishing the RICO claim. First, they engaged in an array of loan servicing activities—billing and collecting and reporting to credit agencies—on behalf of a private student loan program that was a sham. They

BLOOD HURST & O' REARDON, LLP

PLAINTIFFS' ADDITIONAL MEMO. ISO MOTION FOR ENTRY OF JUDGMENT ON UCL CLAIM

knew there was no outside lender expressing confidence in the bona fides of an ITT education, no expectation of substantial borrower repayments, and no fully formed loan agreements. Instead, as Defendants themselves understood, PEAKS was little more than a financial maneuver by ITT that Defendants chose to facilitate for profit. Defendants perpetuated the effects of this financial maneuver even after ITT collapsed under the weight of its fraud. Second, in addition to the fraudulent purposes underlying the PEAKS program, the program itself was predatory, consisting of loans targeted to vulnerable consumers that were made in coercive circumstances that concealed essential loan terms, including their origination fees, high-rate, compounding interest charges, loan payment amounts, and the loan amounts. Third, Defendants collected on loans for which they lacked adequate loan documentation and actively misrepresented the nature of that documentation to borrowers. These business acts and practices meet each of the three alternative tests for an unfair business practice: they were immoral, oppressive, and unscrupulous, and caused substantial consumer injury; they violated public policy as expressed in statutes, regulations, and case law; and the injury to borrowers was substantial, and not outweighed by any legitimate benefits to them or to competition. Defendants have raised no serious challenge to substantive liability under the UCL's "unfair" prong.

As such, Plaintiffs and the Class are entitled to full restitution. Consistent with the Court's previous rulings in this case, the amount of restitution for Plaintiffs' and class members' UCL claim is $51,509,051.

**B.    The Court Has Equitable Jurisdiction to Adjudicate the UCL Claim**

After consenting to trial of the UCL claim in federal court, Defendants now assert federal courts lack equitable jurisdiction to hear this claim. The argument fails for two reasons. First, federal courts have equitable jurisdiction to hear the UCL claim because the RICO damages was not an adequate remedy at law as compared with restitution. Second, Defendants waived any challenge to equitable jurisdiction by

PLAINTIFFS' ADDITIONAL MEMO. ISO MOTION FOR ENTRY OF JUDGMENT ON UCL CLAIM

BLOOD HURST & O' REARDON, LLP

00206431

consenting to jurisdiction and not otherwise timely raising an objection to it. In fact, given Defendants' litigation conduct, they are estopped from doing so.

### 1.   The Awarded RICO Damages Are Not an Adequate Remedy at Law

As Defendants all but concede, the RICO damages awarded by the jury do not provide an adequate remedy at law. The UCL entitles Plaintiffs and the Class to restitution. Defendants argued for and received a disgorgement theory of damages. Disgorgement is not a permitted remedy under the UCL.

A federal court lacks jurisdiction to award equitable relief only when there is a legal remedy that is "'plain, adequate and complete.'" *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 n.3 (9th Cir. 2020) (quoting *Guar. Trust Co. v. York*, 326 U.S. 99, 105 (1945)); *see also Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022). The RICO damages are not adequate and complete.

The UCL provides its own equitable remedies, which are distinct from any remedy another law may provide. *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 397 (2013). These remedies are "cumulative to remedies available under other laws." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179 (2000); *see also* Bus. & Prof. Code § 17203; *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2017 U.S. Dist. LEXIS 146732, at *5 (N.D. Cal. Sept. 11, 2017) ("The remedies and penalties under the UCL are also cumulative to those under federal law.").

The UCL only authorizes courts to award restitution. *See* Bus. & Prof. Code § 17203. "The object of [UCL] restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockhead Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126–27 (2000); *Turrey v. Vervent, Inc.*, No. 20-CV-0697 DMS (AHG), 2023 U.S. Dist. LEXIS 69654, at *8–11 (S.D. Cal. Apr. 20, 2023). Restitution is "'measured by what was taken from the plaintiff,'" not what was gained by Defendants. *Hahn v. Massage Envy Franchising, LLC*, No. 12cv153 DMS (BGS),

BLOOD HURST & O' REARDON, LLP

2014 U.S. Dist. LEXIS 147899, at \*41 (S.D. Cal. Sept. 25, 2014) (Sabraw, J.) (quoting *Clark v. Super. Ct.*, 50 Cal. 4th 605, 613 (2010)).

