1 John S. Purcell (SBN 158969)
2 Douglas E. Hewlett, Jr. (SBN 293438)
  **ARENTFOX SCHIFF LLP**
3 555 West Fifth Street, 48th Floor
  Los Angeles, California 90013-1065
  Telephone: 213.629.7400
4 Facsimile: 213.629.7401
  Email:    john.purcell@afslaw.com
5          douglas.hewlett@afslaw.com

6 Attorneys for Defendants
  VERVENT INC. fka FIRST ASSOCIATES
7 LOAN SERVICING, LLC; ACTIVATE
  FINANCIAL, LLC; DAVID JOHNSON;
8 and LAURENCE CHIAVARO

9

10                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA
11

12 | | |
|---|---|
| HEATHER TURREY, OLIVER FIETY, JORDAN HERNANDEZ, and JEFFREY SAZON, individually, and on behalf of all others similarly situated, | Case No. 3:20-CV-00697-DMS (AHG) |
| | **CLASS ACTION** |
| Plaintiffs, | **DEFENDANTS' TRIAL BRIEF RE: PLAINTIFFS' UCL CLAIM & MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 12(c), 12(h)(2), AND/OR 50(a)** |
| v. | |
| VERVENT, INC. fka FIRST ASSOCIATES LOAN SERVICING, LLC; ACTIVATE FINANCIAL, LLC; DAVID JOHNSON; and LAURENCE CHIAVARO | Compl.:      April 10, 2020 |
| | SAC filed:   Sept. 30, 2022 |
| Defendants. | Trial Dates:  June 8–22, 2023; September 5, 2023 (UCL Claim) |

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 1 -          Defs.' Trial Brief re: Pls.' UCL Claim & Mot. for J. as a Matter of Law

# TABLE OF CONTENTS

INTRODUCTION ................................................................................7

BACKGROUND ...............................................................................9

    A.    The First Amended Complaint and the "Disclosure Theory." ...........10

    B.    The Second Amended Complaint and the "Disclosure Theory." .......10

    C.    Trial: Only the RICO Claim Was Tried To The Jury. .......................11

    D.    The RICO Claim and Jury Instructions. ...........................................11

ARGUMENT....................................................................................12

I.    PLAINTIFFS' UCL CLAIM MUST BE DISMISSED FOR LACK OF EQUITABLE JURISDICTION ...............................................12

    A.    Under *Guzman, Sonner*, And *Utne*, Plaintiffs Have Received An Adequate Remedy At Law, Which Strips The Court Of Equitable Jurisdiction To Hear The UCL Claim. ...........................12

    B.    Plaintiffs' RICO Damages Are Not Inadequate Just Because Plaintiffs Claim They Could Obtain More Under the UCL ..............14

    C.    Judicial Estoppel Prevents Plaintiffs From Reversing Course After Pleading They Would Pursue a UCL Claim "Only In The Event" They Did Not Recover Under RICO. ...................................16

    D.    No Waiver Applies .............................................................................18

        1.    Equitable Jurisdiction Cannot Be Waived. ...............................18

        2.    Plaintiffs' Cases On This Issue Are Not Authoritative. ...........19

        3.    There Are No "Knowing and Intentional Acts" Suggesting Defendants' Intent To Waive. ...............................20

II.    THE SEVENTH AMENDMENT PROHIBITS PLAINTIFFS FROM RECOVERING MORE THAN THE JURY'S DETERMINATION OF PLAINTIFFS' LOSS. ...........................................................................21

III.    EVEN IF THE COURT EXERCISES JURISDICTION, PLAINTIFFS STILL ARE NOT ENTITLED TO ANY FURTHER RECOVERY .........24

    A.    For the Reasons the Court Has Already Agreed With, Plaintiffs' "Unfair" Prong of Their UCL Claim Must Be Dismissed .................24

    B.    Plaintiffs Still Would Not Be Entitled to Recover $51 Million..........25

        1.    The RICO Verdict Already Compensated all Loss..................25

        2.    Plaintiffs' UCL Claim is limited to recovery on behalf of California borrowers only. ........................................................26

            a.    *Plaintiffs' UCL Claim is California-only as a matter of pleading.* ....................................................26

            b.    *Plaintiffs' UCL Claim must be California-only* .............26

        3.    Plaintiffs have not and cannot make the choice-of-law showing required to pursue a nationwide UCL Claim. ............27

        4.    Defendants Did Not Consent to a Nationwide UCL Claim .....28

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)    - 2 -    Defs.' Trial Brief re: Pls.' UCL Claim

5.      The RICO Verdict Already Requires Vervent to Disgorge
        Any Profits Made from the PEAKS loans. .............................29

III.    PROPER DISPOSITION OF THE UCL CLAIM .......................................31

CONCLUSION ..............................................................................................31

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 3 -          Defs.' Trial Brief re: Pls.' UCL Claim

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. City of Costa Mesa*,
    718 F.3d 800 (9th Cir. 2013)..............................................................................22

*Aliff v. Vervent Inc.*,
    No. 20-CV-697-DMS-AHG, 2022 WL 3588322 (S.D. Cal. Aug.
    22, 2022) (Sabraw, J.) ......................................................................................30

*Cadence Design Sys., Inc. v. Viera*,
    836 F. App'x 493 (9th Cir. 2020)....................................................................26

*Cortez v. Purolator Air Filtration Prod. Co.*,
    23 Cal. 4th 163 (2000) .....................................................................................12

*Daniels v. Select Portfolio Serv. Inc.*,
    246 Cal. App. 4th 1150 (2016)........................................................................30

*Das v. WMC Mortg. Corp.*,
    831 F. Supp. 2d 1147, 1157 (N.D. Cal. 2011) ...............................................25

*Diaz v. Nationstar Mortg. LLC*, No. 17CV1607-MMA (BGS), 2018
    WL 1071699 (S.D. Cal. Feb. 27, 2018)..........................................................16

*Diaz v. Tesla, Inc.*,
    No. 3:17-CV-06748-WHO, 2022 WL 17584235 (N.D. Cal. Dec.
    12, 2022).........................................................................................................17

*In re Ferrero Litig.*,
    278 F.R.D. 552 (S.D. Cal. 2011) ....................................................................26

*Fong v. United States*,
    300 F.2d 400 (9th Cir. 1962)....................................................................17, 26

*Guzman v. Polaris Indus.*,
    49 F.4th 1308 (9th Cir. 2022).....................................................................*passim*

*Heredia v. Sunrise Senior Living LLC*,
    No. 818CV01974JLSJDE, 2021 WL 819159 (C.D. Cal. Feb. 10,
    2021) ...............................................................................................................15

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)    - 4 -    Defs.' Trial Brief re: Pls.' UCL Claim

*Hoopes v. Dolan*,
   168 Cal. App. 4th 146 (2008)...........................................................................22

*Indiana ex rel. Zoeller v. Pastrick*,
   696 F. Supp. 2d 970 (N.D. Ind. 2010) .......................................................23

*Jordan v. Pau. Fin., LLC*,
   745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010) ............................................25

*Ketayi v. Health Enrollment Grp.*,
   2021 WL 2864481 (S.D. Cal. July 8, 2021) .................................................23

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................................*passim*

*Los Angeles Police Protective Language v. Gates*,
   995 F.2d 1469 (9th Cir. 1993)......................................................................22

*McFall v. Perrigo Co.*,
   No. 220CV07752FLAMRWX, 2021 WL 2327936 (C.D. Cal. Apr.
   15, 2021)........................................................................................................14

*Morris v. JPMorgan Chase Bank, N.A.*,
   78 Cal. App. 5th 279, 315 (2022).................................................................30

