**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HEATHER TURRY, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>VERVENT, INC., etc., et al.<br><br>　　　　　　　　　　Defendants. | Case No.: 20-cv-697-DMS-AHG<br><br>**ORDER DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(b)** |

　　　Pending before the Court is Defendants' motion for judgment as a matter of law ("JMOL") pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. (Motion, ECF No. 369). Plaintiffs filed a response in opposition, (Opp'n, ECF No. 375), and Defendants filed a reply. (Reply, ECF No. 377). The matter is suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 378). For the reasons discussed below, Defendants' motion is denied.

**　　　　　　　　　　I.　　BACKGROUND**

　　　The background of this case has been summarized in numerous prior orders. (ECF Nos. 128, 140, 151, 180). The facts below are relevant to the subject motion.

　　　On June 8, 2023, a seven-day class action jury trial commenced. During the trial and nearing the close of Plaintiffs' case in chief, the Court expressed skepticism that

1

Plaintiffs' Fair Debt Collection Practices Act ("FDCPA"), Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), and negligent misrepresentation claims could be adjudicated on a class-wide basis and stated that it was inclined to decertify those claims. Plaintiffs elected to dismiss those claims and not pursue them on an individual basis. Thereafter, Defendants filed a motion for judgment as a matter of law pursuant to Rule 50(a), in which they challenged Plaintiffs' sole remaining class-claim under RICO. (ECF No. 280). The Court denied the motion, (ECF No. 287), and the jury found Defendants Vervent, Inc., Activate Financial, LLC, and David Johnson liable for engaging in a RICO conspiracy under 18 U.S.C. § 1962(d). (ECF No. 300).

Defendants now renew their JMOL motion under Rule 50(b). Specifically, Defendants argue they are entitled to judgment as a matter of law because the RICO claim is time-barred, and Plaintiffs' evidence is insufficient to establish a RICO "enterprise" and invalidity of the underlying "PEAKS loans." Each argument is addressed below.

## II.    LEGAL STANDARD

Under Rule 50(b), a party that has previously moved for JMOL under Rule 50(a) may file a renewed motion. Fed. R. Civ. P. § 50(b). "A renewed motion for JMOL is properly granted 'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.' A jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)) (internal citations omitted). "'Reviewing a renewed motion for JMOL requires scrutiny of the entire evidentiary record, but the court 'must not weigh the evidence, [and instead] should simply ask whether the [nonmoving party] has presented sufficient evidence to support the jury's conclusion.' In so doing, the court must draw all reasonable inferences in favor of the nonmoving party and 'disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Escriba*, 743 F.3d at 1242–43 (internal citations omitted).

### III.  DISCUSSION

**A. Preservation of Issues under Rule 50(b)**

Plaintiffs argue that Defendants waived their statute of limitations defense when they "did nothing to present [it] to the jury." (Opp'n, at 9–10). Defendants disagree, noting that is not a requirement to preserving an argument under Rule 50(b); rather, waiver of an argument in a Rule 50(b) motion is determined by whether the moving party failed to assert the argument in their Rule 50(a) motion .  The Court agrees with Defendants.

"Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion.  Thus, a party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion.'" *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)). "Rule 50(b) 'may be satisfied by an ambiguous or inartfully made motion' under Rule 50(a)." *Go Daddy*, 581 F.3d at 961 (quoting *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989)).

Defendants advance two statute of limitations arguments in their post-verdict Rule 50(b) motion: (1) under the "injury discovery rule[,]" Plaintiffs knew or should have known that their injuries from the alleged loan fraud occurred prior to the four-year statute of limitations period (April 10, 2016 to September 2020) and therefore their claims are time-barred; and (2) any injuries suffered by Plaintiffs during the four-year limitations period (2016-20) are not saved by the "separate accrual rule" because those injuries are not "new and independent" and they did not arise from "new and independent acts" of Defendants that are "not merely a reaffirmation of a previous [wrongful] act[.]" (Motion, at 8–21).  In their pre-deliberation Rule 50(a) motion, Defendants titled their statute of limitations argument, "The RICO Claim is Time-barred[,]" and made a brief statement regarding how a RICO claim begins to accrue under the injury discovery rule. (ECF No. 280, at 14) (stating "the statute of limitations begins running on a RICO claim according to the 'injury discovery accrual rule' which ties accrual to the time when a

