# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER TURRY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> VERVENT, INC., etc., et al. <br><br> Defendants. | Case No.: 20-cv-697-DMS-AHG <br><br> **ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS OF SUIT, AND SERVICE AWARDS** |

Pending before the Court is Plaintiffs' motion for attorneys' fees, costs of suit, and service awards for class representatives. (Motion, ECF No. 357). Defendants filed a response in opposition, (Opp'n, ECF No. 370), and Plaintiffs filed a reply. (Reply, ECF No. 372). The motion is suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 373). For the reasons discussed below, the Court finds that Plaintiffs are entitled to **$4,086,277.04** in attorneys' fees, **$465,149.76** for costs of suit, and **$85,000** in service awards for the class representatives.

## I.     BACKGROUND

The background of this case has been summarized in numerous prior orders. (ECF Nos. 128, 140, 151, 180). The facts below are relevant to the subject motion.

1

In April 2020, Plaintiffs filed their class action complaint against Defendants Vervent, Inc., Activate Financial, LLC, David Johnson, Christopher Schuler, Lawrence Chiavaro ("Defendants"), and Deutsche Bank Trust Company Americas ("DBTCA"). (ECF No. 1). The initial complaint named Jody Aliff, Marie Smith, and Heather Turrey as class representatives, and alleged the following claims: (1) Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) Fair Debt Collection Practices Act ("FDCPA"); (3) Rosenthal Fair Debt Collection Practice Act ("RFDCPA"); (4) California's Unfair Competition Law ("UCL"); and (5) negligent misrepresentation. (*Id.* at 30–45). Defendants and DBTCA filed motions to compel arbitration. (ECF Nos. 31–32). The Court granted DBTCA's motion and denied Defendants' motion. Defendants appealed, and thereafter the Ninth Circuit affirmed the Court's denial of arbitration.

The case proceeded through voluminous discovery. The parties exchanged hundreds of thousands of documents and took part in several discovery conferences before Magistrate Judge Goddard. During that process, Plaintiffs amended their complaint and added new class representatives following Defendants' settlement with some of the named Plaintiffs. (ECF No. 84). The parties engaged in extensive motion practice: Defendants filed a motion for summary judgment (ECF No. 85); Plaintiffs filed a motion for class certification (ECF No. 87); Defendants filed a motion to dismiss—which they subsequently withdrew (ECF Nos. 100; 104); Plaintiffs filed an amended motion for class certification (ECF No. 143); and Defendants filed a second motion for summary judgment (ECF No. 158). Ultimately, the Court denied Defendants' summary judgment motions and granted in part Plaintiffs' amended motion for class certification. As the case approached trial, Defendants filed motions to modify the scheduling order and decertify the class, (ECF No. 183), which were denied. (ECF No. 193). The parties also filed several motions in limine and *Daubert* motions.

On June 8, 2023, a seven-day class action jury trial commenced. During the trial and nearing the close of Plaintiffs' case in chief, the Court expressed skepticism that Plaintiffs' FDCPA, RFDCPA, and negligent misrepresentation claims could be adjudicated

on a class-wide basis and stated that it was inclined to decertify those claims. Plaintiffs elected to dismiss those claims and not pursue them on an individual basis. Defendants thereafter filed a motion for judgment as a matter of law pursuant to Rule 50(a) and challenged Plaintiffs' sole remaining class-claim under RICO, (ECF No. 280), which was denied. (ECF No. 287). The jury returned a verdict in favor of Plaintiffs and all class members on that claim and awarded $4,000,000 in damages,[1] (ECF No. 300), which was trebled under the statute for a total award of $12,000,000.

Post-verdict, this Court scheduled a bench trial for Plaintiffs' remaining equitable claim under the UCL. After additional briefing by the parties, the Court dismissed the UCL claim on jurisdictional grounds and vacated the bench trial. (ECF No. 338). Plaintiffs also filed a motion to alter or amend the judgment pursuant to Rule 59(e), (ECF No. 313), which was denied. (ECF No. 345).

## II. LEGAL STANDARD

Under the RICO statute, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Courts routinely interpret this language to mandate an award of attorneys' fees and costs to a party injured by a RICO violation. *See Valadez v. Aguallo*, No. C-08-03100, 2009 WL 10680866, at *4 (N.D. Cal. Dec. 10, 2009), *aff'd*, 433 Fed. App'x 536 (9th Cir. 2011)). Because Plaintiffs prevailed on their RICO claim, the parties contest only the amount of attorneys' fees, costs, and service awards.