At trial, Defendants argued for a disgorgement measure of RICO damages. ECF 314 at 24; *see also id.* at 12 (suggesting that jury instruction and evidence of the amount "Defendants made" supported jury's award). Defense counsel elicited testimony that Defendants did not keep the money they collected. In fact, defense witnesses testified they did not keep any of the money collected, but instead were paid by the PEAKS Trust to perform the servicing tasks in accordance with the Servicing Agreement. Defense counsel: "Under the Servicing Agreement, did Vervent keep or retain any of the loan payments it received from borrowers?" Mr. Johnson: "We did not. That all went straight to the PEAKS Trust." *See* Trial Tr., 165:7–9; *see also* Ex. 30 (Servicing Agreement) at 30-0011 and 30-0029. In closing, defense counsel argued that, at most, the jury should award the Class the money Defendants were paid. *See* Trial Tr., 1358:9–15.

But unlike disgorgement, the UCL is "not concerned with restoring the violator to the status quo ante. The focus instead is on the victim." *People ex rel. Kennedy v. Beaumont Invest., Ltd.*, 111 Cal. App. 4th 102, 134–35 (2003); *see also Cortez*, 23 Cal. 4th at 177 (same). Disgorgement is not restitution and is not a permitted remedy under the UCL. *See Korea Supply Co.*, 29 Cal. 4th at 1148; *see also Alkayali v. den Hoed*, No. 3:18-cv-777-H-JMA, 2018 U.S. Dist. LEXIS 118304, at \*15 n.4 (S.D. Cal. July 16, 2018) ("disgorgement" and "restitution" are "formally distinct"); *accord Osborn v. Griffin*, 865 F.3d 417, 461 (6th Cir. 2017) ("As used in modern parlance, disgorgement and restitution are distinct remedies that serve different purposes."); *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) ("Despite some casual references in our caselaw to the contrary, … disgorgement is not precisely restitution. Disgorgement wrests ill-gotten gains from the hands of a wrongdoer ... [and] does not aim to compensate the victims of the wrongful acts, as restitution does. Thus, a

BLOOD HURST & O' REARDON, LLP

00206431

disgorgement order might be for an amount more or less than that required to make the victims whole. It is not restitution.").

The money Class members lost as a result of Defendants' unfair business practices, and to which Class members have an ownership interest, is $51,509,051 in loan payments. ECF 238, ¶ 99. The $4,000,000 in RICO damages awarded by the jury does not compensate Class members under the UCL as it does not return them to the status quo.

Defendants made a strategic decision to argue disgorgement to the jury. They must now live with that choice.[2]

## 2. Defendants Consented to Equitable Jurisdiction and Otherwise Waived Any Challenge to It

However, the Court need not even address the adequacy of the remedy, because Defendants have waived their challenge to equitable jurisdiction by fully trying the equitable claim. Defendants waited until after three years of litigation and a trial before raising for the first time that Plaintiffs' UCL claim should be dismissed for lack of equitable jurisdiction. It is too late for Defendants to claim that the Court cannot hear a claim they have litigated to completion.

Federal courts must have subject matter, personal, and equitable jurisdiction to hear the merits of an equitable claim. *Guzman*, 49 F.4th at 1314. However, unlike subject matter jurisdiction, personal and equitable jurisdiction may be waived. *See Atlas Life Ins. Co. v. W. I. S., Inc.*, 306 U.S. 563, 568 n.1 (1939) ("Unlike the objection that the court is without jurisdiction as a federal court, the parties may waive their objections to the equity jurisdiction by consent, or by failure to take it seasonably.") (cleaned up and citations omitted); *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999) (unlike subject matter jurisdiction, personal jurisdiction represents "a

BLOOD HURST & O' REARDON, LLP

---

[2] Defendants' argument also proves too much. If the RICO damages here are supposed to be the same as restitution, then those damages should be $51,509,051 and the Court should grant Plaintiffs' Rule 59 motion. *See* ECF No. 313-2.

restriction on judicial power…as a matter of personal liberty" and can be waived). "Want of equity jurisdiction does not go to the power of a court in the same manner as want of jurisdiction over the subject matter. Thus, want of equity jurisdiction may be waived." *Colegrove v. Green*, 328 U.S. 549, 565 n.2 (1946) (Rutledge, J., concurring).