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) .......................................................13

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   No. CV 05-6838 CAS MANX, 2011 WL 4852314 (C.D. Cal. Oct.
   13, 2011)........................................................................................................23

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)......................................................................................17

*Niedermeier v. FCA US LLC*,
   56 Cal. App. 5th 1052 (2020).......................................................................24

*PacifiCare Health Sys. v. Book*,
   538 U.S. 401 (2003)......................................................................................23

*Sonner v. Premium Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................*passim*

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)    - 5 -    Defs.' Trial Brief re: Pls.' UCL Claim

*Speyer v. Avis Rent a Car Sys., Inc.*,
    415 F. Supp. 2d 1090 (S.D. Cal. 2005), *aff'd*, 242 F. App'x 474 (9th
    Cir. 2007) (Sabraw, J.) ..............................................................................26, 27

*Std. Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) ........................................................................................17

*Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS, 2022 WL
    1443339, at *2 (N.D. Cal. May 6, 2022) ...................................................*passim*

*Zeller v. Optavia, LLC*,
    No. 22-CV-434-DMS-MSB, 2022 WL 17858032 (S.D. Cal. Dec.
    22, 2022) (Sabraw, J.) ................................................................................*passim*

**Statutes**

Fed. R. Civ. P. 12(c), (h)(2) ..............................................................................7, 16

Fed. R. Civ. P. 50(a) ...............................................................................................7

RICO ..............................................................................................................*passim*

**Other Authorities**

U.S. Const., 7th Am. ...........................................................................................*passim*

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)    - 6 -    Defs.' Trial Brief re: Pls.' UCL Claim

**PLEASE TAKE NOTICE** that Defendants Vervent, Inc. f/k/a First Associates Loan Servicing, LLC and Activate Financial, LLC (collectively, "Defendants") hereby move before the Honorable Dana M. Sabraw in Courtroom 13A located at 333 West Broadway, San Diego, California, 92101, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c), 12(h)(2), and/or 50(a), for judgment on the pleadings and/or as a matter of law, as argued below.

## MEMORANDUM OF POINTS & AUTHORITIES RE: UCL CLAIM

### INTRODUCTION

This case should be over. The jury verdict of $4 million on Plaintiffs' RICO claim – the only claim that survived to reach the jury – deprives the Court of any further jurisdiction to adjudicate Plaintiffs' UCL claim. As the Court appears to have decided, no additional trial or fact-finding is necessary. As matter of dispositive law, UCL claims are extinguished when an adequate remedy at law is available.

In their pleadings, Plaintiffs expressly advised the Court of the legal principle that money damages on their RICO claim (a remedy at law) would extinguish their UCL claim. In their UCL Claim (Count IV of the Second Amended Complaint ("SAC")), Plaintiffs allege that they "lost money" because of Defendants' conduct, and ask that that "lost money" be remedied by "restitution." SAC ¶ 192. Plaintiffs therefore cannot argue in good faith that their monetary award under RICO is not an adequate remedy for their "lost money" UCL claim. The same harm (lost money) is remedied by the same requested remedy (return of money) under both claims.

Plaintiffs even acknowledged the binding legal precedent that any further recovery under the UCL would be an impermissible double-recovery. Specifically, Plaintiffs pleaded that their UCL claim was only made in the alternative and in the event they did not recover a remedy at law through their RICO claim:

> 193. As a consequence, **but only in the event that RICO damages are not granted under Count I**, the California members of the RICO class are entitled to restitution in the amount of their portion of the $43 million in loan payments made by the RICO class, pursuant to the UCL.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 7 -          Defs.' Trial Brief re: Pls.' UCL Claim

SAC ¶ 193 (emphasis added). Plaintiffs repeated the alternative-only nature of their UCL claim in their Prayer for Relief ¶ E, seeking:

> Restitution for all California residents who are members of the RICO class under the UCL **in the event damages are not provided to the class under 18 USC § 1964** [RICO].

(emphasis added).[1] They expressly disclaimed any ability to proceed under the UCL if they prevailed on RICO, in order to head-off a motion to dismiss.[2]

Now that they obtained RICO damages, Plaintiffs pretend – to the great waste of the Court's and Defendants' resources – that they never made this (legally correct) admission. But, as controlling law makes clear, their recovery under RICO strips the Court of equitable jurisdiction and extinguishes their UCL claim. The Ninth Circuit's controlling decisions in *Guzman v. Polaris Indus.*, 49 F.4th 1308 (9th Cir. 2022), and *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), declare definitively that Plaintiffs' recovery of RICO damages deprives this Court of equitable jurisdiction to even consider, much less award more money under, Plaintiffs' UCL claim. Indeed, less than a year ago, this very Court in *Zeller v. Optavia, LLC*, No. 22-CV-434-DMS-MSB, 2022 WL 17858032, at *6–7 (S.D. Cal. Dec. 22, 2022) (**Sabraw, J.**), applied *Guzman* and *Sonner* to dismiss a UCL claim because the plaintiff had an adequate remedy at law in the form of money damages available to them in theory. The result should be no different in this case, where Plaintiffs have now ***actually received*** monetary damages.

Plaintiffs are also barred by the Seventh Amendment from obtaining additional monetary relief under their UCL claim. In awarding Plaintiffs damages under RICO, the jury was required to, and did, make factual determinations regarding the total economic loss Plaintiffs experienced in connection with the PEAKS loan program.

---

[1] Plaintiffs also expressly pleaded their entitlement to lost-money-restitution ***only for California borrowers***. SAC ¶ 193, Prayer for Relief ¶ E.

[2] Plaintiffs knew they could not simultaneously seek RICO damages and UCL restitution for the same alleged economic loss under the same set of facts unless they stated up-front that their UCL claim was only being pursued in the alternative.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 8 -          Defs.' Trial Brief re: Pls.' UCL Claim

The Court is therefore prevented from revisiting or overriding the jury's binding findings to award Plaintiffs further monetary relief under their equitable claim. That is especially true where: (i) Plaintiffs repeatedly made clear, including in their discovery responses, that they sought identical monetary relief under their RICO and UCL claims based on all amounts paid on PEAKS loans during the relevant time period; (ii) the jury was properly instructed on, and clearly rejected, Plaintiffs' theory that "all amounts paid" was the only calculation for damages; and (iii) RICO damages and UCL restitution are substantively the same in this case, except that RICO damages are even more expansive given they are trebled specifically to ensure full remediation of any loss. There is no legal basis to allow double recovery—or 1,000% recovery as the case would be.

Further, it would be reversible error to award Plaintiffs the $51 million in UCL restitution they seek, because: (i) only California borrowers would be entitled to recover, due the territorial limitations of the UCL, which Plaintiffs admit (*see* SAC ¶ 193); (ii) Plaintiffs failed to make the required choice-of-law showing necessary for a nationwide UCL class; and (iii) the only amounts that could possibly be awarded as restitution are the amounts Defendants "obtained" in servicing the PEAKS loan program (servicing fees), not all money paid to Deutsche Bank.

Accordingly, as argued below, **the Court should**: (1) find that Plaintiffs obtained an adequate remedy at law in their RICO monetary damages; (2) dismiss the UCL claim with prejudice and without leave to amend; and (3) grant Defendants judgment as a matter of law against the UCL claim (as it is subject to dismissal under controlling legal principles and can be decided without the need for a bench trial).