plaintiff first knew or should have known of his injury[,]" (citing *Rotella v. Wood,* 528 U.S. 549, 554 (2000))). The balance of Defendants' argument focused on the separate accrual rule. However, Defendants' separate accrual argument was necessarily premised on the assumption that the wrongful (injuring causing) acts attributed to Defendants occurred outside the limitations period (before April 10, 2016) and that the later wrongful acts attributed to Defendants within the limitations period (April 10, 2016 to September 2020) were not "new and independent" and thus did not save Plaintiffs' RICO claim from being time-barred. *See Go Daddy,* 581 F.3d at 962 (finding an argument made in a Rule 50(b) motion to be a "logical extension" of an argument made in Rule 50(a) motion). Accordingly, the Court finds that Defendants sufficiently raised and preserved the injury discovery rule argument in their pre-deliberation Rule 50(a) motion.

## B. Statute of Limitations and Injury Discovery Rule

Civil RICO claims have a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). Under the injury discovery rule, the "civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). Plaintiffs' RICO claim "may accrue before [they] discovered that all of the elements of the RICO claim exist, as long as in fact all such elements are present." *Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*, 518 F. Supp. 2d 1182, 1186 (C.D. Cal. 2007) (citing *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996)). Plaintiffs are "deemed to have had constructive knowledge if [they] had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Pincay*, 238 F.3d at 1110.

In the present motion, Defendants argue that Plaintiffs knew or should have known of their injury due to ITT Educational Service's ("ITT") fraud in 2010 and 2011—when ITT enrolled Plaintiffs in the fraudulent PEAKS loan program and Plaintiffs did not receive required Truth in Lending Act ("TILA") loan disclosure forms—or in 2012 and 2013— when Defendants started servicing Plaintiffs' PEAKS loans. (Motion, at 9–11).

Specifically, Defendants argue that Plaintiffs knew or should have known of the fraud from 2010 to 2013 because: (1) their loan agreements did not contain interest rates or other required terms; (2) they did not receive the requisite loan disclosures within the legally required timeframe; (3) they either had loans fraudulently taken out in their names or they were misled into taking out the loans through a point-and-click process; and (4) they learned of the existence of the loans by at least 2012 and 2013, when they started making payments to Defendants. (*Id*).

The "question of whether a plaintiff knew or should have become aware of a fraud [is ordinarily left] to the jury." *Fruit & Vegetable Packers & Warehousemen Loc. 760 v. Morley*, 378 F.2d 738, 746 (9th Cir. 1967). Here, that question relates to when Plaintiffs knew or had enough information to warrant an investigation, which if reasonably diligent, would have led to discovery of the fraudulent nature of the PEAKS loan scheme. Defendants, however, did not request an affirmative defense jury instruction relating to the timeliness of Plaintiffs' RICO claim. Nor did they request a special interrogatory to the jury to make a factual finding regarding when Plaintiffs had actual or constructive notice of the PEAKS loan scheme. And neither party made any arguments to the jury about the statute of limitations because that defense was not prompted by Defendants for resolution by the trier of fact.

A motion for JMOL is properly granted "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao*, 307 F.3d at 918. The problem for Defendants is that the jury never had occasion to make factual findings or arrive at a conclusion under the injury discovery rule, as that inquiry was never submitted to the jury.

While the evidence at trial cited by Defendants could suggest that Plaintiffs and class members should have been suspicious of the legitimacy of their loans and hence the PEAKS loan fraud, it did not compel "only one reasonable conclusion[,]" (*Pavao*, 307 F.3d at 918), that Plaintiffs knew or should have known of the PEAKS loan scheme before April 10, 2016. To the contrary, Plaintiffs presented evidence that there were efforts by ITT and

Defendants to ensure that Plaintiffs would not learn about the fraudulent nature of the loans. For example, ITT made monthly payments on behalf of borrowers who were at risk of default, approximately $16.1 million, to keep those loans out of default and from being reported. (ECF No. 307-8, at 59–68). And when a borrower affirmatively reached out to Defendants regarding late loan payments, they were told that their loan qualified for a "recovery program" and would be brought current. (*Id.*) There was no indication that they would be liable for the loan forgiveness. (*Id.*). Construing this and other evidence in the light most favorable to Plaintiffs, as the Court must, there was substantial evidence to support the jury's verdict and its consideration of the RICO claim. In other words, there was sufficient evidence to support a finding—had it been presented to the jury—that Plaintiffs neither knew nor should have known of the PEAKS loan fraud before April 10, 2016. Thus, the jury's verdict that Defendants conduct caused Plaintiffs and class members "damages that occurred between April 10, 2016, and September 2020[,]" when they made payments on the fraudulent loans, (ECF No. 300, Verdict Form ¶ 3), is supported by substantial evidence. Accordingly, the Court denies Defendants' Rule 50(b) motion on this ground.[1]