## III. DISCUSSION

To calculate attorneys' fees, the Court starts with the lodestar method. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) ("The 'lodestar' figure has, as its name

---

[1] The jury did not find Defendant Chiavaro liable under the RICO claim, (ECF No. 300), and all claims against Defendant Schuler were dismissed. (ECF No. 360).

suggests, become the guiding light of our fee-shifting jurisprudence." (quoting *Burlington v. Dague*, 505 U.S. 557, 562 (1992)); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) ("When calculating an attorney's fee award, a district court can employ one of two methods—the lodestar or a percentage of the recovery."). Here, the parties agree the lodestar method is appropriate. "Under the lodestar method, the district court 'multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award.'" *In re Apple*, 50 F.4th at 784 (quoting *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021)). After the initial lodestar calculation, the court can apply upward or downward adjustments "to account for factors such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Id.* (quoting *Kim*, 8 F.4th at 1180–81).

**A. Reasonable Hourly Rate**

The reasonable hourly rate is set by the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits"—here the Southern District of California. *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). The Court employs currently prevailing rates in its calculations. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor.").

Plaintiffs' counsel Blood, Hurst & O'Reardon, LLP requests hourly rates of or between $660 to $960 for partners, $675 for Of Counsel, $500 to $575 for associates, $175 to $280 for paralegals, and $215 for summer associates. (Blood Decl., ECF No. 357-2 ¶ 75). Langer, Grogan & Diver P.C. requests hourly rates of $950 for partners, $950 for "Senior Attorney," $550 for associates, and $280 for paralegals. (Ackelsberg Decl., ECF

No. 357-14 ¶ 39). The Law Office of Paul Arons requests a $700 hourly rate for attorney Paul Arons. (Grace Decl., ECF No. 357-17 ¶ 13). Any variation within each category is explained by years of legal experience. Defendants do not dispute these hourly rates.

After reviewing Plaintiffs' counsels' rates, the Court finds them to be reasonable. They are approximately in line with past hourly rates approved in this district. *See In re Outlaw Lab'ys, LP Litig.*, No. 18-CV-840-GPC-BGS, 2023 WL 6522383, at *3 (S.D. Cal. Oct. 5, 2023) (approving hourly rates of $996 for senior partners and $855 for other attorneys); *CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-02479, 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22, 2023) (approving hourly rates of over $1,000 for partners); *Lopez v. Mgmt. & Training Corp.*, No. 17-cv-1624, 2020 WL 1911571, at *8-9 (S.D. Cal. Apr. 20, 2020) (approving hourly rates ranging from $500 to $900).

As for the paralegals, the requested hourly rates are also consistent with their years of experience. This district has awarded paralegal fees in line with the $175 to $280 hourly rates requested by Plaintiffs' counsel. *See Durruthy v. Charter Commc'ns, LLC*, No. 20-CV-01374-W-MSB, 2021 WL 6883423, at *6 (S.D. Cal. Sept. 30, 2021) (collecting cases). Dafne Maytorena and Kim Ferrari have over 21 years of experience as paralegals. Their requested $280 hourly rate is consistent with awards in this district. *See, e.g.*, *In re Maxwell Techs., Inc., Derivative Litig.*, No. 13CV966 BEN (RBB), 2015 WL 12791166, at *5 (S.D. Cal. July 13, 2015). Though no experience-level was provided for paralegal Daniela Rodriguez, her requested $175 hourly rate is generally consistent with approved rates in this district for paralegals without significant experience. *Id.*

Finally, Langer, Grogan & Diver P.C. requests a $215 hourly rate for its summer associate's work. Reasonable rates for summer associates have been assessed in this district between $125 and $150 per hour. *See Stross v. Z Lifestyle LLC*, No. 20-CV-177-DMS-AGS, 2020 WL 13556135, at *8 (S.D. Cal. Nov. 5, 2020) (finding a $200 hourly rate for summer associates "on the high end for [the Southern] District" and instead finding a $150 hourly rate to be reasonable); *Grace Church of N. Cnty. v. City of San Diego*, No. 07CV0419 H(RBB), 2008 WL 11508664, at *9 (S.D. Cal. Sept. 9, 2008) (awarding a

$125 hourly rate for summer associate work). Given a summer associate's dearth of legal experience, the Court finds a slight reduction to a $175 hourly rate is warranted. This finding is consistent with the hourly rate assigned for paralegals without significant experience. *See Stross*, 2020 WL 13556135, at *8 (setting the same hourly rate for summer associates and paralegals).