Waiver of a challenge to equitable jurisdiction occurs if the challenging party either fails to timely raise the issue of adequate legal remedy or consents to equitable jurisdiction through participation in the equitable proceedings. *See Matthews v. Rodgers*, 284 U.S. 521, 524–25 (1932) (an objection to a court's lack of equitable jurisdiction "may be treated as waived if the objection is not presented by the defendant *in limine*."); *Singer Sewing Mach. Co. v. Benedict*, 229 U.S. 481, 484 (1913) (same); *Pa. v. Williams*, 294 U.S. 176, 181 (1935) (same); *Am. Mills Co. v. Am. Sur. Co.*, 260 U.S. 360, 363 (1922) ("A defendant in a bill of equity may waive" the argument that plaintiff has an adequate remedy at law); *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 500–01 (1923) ("where the defendant has expressly consented to action by the court or has failed to object seasonably, the objection will be treated as waived.").

In *American Mills*, the Supreme Court explained that, as with personal jurisdiction, a defendant waives any objection to equity jurisdiction by substantively participating in the equity proceedings, even if an objection is raised but not decided earlier in the litigation. After making "the objection seasonably both by answer and by motions to dismiss[,] instead of renewing its motion to dismiss or insisting on the sufficiency of the first defense of its answer," the defendant in *American Mills* introduced evidence to the court in equity. 260 U.S. at 363. This was sufficient for the defendant to "waive[] its previous objection to the equitable jurisdiction…." *Id*. at 366. The Court analogized this to "a non-resident corporation, having saved its right to object to the service of summons, lost it, not by answer, but by a counterclaim." *Id*. Here, Defendants never objected to the Court's equitable jurisdiction until more than

1  three weeks after the jury returned a verdict and the presentation of evidence at the

2  UCL trial concluded. *See* ECF No. 312.

3      More than simply failing to object, Defendants have actively consented to the

4  Court's equitable jurisdiction from at least as early as when they agreed to the content

5  of and plan for notice to the Class that the UCL claim was certified and would be

6  litigated in federal court. *See* ECF 166 (Unopposed Motion for Approval of Class

7  Notice). They then expressly consented to this Court hearing the UCL claim when

8  they asked the Court to do so through the pretrial order, which requested that the UCL

9  claim be tried in federal court at the same time as the RICO claim. Pursuant to that

10  request, the Court ordered "Plaintiffs' claim for violation of the Unfair Competition

11  law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and the issue of Vervent's alter ego

12  liability are equitable, [] be tried by the Court. All other legal claims will be tried to

13  the jury." ECF 230. In accordance with that stipulated Pretrial Order, the parties

14  presented at trial and the Court received evidence on the UCL claim.

15      Defendants substantively and voluntarily participated in the equitable

16  proceedings before and during trial without objection to the Court's jurisdiction in

17  other ways, as well. Defendants moved *in limine* to preclude evidence of their or their

18  predecessor's failure to make TILA disclosures, which they acknowledged supported

19  Plaintiffs' UCL theory of liability. *See* ECF 205 (Defendants' MIL No. 1) at 5 (noting

20  that the operative complaint relies on an "alleged failure to provide TILA disclosures"

21  as support for Plaintiffs' UCL claim and arguing that such evidence should be

22  precluded at trial). After Plaintiffs rested at trial, Defendants brought a Federal Rule

23  of Civil Procedure 50(a) motion, arguing that judgment should be entered in their

24  favor on the UCL claim for lack of evidence—not because the Court lacked

25  jurisdiction to adjudicate the claim. *See* ECF 280 at 15–19. Challenging evidence,

26  engaging in motion practice, and otherwise litigating the UCL claim on the merits

27  represents express consent to the Court's equitable jurisdiction here. *Compare with*

28  *Utne v. Home Depot U.S.A., Inc.*, No. 16-cv-01854-RS, 2022 U.S. Dist. LEXIS

BLOOD HURST & O' REARDON, LLP

82546, at *4 (N.D. Cal. May 6, 2022) (finding no waiver of equitable jurisdiction when raised at summary judgment, but observing that "if the case were even a smidgen more advanced the issue would have to be addressed") *and Clevenger v. Welch Foods Inc.*, No. SACV 20-01859-CJC (JDEx), 2022 U.S. Dist. LEXIS 235432, at *7 (C.D. Cal. Dec. 14, 2022) (declining to find waiver where case had "only recently moved past the class certification stage.").