## **BACKGROUND**

Only the RICO conspiracy claim was tried to the jury, as Plaintiffs were forced to dismiss their FDCPA, Rosenthal, and negligent misrepresentation claims. Now, only Plaintiffs' UCL claim remains—an equitable claim to be tried by the Court. The relevant procedural background is provided below:

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 9 -          Defs.' Trial Brief re: Pls.' UCL Claim

### A. The First Amended Complaint and the "Disclosure Theory."

Plaintiffs filed their initial Complaint in April 2020. (ECF 1.) They later sought leave to file a substantial revision of their initial claims and theories (in addition to adding Plaintiffs Chambers and Fernandez) in their First Amended Complaint, in July 2021. (ECF 84.) In the FAC, Plaintiffs raised for the first time their so-called "Disclosure Theory" which alleged that all PEAKS loans were invalid *ab initio* for failure to make requisite disclosures under the Truth In Lending Act (TILA). (ECF 84-4 ¶¶54-58 (alleging "the loan documentation was so lacking that none of the loan agreements appeared [to] be fully formed" and that TILA "mandates specific disclosures" regarding interest rates and fees, and Defendants "knew or should have known that this information had to be provided to borrowers, as a matter of federal law, *before* the borrower could be legally obligated.").

### B. The Second Amended Complaint and the "Disclosure Theory."

The Disclosure Theory survived summary judgment under multiple claims even though the only representative at the time (Turrey) lacked standing for three of them – FDCPA, Rosenthal, and negligent misrepresentation. (ECF 128 at 16-17.) Plaintiffs were subsequently provided an opportunity to find class representatives with standing, and in September 2022, they added Plaintiffs Sazon, Hernandez, and Fiaty in the SAC. (ECF 141.) Like the FAC, the SAC relies heavily upon the Disclosure Theory. (ECF 133-4 ¶¶ 56-60 (largely maintaining prior version)). In addition to serving as the foundation for their Debt Collection claims, Plaintiffs also relied on the Disclosure Theory to support their RICO and UCL claims.

Plaintiffs expressly based their UCL claim on the Disclosure Theory, alleging PEAKS loans were never consummated and thus Vervent collected "invalid student loan debt" in violation of the FDCPA, Rosenthal, and TILA. (SAC ¶¶ 188-89).[3]

---

[3] Their RICO claim was, of course, based in part on the same no-consummation Disclosure Theory: "In [its] communications, FALS furthered the fraud by engaging in a systematic practice of concealing from borrowers the fact that their loan agreements had never been fully consummated . . . ." (SAC ¶ 154).

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 10 -          Defs.' Trial Brief re: Pls.' UCL Claim

## C.     Trial: Only the RICO Claim Was Tried To The Jury.

Plaintiffs proceeded through discovery on their Disclosure Theory.  In the weeks leading up to trial, Plaintiffs clarified their otherwise vaguely alleged Disclosure theory by arguing specifically that TILA requires three specific disclosures to be provided in order to consummate a student loan; if those disclosures are not provided then TILA treats the loans as "unconsummated"; and it is illegal for a loan servicer to collect on an unconsummated loan.

At the commencement of trial, Plaintiffs based their Debt Collection claims solely on the Disclosure Theory, and a portion of each their RICO and UCL claims as well.  Eventually, however, it was apparent to all concerned – Plaintiffs, Defendants, and the Court – that Plaintiffs had hit a legal dead end.  Several days into trial, the Court observed at a hearing that it agreed with Vervent that Plaintiffs could not rest their Debt Collections claims on a TILA-based Disclosure Theory: (i) such claims would be preempted and time-barred by TILA's one-year statute of limitation; (ii) TILA and controlling case law on the consummation issue expressly refuted Plaintiffs' theory; and in any event, (iii) such a theory would have required individual factual determinations and thus could not pursued on a classwide basis.

Plaintiffs then voluntarily dismissed these claims, declining to pursue them on an individual basis.  Plaintiffs went to the jury with only their RICO claims.

## D.     The RICO Claim and Jury Instructions.

The Court instructed the jury that it should award damages on plaintiffs' RICO claims based on a determination of Plaintiffs' total "economic loss":

> Instruction No. 20: "If you decide that a Defendant conspired to violate RICO, you must decide whether that conspiracy caused Plaintiffs and class members injury… If you conclude that a Defendant joined in a conspiracy to violate RICO, the Defendant is responsible for all damages caused by predicate acts committed by members of the conspiracy that caused injury to Plaintiffs and class members… The parties have stipulated that the class members paid Defendants $51,509,051.00on during th[e] [relevant] time period."

> Instruction No. 21: "Damages means the amount of money that will reasonably and fairly compensate Plaintiffs and the Class for any injury you find was caused by defendant… In deciding this amount, you will

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 11 -          Defs.' Trial Brief re: Pls.' UCL Claim

consider only the Plaintiffs' economic loss, if any, caused by Defendants… The economic harm that Plaintiffs seek to recover is amounts paid on PEAKS loans during the period starting April 10, 2016 to September 2020.

Verdict Form No. 3: … "State the amount, in dollars, that will fairly compensate Plaintiffs and the class."

The parties stipulated, and the jury was instructed, that "class members paid Defendants $51,509,051.00" and that "Defendant is responsible for **all damages** caused by predicate acts committed by members of the conspiracy that caused injury to Plaintiffs and class members." Instruction No. 20 (emphasis added). The jury did not have to accept Plaintiffs' theory that all payments ever made on PEAKS loans was the measure of damages. There were other probative facts and views of damages to consider as well, including that Vervent earned approximately $3.5 million for servicing the PEAKS portfolio, and that none of the class members returned any portion of their loan principal.

Thus, knowing all relevant facts, and having been well apprised of Plaintiffs' view on damages, the jury made a determination of "all economic loss" "caused by Defendants" in their RICO verdict. This amount as decided by the jury after several days of deliberations, was $4 million. When the jury awarded these damages, the UCL claim evaporated as a matter of law.

## ARGUMENT

## I.   PLAINTIFFS' UCL CLAIM MUST BE DISMISSED FOR LACK OF EQUITABLE JURISDICTION

### A.   Under *Guzman, Sonner*, And *Utne*, Plaintiffs Have Received An Adequate Remedy At Law, Which Strips The Court Of Equitable Jurisdiction To Hear The UCL Claim.

"A UCL action is an equitable action[,]" *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173 (2000), and it "provides only for equitable remedies." *Guzman*, 49 F.4th at 1313. Thus, "to entertain a request for equitable relief" under the UCL, "a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Id.* at 1313.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 12 -          Defs.' Trial Brief re: Pls.' UCL Claim

When a plaintiff has an adequate remedy at law, federal courts lack equitable jurisdiction to even consider, and must dismiss, a UCL claim. *Id.* at 1314 (holding "district court lacked equitable jurisdiction" over UCL restitution claim "because [plaintiff] had an adequate remedy at law in his time-barred CLRA claim" for damages; therefore, the district court "should have dismissed [the] UCL claim"). Relatedly, "the court must find that the plaintiff lacks an adequate remedy at law" "[b]efore awarding equitable relief. *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 873 (N.D. Cal. 2021). If "a court lacks equitable jurisdiction . . . equitable principles bar the court from entertaining the claim or granting relief." *Id.* at 874. This is "a 'threshold jurisdictional question.'" *Id.*

Courts apply this rule and dismiss UCL claims even when the legal remedy ultimately fails on the merits. *See, e.g., Guzman*, 49 F.4th at 1311-13 (affirming ruling that CLRA damages claim was an adequate legal remedy that prevented UCL restitution even though CLRA claim had been dismissed as time-barred); *Sonner,* 971 F.3d at 845 (granting motion to dismiss UCL claim where plaintiff had abandoned damages claim, because plaintiff had an adequate remedy at law in that abandoned claim); *Moss v. Infinity Ins. Co*., 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) ("A plaintiff may only seek equitable relief under California's UCL where she has no adequate remedy at law. Such is the case even if all of plaintiff's non-UCL claims ultimately fail.").