### C. RICO Claim

Plaintiffs alleged that ITT and other entities formed the "PEAKS Loan Enterprise" to defraud the Department of Education ("DOE") and investors "to produce an illicit revenue stream for participating conspirators, including Defendants, who allegedly joined the ongoing enterprise with knowledge of its purpose and with intent to facilitate the enterprise." ECF No. 304, at 22 (Jury Instruction No. 19). To prove RICO conspiracy under 18 U.S.C. § 1962(d), Plaintiffs had to establish that: (1) a conspiracy existed between two or more persons to conduct or participate, directly or indirectly, in the affairs of the charged enterprise; (2) an enterprise as alleged existed, which consisted of a group of

---

[1] Because the Court denies Defendants' Rule 50(b) motion under the injury discovery rule, it need not address the separate accrual rule arguments.

persons or entities associated together for a common purpose or to engage in a course of conduct, through a pattern of racketeering activity; (3) Defendants knowingly joined or became members of the conspiracy with knowledge of its purpose and with the intent to facilitate the enterprise; (4) Defendants knew that a member of the conspiracy, not necessarily the Defendants, would commit a least two racketeering acts; and (5) the activities of the enterprise in some way affected interstate or foreign commerce. *Id.*

As noted, in their Rule 50(a) motion, Defendants challenged Plaintiffs' RICO claim on grounds that there was an absence of evidence to establish: (1) that the PEAKS loans were invalid, *i.e.*, not consummated, and (2) a RICO enterprise. (ECF No. 280, at 6–14). Defendants renew these arguments in the subject motion.

Regarding loan consummation, that is not an element of the RICO claim. While the alleged invalidity of the PEAKS loans was principally directed to Plaintiffs' dismissed FCPA, RFDCPA, and negligent misrepresentation claims, (ECF No. 180, at 3), it was also directly relevant to the RICO claim, as invalidity of the loans was "one of the alleged red flags" that put Defendants on notice of ITT's fraudulent loan scheme. *Id.* Thus, Plaintiffs fairly argued to the jury that these were "sham" loans and Defendants knew it. Evidence of the absence of TILA loan disclosures and invalidity of the loans, whether such invalidity was proven or not, was relevant to proving up an element of the RICO claim, to wit, Defendants' knowledge of the conspiracy and their intent to facilitate the enterprise.

In support of the argument that Plaintiffs failed to present substantial evidence of a RICO enterprise, Defendants highlight three points of testimony by Plaintiffs' expert Persis Yu. (Motion, at 26). First, Ms. Yu testified that she was "not aware of any widespread failure to make TILA disclosures for the PEAKS loans." (*Id.*). Second, Ms. Yu noted that "there was no official finding that the servicing of the loans should be stopped until the CFBP [Consumer Financial Protection Bureau] settlement in 2020." (*Id.*). Third, Ms. Yu "ha[d] no reason to believe that all of the loan funds were not credited to student borrowers' accounts." (*Id.*).

    The trial record, however, contains more than what Defendants highlight. Ms. Yu also testified about how the PEAKS loan program involved little to no underwriting for loan acceptance. ECF No. 295 402:15–18, 406:6–19, 429:24–430:2; ECF No. 269 595:3–14. The projected (and actual) default rate of the PEAKS loan portfolio was extremely high. ECF No. 295 403:17–24, 406:20–407:1; ECF No. 271 1037:22–1039:1. The program's guaranty structure ensured that ITT would pay three times what borrowers paid. ECF No. 271 1041:20–1042:23; 1049:2–1050:3. The PEAKS loan "enterprise" allowed ITT to evade DOE's 90/10 Rule, (ECF Nos. 295 404:8-405:11; 298 1170:9-20), and defraud its investors and federal regulators. ECF Nos. 295 430:10–19; No. 271 993:9–994:2, 1019:19–1021:1. Construing the evidence in the light most favorable to Plaintiffs, the jury's verdict and findings on each RICO element are supported by substantial evidence.

## IV. CONCLUSION

    For these reasons, the Court denies Defendants' motion.

**SO ORDERED.**

Dated: February 26, 2025

                                        Hon. Dana M. Sabraw
                                        United States District Judge