### B. Reasonable Number of Hours Expended

"In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Plaintiffs "bear[] the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). Defendants bear the "burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Id.* at 1397–98.

Plaintiffs' counsel request a collective lodestar based on 7,024 hours.[2] Motion, at 23–24; Blood Decl. ¶ 75; Ackelsberg Decl. ¶ 39. Counsel claim that these hours "represent[] only time spent that benefited the Class" and "exclude[] billable hours related to work on certain post-trial briefing, including Plaintiffs' failed UCL claim, the motion to alter or amend the judgment, the motion for leave to amend the Second Amended Complaint, work exclusively related to researching and calculating prejudgment interest, and work exclusively related to dismissed defendant DBTCA." Blood Decl. ¶ 74; *see also* Ackelsberg Decl. ¶ 39.

---

[2] The Court notes that Plaintiffs' Motion requests 6,660.40 hours for reimbursement. (Motion, at 24). This figure appears to exclude hours billed by the late Paul Arons. However, Plaintiffs' accompanying affidavits include Mr. Arons' hours and billable rates. *See* Blood Decl., ¶ 84; Ackelsberg Decl. at 20; Grace Decl. ¶ 11. Accordingly, the Court interprets Plaintiffs' Motion to request reimbursement for a total of 7,024 hours of work.

1. Relation of Unsuccessful Claims

"A plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful [RICO] claim. Such unrelated claims must be treated as if they had been raised in a separate lawsuit to realize 'congressional intent to limit awards to prevailing parties.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 435). However, "in a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis. Instead, the court must proceed to the second part of the analysis and 'focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Id.* (quoting *Hensley*, 461 U.S. at 435) (internal citations omitted).

Defendants argue that Plaintiffs' four unsuccessful claims—FDCPA, RFDCPA, negligent misrepresentation, and UCL—were unrelated and should be excluded from the lodestar. (Opp'n, at 20). These claims, according to Defendants, did not "share[] any legal or factual overlap with the RICO theory" and were instead "about particular regulatory requirements." (*Id.* at 23). Plaintiffs argue that each claim centered on the same "common core of facts"—the PEAKS loan scheme. (Reply, at 9).

The Court agrees with Plaintiffs. Although based on different legal theories, each of Plaintiffs' claims focused on the fraudulent PEAKS loan program. The RICO conspiracy presented to the jury encompassed all acts of Defendants' alleged wrongdoing, including those acts under the dismissed claims. As the Court previously noted, while the validity of the PEAKS loans is principally related to Plaintiffs' FCPA, RFDCPA, UCL, and negligent misrepresentation claims, the asserted invalidity of the underlying loans is relevant to Plaintiff's RICO conspiracy claim and Defendants' knowledge of the conspiracy, as it is one of the red flags Plaintiffs claim put Defendants on notice of ITT's fraudulent loan scheme. (ECF No. 180, at 3). Accordingly, the Court declines to engage in Defendants' proposed claim-by-claim division of attorneys' fees.

Defendants also appear to argue that because Plaintiffs' counsels' work on these related claims were unsuccessful, the Court should excise those hours from the lodestar. (Opp'n, at 26–27). As stated, Ninth Circuit precedent is primarily concerned with the relatedness of the claims—not whether those claims were ultimately successful. While the Court agrees that Plaintiffs should not be compensated for unnecessary and irrelevant work, the dismissed claims were neither unnecessary nor irrelevant.

### 2. Staffing

"[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). "A reduction of fees is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Herring Networks, Inc. v. Maddow*, No. 19-CV-1713-BAS-AHG, 2021 WL 409724, at *9 (S.D. Cal. Feb. 5, 2021) (quoting *Noyes v. Grossmont Union High Sch. Dist.*, 331 F. Supp. 2d 1233, 1250 (S.D. Cal. 2004), *rev'd on other grounds*, *Evan v. Grossmont Union High Sch. Dist.*, 197 Fed. App'x 648 (9th Cir. 2006)).