### 3.  Defendants Are Judicially Estopped from Challenging the Court's Equitable Jurisdiction

Defendants consented to equitable jurisdiction because there was a litigation advantage in doing so, when a single-track case might present the chance to effectively win on the UCL claim by prevailing on the RICO claim at trial. Because that gambit failed, Defendants seek to backtrack and claim that the equitable claim should have proceeded in a state court from the outset. Defendants' "clearly inconsistent" positions warrant judicial estoppel.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (emphasis omitted). Courts use this doctrine "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Id.* (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

The Supreme Court enumerated three factors in determining whether to apply the doctrine of judicial estoppel:

> "First, a party's later position must be 'clearly inconsistent' with its earlier position." "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" "A third consideration is whether the party seeking to assert an

BLOOD HURST & O' REARDON, LLP

inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Id.* at 782–83 (cleaned and quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).

Right up until the time they lost the jury trial, Defendants benefited from not challenging the Court's equitable jurisdiction. Had they successfully done so, they would have faced a two-front war, litigating in both federal and state court and giving Plaintiffs two opportunities to prevail. *See Guzman*, 49 F.4th at 1314–15 (reversing grant of summary judgment on UCL claim and remanding with instructions to dismiss UCL claim without prejudice). Consenting to the Court's equitable jurisdiction was a strategically rational choice. However, once they lost on the jury claims, their chances of losing on the UCL claim in federal court skyrocketed. It was only then that they raised the issue, now willing to take their chances by starting anew with the UCL claim in state court. Even if they lost again in state court, which they are likely to do based on the jury's findings, Defendants would benefit from the years of additional delay. Defendants have used the Court's and Plaintiffs' time in pursuing a strategy which they now disavow. They should not be allowed to do so to the prejudice of Plaintiffs.

## C.    The Court Properly Certified a Nationwide UCL Class

The Court properly certified a nationwide UCL class. UCL classes are regularly certified as nationwide classes. *See, e.g.*, *Clay v. Cytosport, Inc.*, No. 3:15-cv-00165-L-AGS, 2018 U.S. Dist. LEXIS 153124, at *38–40 (S.D. Cal. Sept. 7, 2018); *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, Nos. ML 10-02199 DDP (RZx), 2012 U.S. Dist. LEXIS 141150, at *8–15 (C.D. Cal. Sept. 28, 2012); *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 380 (N.D. Cal. 2010); *see also Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1189 (reversing trial court's order denying certification of nationwide UCL class); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 619–20 (1987) (same).

BLOOD HURST & O' REARDON, LLP

1    The issue is one of choice of law. The law of the forum state is presumed to

2    apply unless the proponent of a different state's laws meets its burden of raising and

3    of overcoming that presumption:

4    [Generally] speaking the forum will apply its own rule of decision unless
     a party litigant timely invokes the law of a foreign state. In such event he
5    must demonstrate that the latter rule of decision will further the interest
     of the foreign state and therefore that it is an appropriate one for the
6    forum to apply to the case before it.

7    *Clothesrigger*, 191 Cal. App. 3d at 614 (quoting *Hurtado v. Super. Ct.*, 11 Cal. 3d

8    574, 581 (1974)); *see also Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 919 (2001);

9    *Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 731 (1972); *Clay*, 2018 U.S. Dist.

10   LEXIS 153124, at *40–43.

11   Defendants never objected to the nationwide scope of the UCL claim. They

12   have never claimed another state's laws should apply, much less presented the Court

13   with a choice-of-law analysis.

14   Application of California law to a nationwide class is constitutional if

15   California has "significant contact or significant aggregation of contacts" to the

16   claims." *Wash. Mut. Bank*, 24 Cal. 4th at 921 (quoting *Phillips Petroleum, Co. v.*

17   *Shutts*, 472 U.S. 797, 821–22 (1985)) (cleaned up). Where the defendant is

18   headquartered in California and the claims emanate from California, California law

19   can be constitutionally applied. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th

20   224, 242 (2001); *Clothesrigger*, 191 Cal. App. 3d at 613; *Mazza v. Am. Honda Motor*

21   *Co.*, 666 F.3d 581, 590 (9th Cir. 2012); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d

22   1155, 1160 (C.D. Cal. 2012).