This Court is in full agreement. It recently held "a plaintiff cannot pursue an equitable claim in federal court when he or she has an adequate remedy at law[,]" and it is therefore necessary for a federal court to dismiss equitable claims – including specifically a UCL restitution claim seeking a refund of payments – when plaintiffs have adequate legal remedies in a statutory damages claim based on the same facts. *Zeller*, 2022 WL 17858032, at *6–7. Where "Plaintiffs request money damages" under one claim, and "request [] 'restitution' under the . . . UCL" seeking "a refund, or actual money," their claim must be dismissed for lack of jurisdiction and

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 13 -          Defs.' Trial Brief re: Pls.' UCL Claim

"Plaintiffs' arguments that [their UCL] claims provide greater remedy . . . does not make their equitable claims proper." *Id.* at *7. This bar applies "regardless of whether the plaintiff has tried to avoid the bar to equitable jurisdiction through gamesmanship." *Id.* (citing *Guzman*, 49 F.4th at 1313).

So here, the dismissal of the UCL claim is compelled, **as Plaintiffs have actually received** the quintessential adequate legal remedy—a damages verdict. *Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS, 2022 WL 1443339, at *2 (N.D. Cal. May 6, 2022) (granting judgment on the pleadings against UCL claim because "classes ha[d] been certified" and Plaintiffs' "adequate remedy at law ha[d] been established.").

### B. Plaintiffs' RICO Damages Are Not Inadequate Just Because Plaintiffs Claim They Could Obtain More Under the UCL

Because the jury awarded less than Plaintiffs asked for, Plaintiffs now argue the properly instructed jury award is somehow inadequate. The law disagrees. A plaintiff's legal remedy is not inadequate just because the plaintiff may be able to recover more money under an equitable claim than their damages claim.

Indeed, as this Court found in *Zeller*, "Plaintiffs' arguments that equitable claims provide greater remedy . . . does not make their equitable claims proper." 2022 WL 17858032, at *7; *see also McFall v. Perrigo Co.*, 2021 WL 2327936, at *15 (C.D. Cal. Apr. 15, 2021) ("Although Plaintiffs may prefer to maximize their ultimate recovery, the mere possibility that three years' worth of legal damages under the CLRA could be less than four years of equitable restitution under the UCL does not render legal damages inadequate . . . .").

Courts routinely hold that where a UCL claim seeks monetary recovery under the same set of facts as a damages claim, even a substantive difference in the amounts recoverable (e.g., due to differences in the statute of limitations governing each claim) does not render the remedy at law inadequate. *Mish v. TForce Freight, Inc.*, No. 21-CV-04094-EMC, 2021 WL 4592124, at *6 (N.D. Cal. Oct. 6, 2021)

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 14 -          Defs.' Trial Brief re: Pls.' UCL Claim

1  (collecting cases rejecting UCL claims because difference in recovery available did
2  not render damages inadequate).

3      Here, because Plaintiffs' claim for "lost money" under RICO is the same "lost
4  money" theory they advance under the UCL, they have already received an adequate
5  legal remedy for their alleged harm regardless of any claimed difference in the
6  amount recoverable. *See Heredia v. Sunrise Senior Living LLC*, No.
7  818CV01974JLSJDE, 2021 WL 819159, at *4–5 (C.D. Cal. Feb. 10, 2021) (noting
8  damages claim "based on the same factual predicate as their claim for restitution and
9  seek[ing] the same relief, i.e., the return of fees paid to [Defendant]" is no "less
10  prompt, certain, or efficient than restitution.").

11      In their SAC and discovery responses, Plaintiffs expressly admitted that they
12  sought identical relief on their RICO and UCL claims – a refund of all amounts paid
13  by borrowers during the relevant time period. *Compare* SAC ¶ 166 ("[Plaintiffs]
14  suffered injuries to their property [] to wit, their **loan payments**, and are therefore
15  entitled to trebled damages" under RICO) *with* SAC ¶ 193 ("[B]ut only in the event
16  RICO damages are not granted [], the California members of the RICO Class are
17  entitled to restitution in the amount of their . . . **loan payments** . . . .").

18      Plaintiffs also admitted that the amount they sought via RICO damages was—
19  down to the penny—the exact same amount they sought via "restitution" under the
20  UCL. *See, e.g.*, Dkt. No. 158-2 at 97:15-21, 119:11–17, 141:22-28. Plaintiffs here
21  pursued claims at law that sought to redress the same harm, in the same amount,
22  under the same theories as their UCL claim. They cannot now argue that they can
23  also force a UCL trial because this legal remedy was "inadequate." *Clevenger v.
24  Welch Foods Inc.*, No., 2022 WL 18228288, at *6 (C.D. Cal. Dec. 14, 2022)
25  ("Plaintiffs cannot allege that they have an inadequate remedy at law when their
26  claim for monetary damages . . . seeks redress for the exact same harm, in the exact
27  same amount, as their claims for restitution."); *see Utne*, 2022 WL 1443339, at *2

28

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 15 -          Defs.' Trial Brief re: Pls.' UCL Claim

(finding "Plaintiffs have an adequate remedy at law" despite potentially greater recover under the UCL).

Accordingly, Plaintiffs' UCL claims must be dismissed as a matter of law. FRCP 12(c), (h)(2) (allowing a motions for failure to state a claim or for judgment on pleadings to be raised at the time of trial).[4]

**C.  Judicial Estoppel Prevents Plaintiffs From Reversing Course After Pleading They Would Pursue a UCL Claim "Only In The Event" They Did Not Recover Under RICO.**

Plaintiffs pleaded and represented that they were not entitled to, and would not seek, any recovery under the UCL if they obtained monetary relief under RICO.  Any attempt to reverse course on their pleading (which correctly reflects the law on this issue) is the exact type of gamesmanship judicial estoppel is designed to prevent.

"Judicial estoppel is an equitable doctrine invoked at the court's discretion that precludes a party from asserting one position and then later seeking an advantage by taking an inconsistent position." *Diaz v. Nationstar Mortg. LLC*, No. 17CV1607-MMA (BGS), 2018 WL 1071699, at *5 (S.D. Cal. Feb. 27, 2018).  The plaintiff need not have successfully gained an advantage earlier.  It is "invoked because of general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Id.* (internal quotation marks omitted).  It should be invoked here.

Most cases considering judicial estoppel turn on whether or how clear it is that the litigant is actually taking an opposite position (as opposed to merely conflicting in some way).  *See, e.g., Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015).  Here, that is not the case.  At all stages up until Plaintiffs did not get the award they wanted from the jury, Plaintiffs expressly pleaded they would not and could not

---

[4] Notably, Plaintiffs do not allege anywhere that their legal claims for some reason would not provide them an adequate remedy, which is a necessary pleading requirement. *Drake v. Toyota Motor Corp.*, Case No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125, at *13–14 (C.D. Cal. Nov. 23, 2020) (dismissing UCL claim because complaint was devoid of allegations demonstrating how legal claims would not provide adequate remedy).

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 16 -          Defs.' Trial Brief re: Pls.' UCL Claim

pursue a UCL claim if they received a RICO award. SAC ¶ 193.  Plaintiffs assert the diametrically opposite position in claiming that, despite their RICO award, they would now like to pursue a UCL claim.  Their SAC makes the inconsistency of their two positions fully clear.  *Id.*:

> 193.  As a consequence, but only in the event RICO damages are not granted under Count One, the California members of the RICO Class are entitled to restitution in the amount of their portion of the $43 million in loan payments made by the RICO Class, pursuant to the UCL.