Defendants further argue that Plaintiffs' counsel overstaffed their case and that a reduction in attorney hours is warranted. (Opp'n, at 25–26). Defendants' particular gripes with Plaintiffs staffing include (1) the fact that Plaintiffs' counsel had seventeen unique timekeepers to Defendants' two; and (2) Plaintiffs' counsel had multiple attorneys present at depositions and at trial versus Defendants' two attorneys. (*Id.* at 25).

The Court declines Defendants' invitation to penalize Plaintiffs' counsel for their staffing decisions. "While it is appropriate to consider the skill required to perform a task, the district court may not set the fee based on speculation as to how other firms would have staffed the case." *Moreno*, 534 F.3d at 1114 (internal citations omitted). The Ninth Circuit in *Moreno* noted that "[t]he cost effectiveness of various law firm models is an open question, and it is by no means clear whether a larger law firm would have billed more or

less for the entire case." *Id.* Accordingly, the Court declines to reduce the amount of attorney hours based on Plaintiffs' staffing decisions.

### 3. Attorney Hours Related to Appeal

Defendants contend that Plaintiffs should not be compensated for any work relating to Defendants' appeal of this Court's Order denying Defendants' motion to compel arbitration. Defendants argue that, "RICO does not authorize attorneys' fees on appeal," and Plaintiffs had to but "did not request a fee determination from the Ninth Circuit." (Opp'n, at 29). Plaintiffs disagree, noting that other courts have held that the RICO statute authorizes awarding fees and costs spent on appeals. (Reply, at 12).

The Court agrees with Plaintiffs. At the outset, courts in this Circuit and others have routinely held that RICO authorizes reimbursement for attorneys' fees spent on appeals. *See Int'l Bus. Machines Corp. v. Brown*, No. 94-56001, 1998 WL 10751, at *4 (9th Cir. Jan. 9, 1998) (granting respondent's request for attorneys' fees on appeal); *Int'l Floor Crafts v. Dziemit*, 420 Fed. App'x 6, 18–19 (1st Cir. Apr. 21, 2011) ("We assume for present purposes that appellate fees are part of the fees calculable as costs under RICO."); *C.f. Bullock v. Abbott and Ross Credit Servs., L.L.C.*, No. A-09-CV-413 LY, 2009 WL 4598330, at *5 & n.10 (W.D. Tex. Dec. 3, 2009) (finding RICO appeal costs reimbursements "appropriate only in the event an appeal takes place"). Plaintiffs were not required to request attorneys' fees from the Ninth Circuit. Defendants' single cited authority involved an appeal of a claim under 42 U.S.C. § 1988, which specifically requires that attorneys' fees incurred on appeal "must be filed in the first instance in the circuit court." *Wheeler v. Coss*, No. 06-CV-00717-RAM, 2010 WL 2628667, at *6 (D. Nev. June 28, 2010). No such requirement exists under the RICO statute, 18 U.S.C. § 1964. Accordingly, the Court declines to omit counsels' work caused by Defendants' appeal of the Order denying Defendants' motion to compel arbitration.

### 4. Attorney Hours Related to Discovery Disputes

Defendants also argue that Plaintiffs should not be entitled to any compensation relating to discovery disputes because no discovery motions were filed. (Opp'n, at 28–29).

However, courts in this district routinely include in lodestar calculations work done on discovery disputes regardless of whether a motion to compel was filed. *See Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *19 (S.D. Cal. Nov. 5, 2012) (noting "discovery disputes, lengthy meet and confer efforts, . . . and other extensive discovery-related work" when calculating the lodestar); *Hawkins v. Kroger Co.*, No. 15CV2320 JM (AHG), 2022 WL 345639, at *10 (S.D. Cal. Feb. 4, 2022) (noting "numerous discovery disputes" when calculating the lodestar). Accordingly, the Court declines to omit from the lodestar calculation attorney time related to resolution of discovery disputes.