23   Here, Defendants are and were throughout the relevant time headquartered in

24   San Diego, California, and conducted all loan servicing activities from California.

25   Accordingly, non-California residents in the nationwide class can assert claims under

26   California law. Defendants did nothing to "defeat the presumption that California law

27   applies and to 'show[] a compelling reason justifying displacement of California

28   law.'" *Forcellati*, 876 F. Supp. 2d at 1160.

BLOOD HURST & O' REARDON, LLP

Defendants have argued that the pleadings, which were internally inconsistent, limit the requested relief under the UCL to California residents. Plaintiffs note that this issue has been fully briefed and the Court has taken Plaintiffs' Rule 15(b)(2) motion to amend under submission. *See* ECF 329. Plaintiffs' memoranda details how Defendants consistently and expressly consented to litigating and trying a nationwide UCL class.

**D.    Plaintiff Hernandez Properly Represents the Nationwide UCL Class**

Defendants previously argued that Plaintiff Hernandez cannot represent a nationwide class of borrowers because he is a California resident. *See* ECF 326 at 10–12. This has nothing to do with typicality. A class representative's claim is typical of those of the class if it is "reasonably co-extensive" with those of absent class members. *Castillo v. Bank of Am. N.A.*, 980 F.3d 723, 729 (9th Cir. 2020). Here, Mr. Hernandez' UCL claim is identical to those of the other class members. His place of residency does not change his or any Class member's UCL claim in any way. The Court has already determined that his claims are typical of the nationwide class. *See* ECF 151 at 12 and 27–28.

**III.   CONCLUSION**

For the reasons stated above and in Plaintiffs' Motion for Entry of Judgment on Claim for Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (ECF 314), the Court should enter judgment against Defendants Vervent and Activate Financial on the UCL claim in the amount of $51,509,051 in restitution plus prejudgment interest at the rate of 7% per annum. *See* Cal Const, Art. XV § 1.

Respectfully submitted,

Dated: September 5, 2023

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
JAMES M. DAVIS (301636)

By:      *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O' REARDON, LLP

1   501 West Broadway, Suite 1490
    San Diego, CA  92101
2   Tel: 619/338-1100
    619/338-1101 (fax)
3   tblood@bholaw.com
    lhurst@bholaw.com
4   jdavis@bholaw.com

5   LANGER GROGAN & DIVER, PC
    IRV ACKELSBERG (*pro hac vice*)
6   JOHN J. GROGAN (*pro hac vice*)
    DAVID A. NAGDEMAN (*pro hac vice*)
7   1717 Arch Street, Suite 4020
    Philadelphia, PA  19103
8   Tel: 215/320-5660
    215/320-5703 (fax)
9   iackelsberg@langergrogan.com
    jgrogan@langergrogan.com
10  dnagdeman@langergrogan.com

11  LAW OFFICE OF PAUL ARONS
    PAUL ARONS (CA #84970)
12  175 Gretchen Way
    Friday Harbor, WA  98250
13  Tel: 360/378-6496
    360/359-7170 (fax)
14  lopa@rockisland.com

15  *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O' REARDON, LLP

00206431

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on September 5, 2023, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of

4  such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I

5  hereby certify that I have mailed the foregoing document or paper via the United

6  States Postal Service to the non-CM/ECF participants indicated on the Electronic

7  Mail Notice List.

8      I certify under penalty of perjury that the foregoing is true and correct. Executed

9  on September 5, 2023.

10

11                                       *s/ Timothy G. Blood*
                                       TIMOTHY G. BLOOD

12                                 BLOOD HURST & O'REARDON, LLP
13                                 501 West Broadway, Suite 1490
                                   San Diego, CA 92101
                                   Tel: 619/338-1100
14                                 619/338-1101 (fax)
                                   tblood@bholaw.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

00206431

Case No. 3:20-cv-00697-DMS-AHG

PLAINTIFFS' ADDITIONAL MEMO. ISO MOTION FOR ENTRY OF JUDGMENT ON UCL CLAIM

BLOOD HURST & O' REARDON, LLP