Plaintiffs' purpose in attempting to reverse course now is apparent.  It is a craven attempt to ask for more money where all legal bases preclude it.  This is why Plaintiffs must be estopped.  *Ryan*, 786 F.3d at 763 ("The emphasis is not on a hard and fast rule, but rather on prevention of intentional self-contradiction as a means of obtaining unfair advantage." (internal quotation marks omitted)).

The Supreme Court has warned that plaintiffs "are the masters of their complaints[,]" *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013), and it is well-established that a plaintiff should not be allowed to "deliberately chang[e] positions according to the exigencies of the moment[,]" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), nor "play[] fast and loose with the courts."  *Diaz v. Tesla, Inc.*, No. 3:17-CV-06748-WHO, 2022 WL 17584235, at *2 (N.D. Cal. Dec. 12, 2022).  This applies specifically to the remedy pleaded.  *See Fong v. United States*, 300 F.2d 400, 413–14 (9th Cir. 1962) (because plaintiffs must put defendants on notice of the type and scope of recovery sought, plaintiffs are usually held to recovering the type and scope of recovery alleged under each cause of action).

Here, in violation of these precepts, Plaintiffs filed a SAC that they amended specifically to clarify that they would not seek any UCL relief in the event Plaintiffs prevailed on their RICO claim.  (*See* ECF 133-4 ¶ 193).  This intentional pleading clearly reflects the above-cited law prohibiting Plaintiffs from simultaneously pursuing legal and equitable remedies for the same alleged loss.  By pleading their

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 17 -          Defs.' Trial Brief re: Pls.' UCL Claim

claim this way, Plaintiffs successfully avoided any pleading motions on this issue. Plaintiffs cannot walk-back that position now, much less seek tens of millions more under a UCL claim they disavowed years ago, particularly when the position they staked out is based on the proper understanding of equitable jurisdiction.

### D.   No Waiver Applies

Ironically, Plaintiffs have recently argued for the first time that, even though they pleaded all along that they were not pursuing a UCL claim if they recovered under RICO but have now changed their mind, *Defendants* have somehow waived equitable jurisdiction by taking their pleadings at face value.  For several reasons, Defendants both could not have and did not waive the Court's equitable jurisdiction.

### 1.    Equitable Jurisdiction Cannot Be Waived.

As *Sonner* and *Utne* have recognized, equitable jurisdiction cannot be waived. *See Sonner*, 971 F.3d at 840–41; *Utne*, 2022 WL 1443339, at *2 (rejecting equitable jurisdiction waiver argument brought under *Matthews v. Rodger*, 284 U.S. 521 (1932) (the same case Plaintiffs rely on in this case) even though objection to equitable jurisdiction was not raised until "eve of trial").  Despite the nearly 100-year old cases Plaintiffs rely upon for their waiver argument, "[i]t has been a fundamental principle for well over a century that state law cannot expand or limit a federal court's equitable authority." *Sonner*, 971 F.3d at 841.  "[F]ederal court[s] must apply traditional equitable principles before awarding restitution under the UCL…." *Id.*; *see also id.* at 842 (quoting *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1129 (9th Cir. 2020) ("[T]he necessary prerequisite for a court to award equitable remedies is 'the absence of an adequate remedy at law.'")); *id.* at 844 (collecting cases stating equitable relief is not available if plaintiff has an adequate remedy at law).

In short, equitable jurisdiction may not be waived because federal courts must apply federal common law principles, and under those principles a federal court may not adjudicate a UCL claim if the plaintiff has an adequate remedy at law. *Sonner*, 971 F.3d at 840–41; *Utne*, 2022 WL 1443339 at *2; *Zeller*, 2022 WL 17858032 at

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 18 -          Defs.' Trial Brief re: Pls.' UCL Claim

*7.  That is dispositive here, and Defendants have not found a single case from the Ninth Circuit or its district courts within the last 75 years in which a court finds that a defendant has waived the right to contest equitable jurisdiction.  It appears that all of the cases on the extinguishment of equitable jurisdiction due to an available legal remedy either do not address waiver at all, even where the litigation was well advanced, *see, e.g.*, *Sonner*, 971 F.3d at 844–45 (affirming dismissal of UCL claim for lack of equitable jurisdiction though motion was made "on the eve of trial"), or address waiver and decline to find it.  *See, e.g.*, *Utne*, 2022 WL 1442229 at *2 (rejecting waiver argument and expressing doubt as to whether "equitable jurisdiction can be waived").

## 2. Plaintiffs' Cases On This Issue Are Not Authoritative.

Plaintiffs rely primarily on three cases to advance their waiver argument: *Matthews*, 284 U.S. at 524 (1932); *Atlas Life Ins. Co. v. W.I.S., Inc.*, 306 U.S. 563, 568 n.1 (1939); and *Colegrove v. Green*, 328 U.S. 549, 565 n.2 (1946) (concurring opinion).  These opinions should not be afforded any weight.  First, Plaintiffs' cites to *Atlas Life* and *Colegrove* are to footnotes, which are obviously not holdings.  Second, each of the cases cited by Plaintiffs are either approaching or are in fact more than 100 years old (Plaintiffs cite cases as old as 1915 to support their waiver argument).  So to the extent Plaintiffs have even cited to actual holdings, their precedential value from 100+ years ago cannot outweigh the cases Defendants cite, which are primarily from the past few years.  *See, e.g.*, *Sonner*, 971 F.3d at 841 (2020); *Utne*, 2022 WL 1443339 (2022); *Zeller*, 2022 WL 17858032 (2022); *Clevenger*, 2022 WL 18228288, at *2 (2022) (rejecting all cases cited "in support of [] argument that 'challenges to equity jurisdiction can be waived'" as inapposite).

Because Federal equitable principles have undoubtedly evolved over the last 100 years, the Court should disregard the dusty footnotes on which Plaintiffs rely.  Even if the authorities Plaintiffs cite had any precedential value, none involve the situations here—a plaintiff litigating the case for years under a disavowal of

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)   - 19 -   Defs.' Trial Brief re: Pls.' UCL Claim

equitable claims (so long as there is a legal recovery), then doing an about face when disappointed by the legal remedy.

### 3.    There Are No "Knowing and Intentional Acts" Suggesting Defendants' Intent To Waive.

Next, even if Defendants could waive equitable jurisdiction, they have not. Defendants objected to Plaintiffs' UCL claim at their first opportunity—immediately after Plaintiffs obtained an adequate remedy at law in their RICO award and then asserted for the first time that they still intended to pursue their UCL claim.

First, Plaintiffs' waiver argument turns waiver on its head.  Plaintiffs are asking the Court to find an implied waiver (they do not contend Defendants expressly waived equitable jurisdiction) premised on the notion that Defendants waited until after trial of the legal claims to object to a trial of the equitable claims.  But that argument ignores that at all stages of the litigation, Plaintiffs proceeded under the SAC pleading expressly that they would not and could not pursue their UCL claim if they obtained a jury verdict on their RICO claim.  SAC ¶ 193.  It was only after (i) Plaintiffs obtained a jury award under RICO, and then (ii) newly announced a desire to jettison their pleadings, that the UCL claim ever became at issue.  Defendants then at their first opportunity objected that Plaintiffs' newly-obtained RICO award stripped the Court of equitable jurisdiction.  *See* Dkt. No. 312 (Defs.' Original UCL Brief).  It was Plaintiffs who sandbagged the litigation and the Court.  It is Plaintiffs who are untimely advancing a new position.  Plaintiffs waived, not Defendants.