### 5. Sufficient Documentation

Defendants argue that Plaintiffs' counsel did not meet their burden because they failed to provide time records and documentation showing "with any specificity the tasks completed … for attorney spent time on each task." (Opp'n, at 16). The consequence for this lack of specificity, according to Defendants, should be a reduction of attorneys' fees on a percentage basis or denial of Plaintiffs' request for attorneys' fees and costs. (*Id.*). However, time records are not required where, as here, the reviewing court has "detailed declarations" and other documentation sufficient to address the request for fees. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, No. 16-cv-236-WHO, 2020 WL 7626410, at *6–7 (N.D. Cal. Dec. 22, 2020); N.D. Cal. Civ. L.R. 54-5(b)(2) (no submission of time records with fee motion unless ordered by the court). Class counsel here submitted detailed descriptions, declarations, and tables of information supporting their fees motion.

Nevertheless, counsels' general description of what hours were not billed—asserting they "voluntarily cut their lodestar by 11%[,]" (Reply, at 2)—left some gaps in an otherwise satisfactory record. Accordingly, the Court applies a 5% reduction to Plaintiffs' total requested hours. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a

'haircut'—based on its exercise of discretion and without a more specific explanation.'"). Consequently, the Court finds Plaintiffs' counsels' reasonable hours to be 6,672.8 hours.

### C. The Resulting Lodestar

Based on the foregoing discussion, Plaintiffs' initial lodestar calculation is $5,060,405. After the 5% reduction, the lodestar is **$4,807,384.75**.

| Law Firm | Individual | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| BHO | Timothy G. Blood | 493.75 | $960 | $474,000 |
| BHO | Leslie E. Hurst | 480.5 | $810 | $389,205 |
| BHO | Thomas J. O'Reardon II | 10.50 | $710 | $7,455 |
| BHO | Paula R. Brown | 270.25 | $660 | $178,365 |
| BHO | James M. Davis | 1,011.5 | $500 | $505,750 |
| BHO | Jennifer MacPherson | 12.75 | $675 | $8,606 |
| BHO | Craig W. Straub | 25.5 | $575 | $14,663 |
| BHO | Aleksandr J. Yarmolinets | 137.25 | $565 | $77,546 |
| BHO | Joseph Tull | 37.75 | $175 | $6,606 |
| BHO | Dafne Maytorena | 260.25 | $280 | $72,870 |
| BHO | Daniela Rodriguez | 15 | $175 | $2,625 |
| LGD | Irv Ackelsberg | 1,571.20 | $950 | $1,492,640 |
| LGD | John J. Grogan | 1,135.50 | $950 | $1,078,725 |
| LGD | Mary Catherine Roper | 15.60 | $950 | $14,820 |
| LGD | David A. Nagdeman | 538.20 | $550 | $296,010 |
| LGD | Kevin Trainer | 20.10 | $550 | $11,055 |
| LGD | Kim Ferrari | 624.80 | $280 | $174,944 |
| PA | Paul Arons | 363.6 | $700 | $254,520 |
| | | 7,024 | | $5,060,405.00 |
| | | | | x 0.95 |
| | **Total** | | | **$4,807,384.75** |

### D. Adjustments to the Lodestar

Although the lodestar is presumptively reasonable, the Court may adjust it by an appropriate multiplier "reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)) (internal quotations omitted). Of these factors, "a party's success in the litigation is the 'most critical.'" *Id.* (quoting *Hensley*, 461 U.S. at 436). "[W]here the plaintiff has achieved 'only limited success,' counting *all* hours expended on the litigation—even those reasonably spent—may produce an 'excessive amount.'" *In re Bluetooth*, 654 F.3d at 942 (quoting *Hensley*, 461 U.S. at 436).

#### 1. Level of Success

"When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should . . . consider[] the relationship between the amount of the fee awarded and the results obtained." *Yamada*, 825 F.3d at 546. A party's level of success includes "the damages award, potentially a related settlement amount, and 'the significant nonmonetary results . . . achieved for [plaintiffs] and other members of society.'" *In re Outlaw Lab'ys*, 2023 WL 6522383, at *8 (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996)). "[T]he district court must consider the excellence of the overall result, not merely the amount of damages won." *McCown*, 565 F.3d at 1104. Nonetheless, "a district court should 'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

Plaintiffs' counsel argue that they achieved "an [e]xceptional [r]esult for the Class" after having "battled for years with formidable adversaries and prevail[ing] in a complex and difficult trial against three of four defendants." (Motion, at 28). Defendants have a different interpretation of the result, noting that Plaintiffs prevailed on only one of five claims and were awarded approximately 7% of their requested damages. (Opp'n, at 18).