Second, to find waiver, courts generally require that the litigant have undertaken "knowing and intentional" acts "inconsistent with an intent to enforce the right." *Utne*, 2022 WL 1443339 at *2; *see Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012) ("A waived . . . defense is one that a party has knowingly and intelligently relinquished . . . .").  Plaintiffs cannot make that showing here—quite the opposite. As mentioned above, Defendants asserted their equitable jurisdiction defense as soon

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 20 -          Defs.' Trial Brief re: Pls.' UCL Claim

as the triggering events (as Plaintiffs described them in their SAC) made equitable jurisdiction at-issue.

Moreover, the timing of when a defendant objects to equitable jurisdiction, alone, is insufficient to find waiver, affirmative acts are necessary. *See Clevenger*, 2022 WL 18228288 at *3 ("While Plaintiffs may be frustrated that Defendants did not raise this issue sooner, that is not a sufficient basis for finding that it has been waived"); *see also Sonner*, 971 F.3d at 830 (treating objection to equitable jurisdiction as not waived despite it being raised after discovery closed, after motion practice, and on the eve of the "looming trial").

Finally, Defendants preserved in their Answer to the SAC the ability to assert any affirmative defenses that later became available or apparent based on future events in the proceedings. Dkt. No. 144 (Defs.' Affirmative Defenses ¶ 20); *see Hall v. Marriott Int'l, Inc.*, No. 19CV1715-JO-AHG, 2023 WL 4417265, at *11 (S.D. Cal. Mar. 30, 2023) ("Generally, 'the inclusion of a defense in an answer is sufficient to preserve a defense.'"). And, other than fighting the UCL claim at every juncture of the litigation,[5] Defendants certainly did not litigate the UCL claim in any way that would indicate waiver.

## II. THE SEVENTH AMENDMENT PROHIBITS PLAINTIFFS FROM RECOVERING MORE THAN THE JURY'S DETERMINATION OF PLAINTIFFS' LOSS.

Even were this Court to overlook its lack of equitable jurisdiction over Plaintiffs' UCL claim, the Seventh Amendment and corresponding Ninth Circuit precedent independently prohibit the Court from granting Plaintiffs any monetary relief above-and-beyond the RICO damages awarded by the jury.

"The Seventh Amendment provides that no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules

---

[5] Defendants objected to the UCL claim in: motions to dismiss; opposing class certification for the claim; moving decertify the UCL class; filing two motions for summary judgment against it; and most specifically, when the time came to brief the UCL claim to the Court, asserting the jurisdictional objection in Defendants' July 17, 2023 UCL Bench Trial Brief.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 21 -          Defs.' Trial Brief re: Pls.' UCL Claim

of the common law[,]" and "it would be a violation of the Seventh Amendment right to jury trial for the court to disregard a jury's finding of fact." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828-829 (9th Cir. 2013).

Thus, "in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, in deciding equitable claim the Seventh Amendment requires the trial judge to follow the jury's implicit and explicit factual determinations." *Id.* The jury's findings during phase one of trial are binding upon, and cannot be ignored or overridden by, a court in a second equitable phase. *See Los Angeles Police Protective Language v. Gates*, 995 F.2d 1469, 1473-75 (9th Cir. 1993) (reversing district court's denial of equitable relief when it was inconsistent with prior implicit findings in jury's verdict); *accord Hoopes v. Dolan*, 168 Cal. App. 4th 146, 158 (2008).

Here, the jury's explicit and implicit findings embodied in its RICO damages verdict are binding on the Court and preclude it from granting restitution under UCL. The jury was instructed to – and did – calculate Plaintiffs' total economic loss. The jury was expressly instructed to determine the amount of money needed to "compensate" Plaintiffs for all "economic loss" and "economic harm," as follows:

> Instruction No. 20:  If you decide that a Defendant conspired to violate RICO, you must decide whether that conspiracy caused Plaintiffs and class members injury . . . . If you conclude that a Defendant joined in a conspiracy to violate RICO, the Defendant is responsible for all damages caused by predicate acts committed by members of the conspiracy that caused injury to Plaintiffs and class members… The parties have stipulated that the class members paid Defendants $51,509,051.00 during th[e] [relevant] time period.

> Instruction No. 21:  Damages means the amount of money that will reasonably and fairly compensate Plaintiffs and the Class for any injury you find was caused by defendant . . . . . In deciding this amount, you will consider only the Plaintiffs' economic loss, if any, caused by Defendants… The economic harm that Plaintiffs seek to recover is amount paid on PEAKS loans during the period starting April 10, 2016 to September 2020.

> Verdict Form No. 3: … State the amount, in dollars, that will fairly compensate Plaintiffs and the class.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)                    - 22 -                    Defs.' Trial Brief re: Pls.' UCL Claim

In response to these instructions – and despite being expressly advised of Plaintiffs' theory seeking all $51+ million paid by borrowers during the relevant time period – the jury calculated Plaintiffs' economic loss as $4 million.  As a matter of law, this number reflects and constitutes the amount necessary to "restore [Plaintiffs] to the financial position [they] enjoyed prior to" the alleged "fraudulent transaction," including by returning all "out of pocket losses" they incurred.  *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS MANX, 2011 WL 4852314, at *8–9 (C.D. Cal. Oct. 13, 2011) (describing RICO damages).

RICO damages and UCL restitution are essentially identical remedies because both seek to restore a plaintiff to the position it occupied prior to the disputed transaction.  *Compare Negrete*, 2011 WL 4852314 at *9 (stating that RICO damages are intended to restore a plaintiff to the position she was in prior to the transaction) *with Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) ("The object of restitution [under the UCL] is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.").  That is especially the case where Plaintiffs expressly premised both their RICO and UCL claims on the same facts (the same alleged scheme to defraud) and same theory ("lost money").  Of course, RICO damages are ***even more expansive*** than UCL restitution given they are trebled.  *See PacifiCare Health Sys. v. Book*, 538 U.S. 401, 406 (2003) ("[W]e have repeatedly acknowledged that the treble-damages provision contained in RICO itself is remedial in nature" and is "designed to remedy economic injury").

As such, Plaintiffs cannot establish the validity of their UCL claim by falsely arguing it entitles them to different or potentially additional relief than RICO.  *See Ketayi*, 2021 WL 2864481, at *9–10 (RICO damages were an adequate legal remedy that precluded equitable relief under the UCL); *Indiana ex rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970, 981 n. 7 (N.D. Ind. 2010) (collecting cases holding that RICO damages are a legally adequate remedy that preclude equitable relief).  Indeed, restitution under the UCL does not allow for "a full refund" that would "put [a

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)                 - 23 -                 Defs.' Trial Brief re: Pls.' UCL Claim

plaintiff] in a better position than had she never" entered the transaction. *Niedermeier v. FCA US LLC*, 56 Cal. App. 5th 1052, 1061 (2020).  Yet here, Plaintiffs seek a full refund **and** to be allowed to keep the proceeds of their loans (and their degrees and better paying jobs).

In sum: (1) the jury determined Plaintiffs' total economic loss resulting from the set of facts applicable to both the RICO and UCL claims; (2) in making that finding of fact, the jury rejected Plaintiffs' expansive theory of economic harm; and (3) the Seventh Amendment renders the jury's findings binding on the Court.  The Court therefore cannot legally grant Plaintiffs "restitution" for loan payments the jury was expressly instructed on and aware of, but declined to award.