1    As a result, Defendants recommend an 80% reduction to the lodestar to reflect Plaintiffs'
2    20% success rate on the claims they brought. (*Id.* at 20).

3    The Court starts with Plaintiffs' monetary success. Plaintiffs prevailed on their
4    RICO claim and were awarded a total recovery of $12,000,000. Plaintiffs' victory falls
5    short of their goal of $51,509,051, but it was a significant win as it proved up a massive
6    loan scheme that Defendants facilitated under challenging facts and circumstances.

7    The Court next considers Plaintiffs' nonmonetary success, specifically the
8    "excellence of the overall result." "[T]he district court should consider whether, and to
9    what extent, [Plaintiffs'] suit benefitted the public. The public benefit of a suit must have
10   enough of an impact to justify a fully compensatory fee award despite limited success on
11   damages claims. To determine this impact, the district court should consider whether the
12   plaintiff has affected a change in policy or a deterrent to widespread civil rights violations."
13   *McCown*, 565 F.3d at 1105. In the context of RICO suits, consideration of nonmonetary
14   success is particularly appropriate since "fee-shifting under 18 U.S.C. § 1964(c) ensures
15   that persons with legitimate racketeering concerns can obtain representation." *In re Outlaw*
16   *Lab'ys*, 2023 WL 6522383, at *8. Thus, "it would be wrong to evaluate the extent of the
17   results Plaintiffs' counsel obtained based solely on the number of dollars they recovered
18   for their clients." *Gonzalez*, 729 F.3d at 1210.

19   As noted, Plaintiffs successfully litigated a challenging and hard-fought RICO claim.
20   Where counsel's work and the duration of an action are "short," additional scrutiny of a
21   fee request is warranted. *See Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS
22   MDD, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) ("[E]xpress[ing] concern over
23   awarding attorneys' fees in excess of twenty-five percent of the settlement fund given the
24   short duration of the action and the fact that the complaint appear[ed] to be a boilerplate
25   complaint that Plaintiff's counsel need only amend slightly in each case it files alleging a
26   TCPA violation, of which there are many."). However, as here, where counsel actively
27   litigated the case through extensive dispositive motion practice, class certification
28   challenges, and an appeal, courts have noted the significant benefit to class members

beyond the monetary value of the damages awarded. *See Keegan v. Am. Honda Motor Co, Inc.*, No. CV 10-09508 MMM (AJWX), 2014 WL 12551213, at *27 (C.D. Cal. Jan. 21, 2014) (finding "settlement conferred a significant benefit on class members" where counsel prevailed on class certification and defendant's motion to dismiss and petition for interlocutory appeal).

Plaintiffs' success on their RICO claim also conferred nonmonetary benefits to the public by generally "deterring similar conduct by others." *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, No. SA CV10-01172 JAK (MLGx), 2013 WL 12173894, at *17 (C.D. Cal. Sept. 6, 2013). Though the precise value of this deterrence is uncertain, the Court may consider it as part of Plaintiffs' nonmonetary success. *See Gonzalez*, 729 F.3d at 1210 (considering as part of the litigation's success that the "filing and prosecution of these lawsuits . . . and subsequent decision to shut down its beleaguered police department.").

Finally, as to Defendants' proportionality argument, although Plaintiffs succeeded on only one of its claims, that fact alone does not warrant a proportional 80% reduction to the lodestar. A "test of strict proportionality" is inappropriate under the circumstances. *See McCown*, 565 F.3d at 1104. Rather, courts in this circuit have found that a party's success on only one of five claims—depending on the nature of that success—may warrant only a modest lodestar reduction between 10-20%. *See Yamada*, 825 F.3d at 546 (20%); *In re Outlaw Lab'ys*, 2023 WL 6522383, at *9 (15%); *Hamed v. Macy's W. Stores, Inc.*, No. 10-2790, 2011 WL 5183856, at *7 (N.D. Cal. Oct. 31, 2011) (10%). As noted, this is so here because the overarching RICO conspiracy advanced by Plaintiffs encompassed all aspects of Defendants' alleged wrongdoing under each claim, including those claims that were dismissed during trial.