## III.   EVEN IF THE COURT EXERCISES JURISDICTION, PLAINTIFFS STILL ARE NOT ENTITLED TO ANY FURTHER RECOVERY

There is no basis for Plaintiffs to recover under either the "unfair" or the "unlawful" prong of the UCL (the only prongs they proceed under).  At bottom, Plaintiffs will receive a $12 million award which wholly consumes any award of restitution or disgorgement under the UCL.  This raises both equitable jurisdictional and Seventh Amendment bars to the Court awarding further recovery.  If the Court decides to adjudicate the UCL claim, it remains that the maximum Plaintiffs could recover—either under a theory of restitution or a theory of disgorgement—*falls short of $12 million.*  Thus, there is still nothing further to award.

### A.   For the Reasons the Court Has Already Agreed With, Plaintiffs' "Unfair" Prong of Their UCL Claim Must Be Dismissed

Plaintiffs plead theories under two prongs of the UCL, the "unfair" prong (SAC ¶ 189), and the "unlawful" prong (SAC ¶ 188).  Plaintiffs' "unfair" prong theory, however, is premised solely on Plaintiffs' Disclosure Theory—the same theory Plaintiffs conceded had to be dismissed.

**First**, as argued in Defendants' June 5, 2023 Trial Brief, because Plaintiffs' "unfair" prong is premised entirely on the since-debunked Disclosure Theory, this

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 24 -          Defs.' Trial Brief re: Pls.' UCL Claim

prong is preempted by TILA's one-year statute of limitations and time-barred.  Dkt. No. 245 at 14–15 (citing among other cases, *Jordan v. Pau. Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010)).  TILA's one-year limitations period for money damages runs from "the date the loan documents are signed," and in this case all loan documents were signed in 2010 and 2011.  Dkt. No. 274 at 16 (citing among other cases, *Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1157 (N.D. Cal. 2011)); *accord.* Dkt. No. 245 at 17–18 (citing among other cases *Zlotnick v. U.S. Bancorp*, 2009 WL 5178030, at *3 (N.D. Cal. Dec. 22, 2009) (dismissing UCL claim based on TILA disclosure because courts cannot "allow [] plaintiffs to seek relief for TILA violations [] after TILA's statute of limitations has expired.")).

**Second**, even if Plaintiffs' "unfair" prong theory were not time-barred, the theory that a loan originator's failure to provide TILA disclosures means the loan is never "consummated" is legally unfounded and expressly refuted by the controlling cases, statutes, and regulations.  After Defendants briefed this issue for the Court during trial, (*see* Dkt. No. 274 at 14–23), Plaintiffs conceded their Disclosure Theory was not supported by law, and the Court announced that such a theory would require individualized inquiries into each borrowers' loan file in any event, thus precluding class treatment.  Plaintiffs' "unfair" prong therefore must be dismissed.

### B. Plaintiffs Still Would Not Be Entitled to Recover $51 Million.

#### 1. The RICO Verdict Already Compensated all Loss.

With respect to the unlawful prong, as discussed in Section II above, Plaintiffs have already received an award of their total "economic loss."  Where, as here, restitution has already been accounted for in damages—and where restitution cannot exceed $5.201 million because only California borrowers can recover as explained below—awarding restitution *in addition to* damages would be impermissible.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 25 -          Defs.' Trial Brief re: Pls.' UCL Claim

### 2. Plaintiffs' UCL Claim is limited to recovery on behalf of California borrowers only.

#### a. Plaintiffs' UCL Claim is California-only as a matter of pleading.

As a matter of law, any recovery under the UCL must be limited to recovery on behalf of California borrowers only. *See* Dkt. No. 326 at 14-15. Acknowledging the California-only limitation, Plaintiffs expressly requested recovery only for California residents. *See* SAC ¶ 193 ("[O]nly in the event RICO damages are not granted . . . , **the California members of the RICO Class** are entitled to restitution . . . ."); SAC Prayer for Relief E. (seeking "[r]estitution for all **California residents** . . . under the UCL, in the event that damages are not provided. . . .").

To allow an expanded scope of recovery simply because Plaintiffs are not content with their RICO recovery would run counter to law and would implicate due process concerns. *Fong*, 300 F.2d at 413–14; *see Cadence Design Sys., Inc. v. Viera*, 836 F. App'x 493, 496 (9th Cir. 2020) (due process concerns warrant refusal to permit a plaintiff to expand theories of recovery after trial). As briefed extensively in Defendants' opposition to Plaintiffs' motion to amend, Plaintiffs should be held to their pleadings and the about-face they attempt now is the exact ploy judicial estoppel is meant to prevent. *Diaz*, 2018 WL 1071699, at *5 (judicial estoppel is "invoked . . to protect against a litigant playing fast and loose with the courts.").

#### b. Plaintiffs' UCL Claim must be California-only

In this case, any recovery under the UCL would be limited to class members injured in the State of California. "California law embodies a presumption against the extraterritorial application of its statutes." *In re Ferrero Litig.*, 278 F.R.D. 552, 561 (S.D. Cal. 2011). The UCL, specifically, is non-extraterritorial by nature, as this Court has previously held. *Speyer v. Avis Rent a Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1098–99 (S.D. Cal. 2005), *aff'd*, 242 F. App'x 474 (9th Cir. 2017) (**Sabraw, J.**) (noting the California "Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state"). The Court noted in *Speyer*

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)                - 26 -                Defs.' Trial Brief re: Pls.' UCL Claim

that California courts cannot certify a California UCL class of "non-California residents who suffered no injury in California." *Id.* at 1099 (citing *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999)).  This is true even where the Defendant was located in California, because what provides a plaintiff a California UCL claim is injury suffered in California. *See id.* (noting in case where defendant was car rental company registered in and doing business in California, "the UCL may not apply . . . because the out-of-state conduct may not have caused injury in California").  Because what matters for purposes of the UCL is where the class members were injured, in this case, only California PEAKS borrowers would have a UCL claim.  Plaintiffs' own allegations admit this and should be accepted as such.

Accordingly, even if the Court were to accept Plaintiffs' theory that an award of all borrower payments made is the proper calculation of restitution, Plaintiffs would still be entitled only to recover $5.201 Million under their UCL claim.  *See* Dkt. No. 312-1 at Cell Q-1374 (PDF-version at 64).  But again, Plaintiffs have been awarded $12 million for their economic loss—that $5.201 million is subsumed within the $12 million they have already been awarded under RICO**.**

### 3.   Plaintiffs have not and cannot make the choice-of-law showing required to pursue a nationwide UCL Claim.

Even if Plaintiffs wanted to jettison their own California-only pleading and controlling case law, Plaintiffs still would not be able to pursue a nationwide UCL claim because they have not and cannot make the required choice-of-law showing.

Whenever a class containing non-California class members seeks to pursue a claim under California's UCL, (1) a choice of law showing is ***required***, and (2) the Court must assess whether the choice of law issues cause class certification issues (for example causing individual issues to predominate over classwide).  *See* Dkt. No. 326 at 20; *Norwest Mortg. Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 222-25, 228-29 (1999).  To do so, Plaintiffs "must credibly demonstrate, through ***a thorough analysis of the applicable state laws***, that state law variations will not swamp

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)                    - 27 -                    Defs.' Trial Brief re: Pls.' UCL Claim

common issues and defeat predominance." *Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 921 (2001) (emphasis added). Failures by the Plaintiff to make this showing, or by the Court to undertake this analysis, are grounds for decertification. *Id.* at 229.

Here, as the Court correctly noted recently, Plaintiffs have made no showing whatsoever, much less a rigorous analysis of how choice of law and state law variations affect class certification. This mandates a California-only UCL claim.

### 4.   Defendants Did Not Consent to a Nationwide UCL Claim

Plaintiffs have recently asserted that they should not be held to their pleadings (or controlling case law) because Defendants supposedly consented to a nationwide UCL claim. The support Plaintiffs point to are preposterous and made in bad faith.