2. Risk of Nonpayment

Plaintiffs' counsel request a multiplier on the lodestar to reflect the risk they incurred by taking this case on a contingency if "the Court were to reduce either the number of hours or hourly rates requested." (Motion, at 27). While the Court may "apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk

enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky[,]'" *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 731, 741 (9th Cir. 2016) (quoting *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002)), Plaintiffs never addressed any of these factors. The Court therefore declines to consider risk of nonpayment in calculating a lodestar multiplier.

### 3. Lodestar Multiplier

After considering the level of Plaintiffs' monetary and nonmonetary successes as compared to the amount of damages sought, the Court finds that a 0.85 multiplier to the lodestar is warranted. This reduction is consistent with other courts in this district where Plaintiffs succeeded on one of five related claims. Consequently, the adjusted lodestar amount is $4,807,384.75 x 0.85 = **$4,086,277.04**.

### D. Cost of Suit

Under RICO, the injured party may recover "the cost of the suit." 18 U.S.C. § 1964(c). Recoverable costs include "standard out-of-pocket litigation expenses, such as printing and legal research, as well as costs that are normally non-taxable, such as travel expenses." *In re Outlaw Lab'ys*, 2023 WL 6522383, at *9. Plaintiffs request costs for "expert fees, deposition costs, mediation fees, electronic discovery database support, issuing class notice, filing and service of process, travel, online research, photocopies, postage, telephone charges, and the jury trial." (Motion, at 28). These costs are typical and supported by invoices. (*Id.*; ECF Nos. 357-7–357-13; 357-16). Defendants' sole objection to the request is that Plaintiffs do not differentiate between costs incurred for their RICO and non-RICO claims, and thus an 80% reduction is warranted. (Opp'n, at 29–30). For the reasons discussed above, the Court finds that Plaintiffs' costs incurred due to their dismissed claims are related to their successful RICO prosecution. Accordingly, the Court finds that Plaintiffs are entitled to costs in the sum of **$465,149.76**.

### E. Service Awards

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments. The district court must evaluate their awards individually, using 'relevant factors includ[ing] the

actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). The purpose of service awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Plaintiffs request $25,000 in service awards for Plaintiff Turrey and $20,000 each for Plaintiffs Fiaty, Hernandez, and Sazon. (Motion, at 29). These requests are consistent with service awards issued in other cases. *See Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329-30 & n.9 (W.D. Wash. 2009) (collecting decisions approving awards ranging from $5,000 to $40,000).

Plaintiff Turrey served as class representative throughout the entirety of the litigation. (ECF No. 357-21 ¶ 2). She played an active and vital role during discovery, answering questions and producing documents necessary for her attorneys to answer interrogatories and requests for production. (*Id.* ¶ 7). She prepared for and participated in her own deposition, the March 22, 2023 settlement conference, and trial. (*Id.* ¶¶ 8–12). The Court finds that the time and effort Plaintiff Turrey spent on this litigation and the benefit her efforts provided to the class justify a $25,000 service award. Similarly, the efforts of Plaintiffs Fiaty, Hernandez, and Sazon all benefited the class. Each of them provided necessary information and documents for their attorneys to answer interrogatories and requests for production. (ECF No. 357-18 ¶ 6; ECF No. 357-19 ¶ 6; ECF No. 357-20 ¶ 6). These Plaintiffs also prepared for and participated in depositions, the March 22, 2023 settlement conference, and trial. (ECF No. 357-18 ¶¶ 7–11; ECF No. 357-19 ¶¶ 7–11; ECF No. 357-20 ¶¶ 7–11). The principal difference between these Plaintiffs and Plaintiff Turrey was that they (Fiaty, Hernandez, and Sazon) were designated as class

representatives later in the litigation. Accordingly, the Court finds that a $20,000 service award for Plaintiffs Fiaty, Hernandez, and Sazon is appropriate for each of them under the circumstances.

## IV. CONCLUSION

For these reasons, Plaintiffs are awarded **$4,086,277.04** in attorneys' fees and **$465,149.76** for costs of suit. The Court also awards Plaintiff Turrey **$25,000**, and Plaintiffs Fiaty, Hernandez, and Sazon **$20,000** each in service awards.

**SO ORDERED.**

Dated: February 26, 2025

Hon. Dana M. Sabraw
United States District Judge