**First**, Plaintiffs claim Defendants consented to a nationwide class by participating in equitable proceedings. Plaintiffs claim the jury trial—of only the RICO claim—was somehow an equitable proceeding. That is plainly wrong.

**Second**, Plaintiffs claim Defendants consented by failing to address equitable jurisdiction and the California-only nature of their UCL claim in Defendants' motions *in limine*. Of course Defendants did not address the UCL claim in their motions *in limine*; the motions *in limine* (of which only five were allowed) covered evidentiary issues—not legal issues on the equitable claim.

**Third**, Plaintiffs claim Defendants consented to a nationwide UCL class by consenting to the class notices. This is incorrect. Defendants approved the language to be used in the class notice describing to class members how to opt out. Defendants vehemently opposed any UCL class being certified at all (in the opposition to class certification, in the motion to decertify the class, and in two summary judgment motions). And, importantly, Plaintiffs have not and cannot point to any authority that states a class notice can confer a substantive right (i.e., can create jurisdiction and a claim for a class member who has no claim).

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 28 -          Defs.' Trial Brief re: Pls.' UCL Claim

**Fourth**, Plaintiffs claim that Defendants' joint submission of the proposed pretrial order is consent to a nationwide class.  Yet, the only reference at all in the Pretrial Order to the UCL claim simply states that a UCL claim exists in the case and that it is to be tried by the Court after the jury trial takes place.  Dkt. No. 230 at 9, 15.  Nowhere in the Pretrial Order does it even mention whether the UCL claim is nationwide or state that Defendants have consented to it being nationwide.  *Id.*

**Finally**, Plaintiffs claim that Defendants "expressly" consented to a nationwide UCL Class in Stipulated Statement of Facts ¶ 99.  This is an egregious misrepresentation.  Paragraph 99 merely states the following:

> 99.   Collectively, PEAKS borrowers paid Defendants $51,509,051 from the beginning of the class period on April 10, 2016 until Defendants stopped collecting payments in September 2020.

Dkt. No. 238 ¶ 99.  The Stipulated Statement of Facts never once mentions the UCL claim, or "§ 17200," and includes no information about the scope of the UCL class that was certified.

### 5.   The RICO Verdict Already Requires Vervent to Disgorge Any Profits Made from the PEAKS loans.

Plaintiffs' attempt to recover from Vervent the $51 million in borrower payments made to Deutsche Bank is inappropriate.  That figure represents damages and not restitution as against Defendants here, who merely passed on Plaintiffs' loan payments.  *See* Dkt. No. 158-2 at 119.  Setting aside that the RICO award already achieves restitution as discussed above, the only other conceivable equitable remedy would be disgorgement of the profits Defendants earned for servicing the PEAKS loan program.  That amount is approximately $3.5 Million.  *See* Jury Trial Ex. C.  And that amount is also subsumed within the $12 million RICO award.

**First**, damages are not recoverable under the UCL.  *Korea Supply*, 29 Cal. 4th at 44 (2003) ("[D]amages cannot be recovered.")

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)          - 29 -          Defs.' Trial Brief re: Pls.' UCL Claim

**Second**, "[t]o obtain restitution, the plaintiff has to identify 'money' or 'property' wrongfully held by a UCL defendant, not someone else." *Rutter*, Relief Available Under §§ 17200 and 17500, Bus. & Prof.C. 17200, Ch. 8-A (citing *Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 315 (2022)). Thus, a borrower whose home was sold at auction could not obtain restitution of her house from the auctioneer or original lender, as title had passed to another lender whom the plaintiff did not name as a UCL defendant. *Id.*

Here, just as in the *Morris* case, Plaintiffs have pleaded themselves out of recovery of any monetary restitution of their payments when they dismissed Deutsche Bank from the case (the entity who obtained or "acquired" their loan payments) and tried to maintain the claim against the loan servicer who did not "obtain" their payments. *See id.*; *see also Daniels v. Select Portfolio Serv. Inc.*, 246 Cal. App. 4th 1150, 1187 (2016) (stating plaintiff cannot maintain UCL claim for restitution against loan servicer absent any allegation that the servicer obtained the money the borrower paid). In its first summary judgment order, the Court agreed with this exact analysis and reasoned that although Vervent as loan servicer did not obtain the funds Plaintiffs paid on their loans (which were paid to Deutsche Bank, the lender), it was paid based on a percentage of the portfolio it serviced, such that "what Plaintiffs lost potentially led to what Defendant gained as required for restitution." *Aliff v. Vervent Inc.*, No. 20-CV-697-DMS-AHG, 2022 WL 3588322, at *8 (S.D. Cal. Aug. 22, 2022) (Sabraw, J.). The Court therefore found Plaintiffs could seek disgorgement of the profits Defendants earned as servicing fees, but not the entirety of the money PEAKS borrowers paid to their lender, Deutsche Bank. *Id.* The seminal case on this issue also dictates the same result. *Korea Supply Co.*, 29 Cal. 4th at 1145 ("[D]isgorgement of money obtained . . . is an available remedy in a representative action only to the extent that it constitutes restitution.").

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)                    - 30 -                    Defs.' Trial Brief re: Pls.' UCL Claim

The evidence at trial showed Vervent earned roughly $3.5 million during the limitations period. *See* Jury Trial Ex. C. The $12 million award already accounted for and subsumes that $3.5 million, so Plaintiffs cannot receive further disgorgement.

Accordingly, there is nothing further the Court could award under the UCL. Plaintiffs' recovery under the UCL (either $3.5 million in disgorgement or $5.201 million in restitution) has already been awarded through damages of $12 million. That is why Plaintiffs have already received their adequate legal remedy.

## III.   PROPER DISPOSITION OF THE UCL CLAIM

In disposing of the UCL claim, the Court should find that Plaintiffs obtained an adequate remedy at law in their RICO damages, and then dismiss the UCL claim with prejudice and without leave to amend. *Zeller*, 2022 WL 17858032 at *7 (dismissing UCL claim because court lacks equitable jurisdiction when plaintiff has an adequate remedy at law available). Now that Plaintiffs have recovered, the claim fails as a matter of law here and in state court. *Utne*, 2022 WL 1443339 at *3 ("It seems Plaintiffs' [UCL] claims would be futile in state court . . . because California too requires the lack of an adequate remedy at law before granting equitable relief.").

### CONCLUSION

For each of the foregoing reasons, the Court should: (1) find that Plaintiffs obtained an adequate remedy at law in their RICO monetary damages; (2) dismiss the UCL claim with prejudice and without leave to amend; and (3) grant Defendants judgment against Plaintiffs' UCL claim as a matter of law and/or on the pleadings.

If the Court decides to reach the UCL claim, Plaintiffs cannot recover twice. Plaintiffs' recovery must be limited, in accordance with their own pleadings and controlling law, to recovery of either $3.5 million or $5.201 million in restitution payable to California PEAKS borrowers only.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 3:20-cv-00697-DMS (AHG)          - 31 -          Defs.' Trial Brief re: Pls.' UCL Claim

1

Dated:  September 5, 2023                  **ARENTFOX SCHIFF LLP**

2

3
                                           By: _/s/ John S. Purcell_____
4
                                                JOHN S. PURCELL
                                                DOUGLAS E. HEWLETT, JR.
5
                                                Attorneys for Defendants
6                                               VERVENT INC. fka FIRST
                                                ASSOCIATES LOAN SERVICING,
7                                               LLC; ACTIVATE FINANCIAL, LLC;
                                                DAVID JOHNSON; and LAURENCE
8                                               CHIAVARO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:20-cv-00697-DMS (AHG)           - 32 -           Defs.' Trial Brief re: Pls.' UCL Claim